**EXHIBIT  A**

## MANAGEMENT TRANSFER AGREEMENT

This Management Transfer Agreement (this "Agreement") is made and entered into as of this 1st day of June, 2003, by and among Jayhawk Capital Management, L.L.C., a Delaware limited liability company with its principal offices located at 8201 Mission Road, Suite 110, Prairie Village, Kansas 66208 ("Jayhawk"), Lucky Henry, L.P., a Delaware limited partnership with its principal offices located as 8201 Mission Road, Suite 110, Prairie Village, Kansas 66208 ("Lucky Henry"), and Primarius Capital LLC, a Delaware limited liability company with its principal offices located at One Montgomery, Suite 3300, San Francisco, California 94104 ("Primarius").

WHEREAS, Lucky Henry is a private investment partnership which commenced investment activities in April, 2002. but which was formally organized in November, 2002 by the filing of a Certificate of Limited Partnership with the Delaware Secretary of State; and

WHEREAS, the sole general partner of Lucky Henry is Jayhawk, which was formed in September, 1995 by the filing of a Certificate of Formation with the Delaware Secretary of State; and

WHEREAS, Kent C. McCarthy ("McCarthy"), the Managing Member of Jayhawk, has had sole investment discretion with respect to the portfolio of Lucky Henry since it commenced investment activities in April, 2002;

WHEREAS, the limited partners of Lucky Henry are: (i) Jayhawk Investments, L.P., a Delaware limited partnership with its principal offices located at 8201 Mission Road, Suite 110, Prairie Village. Kansas 66208, and the sole general partner of which is Jayhawk ("Jayhawk Investments"); and (ii) Brad Shoup, an individual residing in Dallas, Texas; and

WHEREAS, as of April 30, 2003, the approximate net asset value of the capital accounts of the partners of Lucky Henry is as follows: Jayhawk -- $233,611.42; Jayhawk Investments -- $4,876,580.81; and Brad Shoup -- $415,044.19; and

WHEREAS, the members of Jayhawk are: (i) McCarthy; and (ii) KCM Capital, Inc., a Missouri corporation with its principal offices located at 8201 Mission Road, Suite 110, Prairie Village, Kansas 66208, the sole shareholder of which is McCarthy; and

WHEREAS, Jayhawk is registered as an investment adviser in the State of Kansas; and

WHEREAS, Primarius was formed in September, 2002 by the filing of a Certificate of Formation with the Delaware Secretary of State; and

WHEREAS, the sole member of Primarius is Patrick Lin ("Lin"); and

WHEREAS, Primarius is registered as an investment adviser with the State of California; and

WHEREAS, Primarius serves as the sole general partner of Primarius Partners LP, a Delaware limited partnership which was formed in September, 2002 by the filing of a Certificate of Limited Partnership with the Delaware Secretary of State ("Primarius Partners"); and

WHEREAS, in his capacity as the Managing Member of Primarius, Lin has had sole investment discretion with respect to the portfolio of Primarius Partners since it commenced investment activities; and

WHEREAS, Jayhawk Investments is a limited partner of Primarius Partners and has invested $750,000 in Primarius Partners; and

WHEREAS, the parties hereto desire to enter into the transactions contemplated by this Agreement pursuant to which, among other things:

    (i)    Jayhawk will resign as the general partner of Lucky Henry;

    (ii)    Primarius will be appointed as the new general partner of Lucky Henry;

    (iii)    The Agreement of Limited Partnership of Lucky Henry will be amended and restated to reflect the transactions contemplated by this Agreement, to the extent applicable, as well as to effect various other changes to Lucky Henry;

    (iv)    The Offering Circular and related documentation of Lucky Henry will be replaced by a new Private Offering Memorandum and related documentation;

    (v)    Each of Jayhawk and Jayhawk Investments will become a member of Primarius pursuant to the terms and subject to the conditions contained herein; and

WHEREAS, the parties intend that the transactions contemplated in this Agreement will be completed and effective as of June 1, 2003 (the "Effective Date").

NOW, THEREFORE, in consideration of the premises and the mutual covenants and representations hereinafter stated, and intending to be legally bound hereby, the parties agree as follows:

**Section 1.**    **Resignation of Jayhawk as General Partner of Lucky Henry; Appointment of Primarius as New General Partner of Lucky Henry; Adoption of Amended and Restated Limited Partnership Agreement and New Offering Documents.**

    1.1    Jayhawk hereby appoints Primarius as a general partner of Lucky Henry as of the Effective Date, to serve as the successor to Jayhawk.

    1.2    Jayhawk hereby resigns and withdraws as a general partner of Lucky Henry as of the Effective Date. As of and after the Effective Date, the capital account of Jayhawk in Lucky Henry shall be converted into a limited partner capital account, and Jayhawk shall have the rights and obligations of a limited partner of Lucky Henry with respect to such capital account in accordance with the Amended and Restated Partnership Agreement (as defined below). Jayhawk agrees to enter into the Amended and Restated Partnership Agreement as a limited partner of Lucky Henry, as of the Effective Date.

    1.3    Primarius hereby accepts its appointment as a general partner of Lucky Henry as of the Effective Date, and agrees to act as a general partner, to become a party to the Agreement of Limited Partnership of Lucky Henry, and to assume all the obligations and responsibilities of a general partner pursuant to the Agreement of Limited Partnership of Lucky Henry.

    1.4    As of the Effective Date, Primarius shall enter into an Amended and Restated Limited Partnership Agreement of Lucky Henry, in substantially the form attached hereto an Annex A (the "Amended and Restated Partnership Agreement"), with the limited partners of Lucky Henry as of the Effective Date (the "Lucky Henry Limited Partners"). Among other things, the Amended and Restated Partnership Agreement provides for the change of Lucky Henry's name to "Primarius Focus LP" and for an increase of the management fee rate payable to Lucky Henry's general partner with respect to certain limited partners. As of, and after, the Effective Date, Primarius shall, in its capacity as general partner of Lucky Henry, have such rights and obligations as are set forth in the Amended and Restated Partnership Agreement, as such document may be further amended from time to time.

    1.5    As of the Effective Date, Lucky Henry shall adopt a new Private Offering Memorandum and related offering documentation in connection with the offering of its partnership interests, such

- 2 -

documentation to replace the Offering Circular and related documentation that were utilized by Lucky Henry prior to the Effective Date. The new Private Offering Memorandum and related offering documentation shall be in substantially the form attached hereto as Annex B (the "New Lucky Henry Offering Documents"). It is understood and agreed by the parties hereto that Primarius may from time to time in its discretion, as general partner of Lucky Henry, effect any and all amendments and/or modifications to the New Lucky Henry Offering Documents and other documentation pertaining to Lucky Henry as it deems appropriate, in accordance with the terms of the New Lucky Henry Offering Documents and such other documentation.

    1.7    As of the Effective Date, Primarius and Jayhawk will enter into one or more consulting agreements in substantially the form attached hereto as Annex C, pursuant to which each party may identify and/or introduce prospective advisory clients to the other party, subject to applicable laws, rules and regulations.

    1.8    Within one month after the Effective Date, each of Lin and Darlet Lin (his spouse) will invest at least fifty thousand dollars ($50,000) in Lucky Henry (such investments to be made as limited partner investments or through Primarius, in the discretion of Lin and Darlet Lin).

    1.9    Primarius agrees that except as may be required by law, Primarius will not, in its capacity as general partner of Lucky Henry, cause Lucky Henry to acquire or dispose of any securities of LSB Industries (LSBD and LSBDP) prior to the end of October, 2003 without the prior written consent of Jayhawk.

**Section 2.    Issuance of Membership Interests by Primarius to Jayhawk and Jayhawk Investments.**

    2.1    As of the Effective Date, Primarius shall admit Jayhawk as a member of Primarius, with the right to receive, or have allocated to its capital account, as appropriate, five percent (5%) of the Gross Fees (as defined below) of Primarius (such right shall hereinafter be referred to as the "Preferred Return"). As used herein, the term "Gross Fees" shall mean, with respect to a specified period, (i) the gross management fees and incentive compensation received by Primarius from Lucky Henry, Primarius Partners, and any other investment funds or separate accounts managed by Primarius during such period, reduced by (ii) all marketing fees, consulting fees, finder's fees and any similar fees paid or incurred (as long as the incurred fees are not waived) by Primarius during such period to third parties. It is understood and agreed by the parties that, in calculating the Gross Fees for a period, effect shall be given to any reductions, waivers, deferrals, suspensions or other modifications of management fees and/or incentive compensation granted by Jayhawk (while it was the general partner of Lucky Henry), Primarius and/or Lucky Henry to limited partners of Lucky Henry. For example, if Primarius determines, in its discretion, to waive the management fees otherwise payable by a limited partner of Lucky Henry with respect to a calendar quarter, then such waived management fees shall not be included in the Gross Fees for such period. The admission of Jayhawk as a member of Primarius shall be subject to Jayhawk entering into an Amended and Restated Operating Agreement of Primarius, in substantially the form attached hereto an Annex D (the "Amended and Restated Primarius Operating Agreement").

    2.2    As of the Effective Date, Primarius shall admit Jayhawk Investments as a member of Primarius, on the same terms, and subject to the same conditions, as Jayhawk shall be admitted as a member of Primarius. The admission of Jayhawk Investments as a member of Primarius shall be subject to Jayhawk Investments entering into the Amended and Restated Primarius Operating Agreement.

    2.3    During the three-year period immediately following the Effective Date: (i) neither Jayhawk nor Jayhawk Investments will be permitted to effect a withdrawal of capital from Lucky Henry if such withdrawal would result in the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments (after giving effect to any such withdrawal) being less than three million dollars ($3,000,000) (the "Threshold Amount"); and (ii) neither Jayhawk nor Jayhawk Investments will be permitted to effect a

- 3 -

withdrawal of capital from Lucky Henry at any time that the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments (before giving effect to any such withdrawal) is less than the Threshold Amount. Any withdrawals of capital by Jayhawk or Jayhawk Investment shall otherwise be made in accordance with the terms of the Amended and Restated Partnership Agreement. TO DISCUSS ISSUE REGARDING REDUCTION IN THRESHOLD AMOUNT.

2.4     Each of Jayhawk and Jayhawk Investments shall have the right to remain a member of Primarius until the earliest to occur of the following: (i) the dissolution of Primarius in accordance with the terms of the Amended and Restated Primarius Operating Agreement; (ii) such time as Jayhawk and its affiliates shall cease to be limited partners of Lucky Henry; and (iii) such time as Jayhawk shall withdraw as a member of Primarius on a voluntary basis in accordance with the terms of the Amended and Restated Primarius Operating Agreement. In the case of clauses (i) and (ii) above, Jayhawk and Jayhawk Investments shall cease to be members of Primarius as of the date of the specified event and all rights to the Preferred Return shall terminate as of such date.

2.5     If, immediately after any withdrawal of capital by Jayhawk or Jayhawk Investments from Lucky Henry, the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments in Lucky Henry is less than the Threshold Amount, then the Preferred Return for the period in which the withdrawal is made and for future periods (subject to any further adjustments in the Preferred Return pursuant to this Section 2.5) shall be reduced in proportion to the amount by which the aggregate net asset value of such capital accounts is less than the Threshold Amount. For example, if the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments after any such withdrawal is $1,800,000 (i.e. 60% of the Threshold Amount ($3,000,000)), then the Preferred Return for such period and for future periods shall be reduced to 3% (i.e., 60% of 5%). Any adjustment to the Preferred Return will be rounded to the nearest thousandth of a percent. This Section 2.5 will serve to reduce the Preferred Return each time a withdrawal of capital is made that satisfies the conditions expressed in the previous sentence. Any reduction in the Preferred Return as a result of a withdrawal of capital by Jayhawk or Jayhawk Investments may be reversed by a subsequent capital contribution by Jayhawk or Jayhawk Investments in Lucky Henry in an amount equal to such previous withdrawal (i.e., in the event of such a capital contribution, the Preferred Return will be increased by an amount equal to the previous reduction, provided that the resulting Preferred Return does not exceed five percent (5%)); *provided, however*, that this provision shall cease to have any force or effect as of such date, if any, as Jayhawk and Jayhawk Investments cease to be members of Primarius.

2.6     As members of Primarius, each of Jayhawk and Jayhawk Investments shall be entitled to voting rights equivalent to the then current Preferred Return. For example, if the Preferred Return is five percent (5%), then the Voting Ratio (as such term is defined in the Amended and Restated Primarius Operating Agreement) shall be five percent (5%) for each of Jayhawk and Jayhawk Investments.

2.7     Each of Jayhawk and Jayhawk Investments may transfer its membership interest in Primarius to McCarthy or an affiliate of McCarthy without the consent of Primarius or Lin; *provided, however*, that any such transfer will be subject to McCarthy or an affiliate of McCarthy, as applicable, entering into the Amended and Restated Primarius Operating Agreement.

2.8     If after the Effective Date, Lucky Henry is subject to any capital call or equivalent obligation to MediMart Pharmacy, LLC (also known as Star Mart) and/or Star Holdings, LCC, Jayhawk and/or Jayhawk Investments will advance to Lucky Henry the funds required to satisfy any such capital call or equivalent obligation or, alternatively, promptly reimburse Lucky Henry if Lucky Henry has satisfied such capital call or equivalent obligations with its own funds.

**Section 3.     Transaction Fees and Expenses; Management Fees and Incentive Allocations.**

3.1     All expenses incurred in connection with Lucky Henry on or prior to the Effective Date which are not required to be borne by Lucky Henry pursuant to its Agreement of Limited Partnership, will

- 4 -

be borne by Jayhawk. All expenses incurred in connection with Lucky Henry after the Effective Date which are not required to be borne by Lucky Henry pursuant to the Amended and Restated Partnership Agreement will be borne by Primarius.

3.2    All fees and expenses (including but not limited to legal fees) incurred by the parties in connection with this Agreement and the transactions contemplated by this Agreement shall be borne by Lucky Henry.

3.3    On and after the Effective Date for so long as Jayhawk and/or Jayhawk Investments shall remain a member of Primarius, Primarius will waive any management fees and incentive allocations payable by the Lucky Henry Limited Partners and/or Jayhawk as limited partners of Lucky Henry, such waiver to apply to initial capital contributions and additional capital contributions and allocations; *provided, however*, that Primarius may charge management fees to the Lucky Henry Limited Partners with respect to periods occurring after the earlier to occur of the following: (i) the expiration of a period of one (1) year after the Effective Date; and (ii) such time as the total assets under the management of Primarius (including but not limited to the assets in Lucky Henry and Primarius Partners) equal or exceed twenty million dollars ($20,000,000).

3.4    On and after the Effective Date for so long as Jayhawk shall remain a member of Primarius, Primarius will waive any incentive allocations payable by Jayhawk Investments with respect to that portion of Jayhawk Investments' capital account in Primarius Partners attributable to the $500,000 additional capital contribution made by Jayhawk Investments on or about May 1, 2003.

**Section 4.    Representations and Warranties of Jayhawk.**

Jayhawk represents and warrants as follows:

4.1    Lucky Henry is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Delaware. Jayhawk is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.

4.2    Each of Lucky Henry and Jayhawk has all requisite power and authority to execute and deliver this Agreement and the other agreements, documents and instruments to be executed and delivered by it in connection herewith, to consummate the transactions contemplated hereby and thereby and to perform its obligations hereunder and thereunder.

4.3    No authorization, approval or consent of, or notice to or filing or registration with, any governmental agency or body, or any other third party, is required in connection with the execution and delivery by Lucky Henry and Jayhawk of this Agreement and the other agreements, documents and instruments to be executed by Lucky Henry and Jayhawk in connection herewith, the consummation by Lucky Henry and Jayhawk of the transactions contemplated hereby or thereby or the performance by Lucky Henry and Jayhawk of their respective obligations hereunder and thereunder.

4.4    This Agreement and the other agreements, documents and instruments to be executed and delivered by Lucky Henry and Jayhawk in connection herewith, and the consummation by Lucky Henry and Jayhawk of the transactions contemplated hereby and thereby, have been duly and validly authorized, executed and delivered by all necessary corporate or other action on the part of Lucky Henry and Jayhawk and this Agreement constitutes, and the other agreements, documents and instruments to be executed and delivered by Lucky Henry and Jayhawk in connection herewith, when executed and delivered by Lucky Henry and Jayhawk, shall constitute the legal, valid and binding obligations of Lucky Henry and Jayhawk, enforceable against them in accordance with their respective terms, except to the extent that enforceability may be limited by bankruptcy, insolvency and other similar laws affecting the enforcement of creditors' rights generally.

4.5     There are no actions, suits, claims, investigations or legal or administrative or arbitration proceedings pending or, to the knowledge of Jayhawk, threatened or probable of assertion against Lucky Henry or Jayhawk relating to this Agreement or the transactions contemplated hereby before any court, governmental or administrative agency or other body, and no judgment, order, writ, injunction, decree or other similar command of any court or governmental or administrative agency or other body has been entered against or served upon Lucky Henry or Jayhawk relating to this Agreement or the transactions contemplated hereby.

4.6     The execution and delivery by Lucky Henry and Jayhawk of this Agreement and the other agreements, documents and instruments to be executed and delivered by them in connection herewith, the consummation by them of the transactions contemplated hereby and thereby and the performance by them of their respective obligations hereunder and thereunder do not and will not (a) conflict with or violate any of the terms of the Certificate of Limited Partnership or Agreement of Limited Partnership of Lucky Henry or the Certificate of Formation and Operating Agreement of Jayhawk, (b) violate or conflict with any domestic law, ordinance, rule or regulation, or any judgment, order, writ, injunction or decree of any court, administrative or governmental agency or other body, material to Lucky Henry or Jayhawk, or (c) require any authorizations, approvals or consents of, or any notices to or filings or registrations with, any governmental agency or body, or any other third party, applicable to the Lucky Henry or Jayhawk or any of their respective properties or assets.

4.7     The offering and sale of the partnership interests of Lucky Henry has, prior to the Effective Date, complied with all applicable provisions of Securities and Exchange Commission ("SEC") Regulation D promulgated under the Securities Act of 1933, as amended. Without limiting the foregoing, the Offering Circular of Lucky Henry, a copy of which has been provided to Primarius, complies with applicable law and does not contain any misstatement of a material fact or omit to state any material fact necessary to make the statements made therein not misleading.

4.8     Jayhawk is registered as an investment adviser in the State of Kansas.

4.9     Lucky Henry possesses all material consents, approvals, orders, certificates, authorizations and permits issued by, and has made all declarations and filings with, all appropriate federal, state or foreign governmental or self-regulatory authorities and all courts and other tribunals necessary to conduct its business in the manner described in its Offering Circular. Neither Jayhawk nor Lucky Henry is charged with and, to the knowledge of Jayhawk, neither Jayhawk nor Lucky Henry is under investigation, review or evaluation with respect to any violation of any laws, rules or regulations, nor is Jayhawk or Lucky Henry the subject of any pending or threatened adverse proceedings by any regulatory authority having jurisdiction over their respective operations.

4.10    Jayhawk (i) is not subject to an order of the SEC issued under Section 203(f) of the Investment Advisers Act of 1940, as amended (the "Advisors Act"); (ii) has not been convicted within ten years of the date hereof of any felony or misdemeanor involving conduct described in Section 203(e)(2)(A)-(D) of the Advisers Act; (iii) has not been found by the SEC to have engaged, and has not been convicted of engaging, in any of the conduct specified in paragraph (1), (5) or (6) of Section 203(e) of the Advisers Act; and (iv) is not subject to an order, judgment or decree described in Section 203(e) of the Advisers Act.

4.11    Attached hereto as Annex E is: (i) an unaudited balance sheet of Lucky Henry as of April 30, 2003; (ii) an unaudited balance sheet of Lucky Henry as of April 30, 2003; (iii) an unaudited statement of income of Lucky Henry for the period from April, 2002 to April 30, 2003; (iv) a list of all securities and other instruments and investments beneficially owned by Lucky Henry as of May 31, 2003. Each of the documents referred to in this Section 4.11 was true, accurate and complete as of the date with respect to which it was prepared and represented the financial condition of Lucky Henry as of the date with respect to which it was prepared. No material liabilities have been incurred by Lucky Henry prior to the Effective Date which are not reflected in the unaudited balance sheet of Lucky Henry as of May 31, 2003. Since April 30, 2003 there has been no material change in the financial condition of Lucky Henry.

**Section 5.    Representations and Warranties of Primarius.**

Primarius represents and warrants as follows:

5.1    Primarius is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.

5.2    Primarius has all requisite power and authority to execute and deliver this Agreement and the other agreements, documents and instruments to be executed and delivered by it in connection herewith, to consummate the transactions contemplated hereby and thereby and to perform its obligations hereunder and thereunder.

5.3    No authorization, approval or consent of, or notice to or filing or registration with, any governmental agency or body, or any other third party, is required in connection with the execution and delivery by Primarius of this Agreement and the other agreements, documents and instruments to be executed by Primarius in connection herewith, the consummation by Primarius of the transactions contemplated hereby or thereby or the performance by Primarius of its obligations hereunder and thereunder.

5.4    This Agreement and the other agreements, documents and instruments to be executed and delivered by Primarius in connection herewith, and the consummation by Primarius of the transactions contemplated hereby and thereby, have been duly and validly authorized, executed and delivered by all necessary corporate or other action on the part of Primarius and this Agreement constitutes, and the other agreements, documents and instruments to be executed and delivered by Primarius in connection herewith, when executed and delivered by Primarius, shall constitute the legal, valid and binding obligations of Primarius, enforceable against Primarius in accordance with their respective terms, except to the extent that enforceability may be limited by bankruptcy, insolvency and other similar laws affecting the enforcement of creditors' rights generally.

5.5    There are no actions, suits, claims, investigations or legal or administrative or arbitration proceedings pending or, to the knowledge of Primarius, threatened or probable of assertion against Primarius relating to this Agreement or the transactions contemplated hereby before any court, governmental or administrative agency or other body, and no judgment, order, writ, injunction, decree or other similar command of any court or governmental or administrative agency or other body has been entered against or served upon the Primarius relating to this Agreement or the transactions contemplated hereby.

5.6    The execution and delivery by Primarius of this Agreement and the other agreements, documents and instruments to be executed and delivered by them in connection herewith, the consummation by them of the transactions contemplated hereby and thereby and the performance by them of their respective obligations hereunder and thereunder do not and will not (i) conflict with or violate any of the terms of the Certificate of Formation and Operating Agreement of Primarius, (ii) violate or conflict with any domestic law, ordinance, rule or regulation, or any judgment, order, writ, injunction or decree of any court, administrative or governmental agency or other body, material to Primarius, or (iii) require any authorizations, approvals or consents of, or any notices to or filings or registrations with, any governmental agency or body, or any other third party, applicable to Primarius or any of its properties or assets.

5.7    Primarius is registered as an investment adviser in the State of California.

5.8    Primarius possesses all material consents, approvals, orders, certificates, authorizations and permits issued by, and has made all declarations and filings with, all appropriate federal, state or foreign governmental or self-regulatory authorities and all courts and other tribunals necessary to conduct its business. Primarius is not charged with and, to the knowledge of Primarius, is not under investigation.

-7-

review or evaluation with respect to any violation of any laws, rules or regulations, nor is Primarius the subject of any pending or threatened adverse proceedings by any regulatory authority having jurisdiction over its operations.

5.9     Primarius (i) is not subject to an order of the SEC issued under Section 203(f) of the Advisers Act; (ii) has not been convicted within ten years of the date hereof of any felony or misdemeanor involving conduct described in Section 203(e)(2)(A)-(D) of the Advisers Act; (iii) has not been found by the SEC to have engaged, and has not been convicted of engaging, in any of the conduct specified in paragraph (1), (5) or (6) of Section 203(e) of the Advisers Act; and (iv) is not subject to an order, judgment or decree described in Section 203(e) of the Advisers Act.

### Section 6.     Conditions Precedent to the Obligations of Jayhawk and Lucky Henry.

The obligations of Jayhawk and Lucky Henry pursuant to this Agreement are subject to the satisfaction at or prior to the Effective Date of the following conditions, unless waived in writing by such parties:

6.1     Primarius shall have accepted its appointment as a general partner of Lucky Henry, to serve as the successor of Jayhawk, and shall have executed the Amended and Restated Partnership Agreement.

6.2     As of the Effective Date, Lin shall have executed the Amended and Restated Primarius Operating Agreement.

6.3     As of the Effective Date, Lin and Darlet Lin shall have delivered an undertaking to Jayhawk providing substantially as follows:

"On and after the Effective date for so long as Jayhawk and Jayhawk Investments shall be members of Primarius, Patrick Lin and Darlet Lin may employ the following investment strategy solely in connection with their personal accounts and investment funds, other entities and/or separate accounts managed by Primarius: a long-short equity investment strategy employing fundamental analysis to invest primarily in publicly-traded equity securities of small-capitalization U.S. companies; *provided, however*, that if Jayhawk and Jayhawk Investments cease to be members of Primarius due to the dissolution of Primarius by Lin without the consent of Jayhawk or Jayhawk Investments, then neither Lin nor Darlet Lin shall be permitted to employ said investment strategy for a period of one-year after the effective date of such dissolution except with respect to their personal accounts. It is acknowledged by the parties that Patrick Lin and Darlet Lin may have professional responsibilities in addition to Primarius."

### Section 7.     Conditions Precedent to the Obligations of Primarius.

The obligations of Primarius pursuant to this Agreement are subject to the satisfaction at or prior to the Effective Date of the following conditions, unless waived in writing by Primarius:

7.1     Jayhawk shall have appointed Primarius as a general partner of Lucky Henry, to serve as the successor to Jayhawk, and shall have notified the Lucky Henry Limited Partners in writing of such appointment; and (ii) Jayhawk shall have resigned and withdrawn, in writing, as the general partner of Lucky Henry.

7.2     The Lucky Henry Limited Partners shall have consented in writing to: (i) the appointment of Primarius to serve as a general partner of Lucky Henry, to succeed Jayhawk; (ii) the resignation of Jayhawk as the general partner of Lucky Henry; (iii) the appointment of Lin to serve as the portfolio manager of Lucky Henry on behalf of Primarius; and (iv) the changes in the terms of the original



Agreement of Limited Partnership of Lucky Henry, as reflected in the Amended and Restated Partnership Agreement.

7.3      On or prior to the Effective Date, each Lucky Henry Limited Partner shall have executed the Amended and Restated Partnership Agreement.

7.4      As of the Effective Date, the capital account of Jayhawk Investments in Lucky Henry shall have a net asset value of at least three million dollars ($3,000,000).

7.5      On or prior to the Effective Date, each of Jayhawk and Jayhawk Investments shall have executed the Amended and Restated Primarius Operating Agreement.

7.6      On and after the Effective Date, Jayhawk and its affiliates shall execute and deliver such documents, and provide such information, as shall be reasonably requested by Primarius in connection with the implementation of the transactions contemplated by this Agreement, including but not limited to a Certificate of Amendment of the Certificate of Limited Partnership of Lucky Henry (for filing with the Secretary of State of the State of Delaware).

### Section 8.    Indemnification.

8.1      Primarius agrees to indemnify and hold Jayhawk, its affiliates (which term for purposes of this Section 8.1 includes the members, partners, controlling persons (as such term is defined under the Securities Act of 1933, as amended), directors, officers, employees and agents of such persons) harmless from and against any and all losses, claims, damages, costs, liabilities or expenses (including reasonable attorney's fees and expenses), joint or several, to which they may become subject under any of the federal or state securities laws, under any other statute, at common law or otherwise, in each case resulting from the material breach of this Agreement (including but not limited to a material breach of a representation or warranty) by Primarius; *provided, however*, that Primarius shall not be liable in any such case to the extent that any such loss, claim, damage, liability, cost or expense (i) results from a breach by Jayhawk (or by any other indemnified person under this paragraph) of any of their respective obligations under this Agreement or (ii) results from the fraud, gross negligence or willful misconduct of Jayhawk (or by any other indemnified person under this paragraph).

8.2      Jayhawk agrees to indemnify and hold Primarius, its affiliates (which term for purposes of this Section 8.1 includes the members, partners, controlling persons (as such term is defined under the Securities Act of 1933, as amended), directors, officers, employees and agents of Primarius) harmless from and against any and all losses, claims, damages, costs, liabilities or expenses (including reasonable attorney's fees and expenses), joint or several, to which they may become subject under any of the federal or state securities laws, under any other statute, at common law or otherwise, in each case resulting from the material breach of this Agreement (including but not limited to a material breach of a representation or warranty) by Jayhawk; *provided, however*, that Jayhawk shall not be liable in any such case to the extent that any such loss, claim, damage, liability, cost or expense (i) results from a breach by Primarius (or by any other indemnified person under this paragraph) of any of their respective obligations under this Agreement or (ii) results from the fraud, gross negligence or willful misconduct of Primarius (or by any other indemnified person under this paragraph).

8.3      No indemnified person (an "Indemnified Person") seeking indemnification, reimbursement or contribution under this Agreement will, without the indemnifying person's written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened proceeding. Promptly after receipt by an Indemnified Person of notice of the commencement of any action or the making of any claim, such Indemnified Person will notify the indemnifying person thereof. The failure to so notify the indemnifying person will not relieve the indemnifying person from any liability which the indemnifying person may have hereunder except to the extent such failure results in prejudice to the indemnifying person. In case any action or claim is brought against any Indemnified

- 9 -

Person and it notifies the indemnifying person of the commencement or making thereof, the indemnifying person will be entitled to participate therein and, to the extent that the indemnifying person may elect by notice to the Indemnified Person promptly after receiving the aforesaid notice from such Indemnified Person, to assume the defense thereof, provided that the counsel selected by the indemnifying person is reasonably acceptable to all Indemnified Persons. Upon receipt of notice from the indemnifying person to such Indemnified Person of the indemnifying person's election so to assume the defense of such action or claim, the indemnifying person will not be liable to such Indemnified Person under this indemnification provision for any legal or other expenses subsequently incurred by the Indemnified Person in connection with the defense thereof (other than costs of investigation or the production of documents or witnesses) (i) unless the indemnifying person has failed to provide legal counsel reasonably satisfactory to such Indemnified Person in a timely manner; or (ii) such Indemnified Person shall have reasonably concluded that the representation for such Indemnified Person by legal counsel selected by the indemnifying person would be inappropriate due to actual or potential differing interests, in which case the indemnifying person will pay reasonable fees and disbursements of one separate counsel retained by the Indemnified Person as incurred.

### Section 9.    Miscellaneous

9.1    Notices. All notices and other communications under this Agreement must be in writing, and any notice or communication will be deemed to have been duly given (a) when delivered personally, (b) on the business day following the day such notice or other communication is sent by recognized overnight courier, (c) upon acknowledgement of the receipt of a facsimile of such notice or other communication, or (d) on the fifth day following the date of deposit in the United States mail if sent first class, postage prepaid, by registered or certified mail. Notices to each party will be sent to the address set forth with respect to such party on the first page of this Agreement unless either party notifies the other party in writing of a different address in accordance with the requirements of this Section 9.1.

9.2    Amendments in Writing; No Waiver

(a)    None of the terms or provisions of this Agreement may be amended, supplemented or otherwise modified except by a written instrument executed by each of the parties hereto.

(b)    No party hereto shall by any act (except by a written instrument pursuant to Section 9.1 hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder. No failure to exercise, nor any delay in exercising, on the part of any party hereto, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by any party hereto of any right or remedy hereunder on any one or more occasions shall not be construed as a bar to any right or remedy that any party hereto would otherwise have on any future occasion.

9.3    No Third Party Beneficiaries; Assignment.

(a)    This Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their permitted successors and assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity, any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement or the transactions contemplated hereunder.

(b)    No party hereto may assign any of its rights or obligations under this Agreement to any person or entity without the prior written consent of the other party hereto.

9.4    GOVERNING LAW; Severability, Arbitration.

(a)    THIS AGREEMENT SHALL BE INTERPRETED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE

- 10 -

PRINCIPLES OF CONFLICT OF LAWS THEREOF. If any provision hereof would be invalid under applicable law, then such provision shall be deemed to be modified to the extent necessary to render it valid while most nearly preserving its original intent. No provision hereof shall be affected as a result of another provision being held invalid.

(b)      Notwithstanding any other provision of this Agreement or any Document (as defined below), any action, dispute, claim or controversy of any kind now existing or hereafter arising between or among any of the parties hereto in any way arising out of, pertaining to or in connection with this Agreement or any related agreement, document, or instrument (collectively, the "Documents") or any transaction contemplated hereby or thereby, or any aspect of the past or present relationships of the parties hereto pursuant to this Agreement or any Document shall be resolved by mandatory and binding arbitration in San Francisco, California before a single arbitrator in accordance with the rules of the American Arbitration Association. The occurrence of any of the foregoing matters shall be referred to herein as a "Dispute." Any of the parties hereto may bring by summary proceedings an action in court to compel arbitration of any Dispute.

9.5      Entire Agreement. This Agreement (along with the agreements annexed hereto) constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements and undertakings, both written and oral, between the parties hereto with respect to the subject matter hereof.

9.6      Counterparts. This Agreement may be executed by the parties hereto in any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

9.7      Facsimiles. Any facsimile signature of this Agreement or any other document by any person or entity shall constitute the legal, valid and binding execution of this Agreement or such other document by such person or entity.

9.8      Section Headings. The section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

IN WITNESS WHEREOF, the parties have hereunto executed this Agreement as of the day and year first above written.

JAYHAWK CAPITAL MANAGEMENT, L.L.C.

By: _____
Name: Kent C. McCarthy
Title: President

LUCKY HENRY, L.P.

By: Jayhawk Capital Management, L.L.C.,
its general partner

By: _____
Name: Kent C. McCacthy
Title: President

PRIMARIUS CAPITAL LLC

By: _____
Name:
Title:

Annex A  --  Amended and Restated Partnership Agreement of Lucky Henry
Annex B  --  New Lucky Henry Offering Documents
Annex C  --  Form of Consulting Agreement
Annex D  --  Amended and Restated Primarius Operating Agreement
Annex E  --  Unaudited financial statements and list of holdings of Lucky Henry

**Patrick Lin**
**Darlet Lin**
**8 Honey Hill Road**
**Orinda, California 94563**

June 1, 2003

Jayhawk Capital Management, L.L.C.
8201 Mission Road, Suite 110
Prairie Village, Kansas 66208

Dear Kent:

Reference is made to Section 6.3 of that certain Management Transfer Agreement (the "Agreement") dated as of June 1, 2003, among Jayhawk Capital Management, L.L.C. ("Jayhawk"), Lucky Henry, L.P. ("Lucky Henry") and Primarius Capital LLC ("Primarius"). Subject to the execution of the Agreement by Jayhawk, Lucky Henry and Primarius and the consummation of the transactions contemplated by the Agreement, the undersigned hereby agree that, on and after the date hereof for so long as Jayhawk and Jayhawk Investments (as defined in the Agreement) shall be members of Primarius, the undersigned may employ the following investment strategy solely in connection with their personal accounts and investment funds, other entities and/or separate accounts managed by Primarius: a long-short equity investment strategy employing fundamental analysis to invest primarily in publicly-traded equity securities of small-capitalization U.S. companies; *provided, however,* that if Jayhawk and Jayhawk Investments cease to be members of Primarius due to the dissolution of Primarius by Patrick Lin without the consent of Jayhawk or Jayhawk Investments, then the undersigned shall not be permitted to employ said investment strategy for a period of one-year after the effective date of such dissolution except with respect to their personal accounts. Notwithstanding the foregoing, the undersigned may have professional responsibilities in addition to those pertaining to Primarius.

If the Agreement is not executed by Jayhawk, Lucky Henry and Primarius or the transactions contemplated by the Agreement are not consummated, then this letter shall be of no force or effect.

Sincerely,

_____
Patrick Lin

_____
Darlet Lin

**EXHIBIT  B**

## FEE SHARING AGREEMENT

This Fee Sharing Agreement (the "Agreement") is entered into as of September 15, 2003 between Primarius Capital Management, LLC ("Primarius Capital"), The Primarius China Fund ("New China Fund"), Jayhawk China Fund (Cayman), Ltd ("Jayhawk"), and Jayhawk Capital Management, LLC ("Jayhawk Capital").

**WHEREAS,** pursuant to an agreement between the Primarius Capital and the New China (the "Investment Management Agreement"), Primarius Capital is the Investment Manager of The New China Fund (the "Fund"); and,

**WHEREAS** Jayhawk, managed by Jayhawk Capital, wishes to provide seed capital for the Fund by making an investment as a shareholder therein, in exchange for the right to share in the management fee and performance fee allocations payable to Primarius Capital pursuant to the Investment Management Agreement; and,

**WHEREAS** Primarius Capital and Jayhawk acknowledge that to accomplish the goals sought by each there is a need to establish a new fund that will be taxed as a US Partnership (referred to hereinafter as the "Fund"); and,

NOW THEREFORE, the parties agree as follows:

#### Section 1.    Capital Contributions to the Funds

As a condition precedent to Jayhawk's obligation to make any capital contribution pursuant to the terms of the Agreement, the structure of the Fund must be such that US investors placing an investment with the Fund will not be placing it with a PFIC (Passive Foreign Investment Company). The Initial Capital Contribution will be placed in the Fund, which entity will not be treated as a PFIC for US investors.

Jayhawk shall make an initial capital contribution to the New Fund as a shareholder of the New Fund in the amount of US$10,000,000 on or before September 15, 2003 (the "Initial Capital Contribution"). The Fund will issue shares of the Fund to Jayhawk commensurate with the Net Asset Value per Share (calculated at the end of business on the last preceding business day) of New Fund. All costs and/or fees otherwise chargeable with the Initial Capital Contribution are waived.

At Jayhawk's option Jayhawk may contribute capital up to an additional US$100,000,000 under the same terms as are applicable to the Initial Capital Contribution and as set forth in Section 2 below. If Jayhawk exercises this option, the additional funds contributed will not be subject to any lock-up provisions, with redemptions being conducted consistent with the terms of the Funds' initial contribution in Section 3.

#### Section 2.    Costs and Fees as to the Initial Capital Contribution

As to any capital contributions made by Jayhawk pursuant to this agreement, management fees will be 1.0%. Performance, placing, subscription, structural, organizational and redemption/exit fees, costs and/or expenses are waived. Any other fees, costs and/or expenses otherwise chargeable are also waived.

### Section 3.    Lock-up/Redemption of the Capital Contribution

Absent a dissolution or liquidation of the Funds, whether voluntary or involuntary, or until such time that Primarius Capital and/or Patrick Lin discontinues his active involvement in the management of the Funds, Jayhawk waives its rights to redemption of the Initial Capital Contribution until December 31, 2004 (the "Initial Lock-up Period"). During the Initial Lock-up Period, consistent with the terms of the Fund's documents, Jayhawk may redeem shares equivalent to the amount of appreciation of the Initial Capital Contribution with 60 (sixty) days notice. Redemptions may be met with cash or in-kind. Should the Net Asset Value of the New Fund shares depreciate, whether before or after Jayhawk has redeemed shares, Jayhawk has no obligation to make any further contribution to the New Fund.

### Section 4.    Compensation to Jayhawk

#### A.    Management Fees

In consideration for the Initial Capital Contribution at the end of each quarter, Primarius Capital shall allocate to Jayhawk ten percent (10.0%) of the net management fees paid and/or payable to Primarius Capital from the Funds and/or its shareholders for the year just concluded. Allocations are reflected at the time earned but final allocation balance is due by the completion of the audit of the previous year. At such time that the allocation of Management Fees becomes a signification portion of Jayhawk's income, allocations will occur on a quarterly basis or another mutually agreeable frequency. If the Initial Capital Contribution is placed by September 15, 2003, the first allocation will be reflected on January 1, 2004 and the amount finalized at the completion of the 2003 audit, and will be net management fees paid and/or payable to Primarius Capital from the Fund and/or its shareholders for the Year ending December 31, 2003. For purposes of these payments, net management fees shall mean all management fees paid and/or payable to Primarius Capital from the Funds and/or its shareholders except for those fees attributable to the Jayhawk Capital Contribution and any other shares owned by Jayhawk. "Net" management fee also includes deducting fees payable to other third party marketers and direct Primarius China related expenses. At Jayhawk's election, the management fees due it are to be reinvested in the Fund by way of an allocation of additional shares based upon the correlating Net Asset Value of the Fund's shares. These shares are not subject to any lock up period and may be redeemed at any time.

#### B.    Performance Fees

In consideration for the Initial Capital Contribution at the end of each fiscal year, Primarius Capital shall allocate to Jayhawk ten percent (10.0%) of the net performance fees, paid and/or payable to Primarius Capital from the Fund and/or its shareholders. Allocation will be reflected on January 1st of the following year and the amount finalized at the completion of the audit of the previous year. At

Jayhawk's election, the performance fees due it are to be reinvested in the Fund by way of an allocation of additional shares based upon the correlating fiscal year-end Net Asset Value of the Fund's shares. These shares are not subject to any lock up and may be redeemed at any time.

The Management Fees and Performance Fees noted above payable to Jayhawk shall be paid for the life of the Fund.

### C.     Reporting

By the 5th of every month, Primarius Capital will strive to provide Jayhawk financial statements, in form and content acceptable to Jayhawk noting all fees paid. By March 15 of each year, Primarius Capital will strive to provide to Jayhawk an audited financial statement, in form and content acceptable to Jayhawk's auditors, noting all fees paid to Jayhawk pursuant to this agreement in the prior year. If the time tables are not able to be met Primarius Capital will provide (as accurate as possible) estimates based on the current knowledge. Parimarius Capital will also keep Jayhawk informed on the status and the expected time of completion of the required reports

The Funds will at all times, including the date upon which the Initial Capital Contribution is placed, have a Custodian or Prime Broker that can, on a daily basis, provide complete and accurate information regarding the Funds' portfolio. Jayhawk will have direct access to this information, and will be entitled to access this information on a daily basis. The obligations set forth in this paragraph will be terminated upon the occurrence that the Initial Capital Contribution are fully redeemed and there are no investors in the Funds.

### Section 5.     Management of Funds

As set forth in Section 1 above, as a condition precedent to Jayhawk's obligation to make the Initial Capital Contribution the structure of the Fund must be a structure that would not be seen as a Passive Foreign Investment Company ("PFIC") for US investors. Concurrently the structure of the Fund, the Fund's documents will be written to (a) authorize taking "short" positions with securities in addition to "long" positions, (b) performance fees is twenty percent (20.0%) and (c) accept contributions in securities as well as cash.

As such, Primarius Capital acknowledges that Patrick Lin, its major shareholder and manager, shall at all times, commencing with September 15, 2003, have a significant portion of his net worth invested in the Fund.

As pertaining to the Fund, Kent C. McCarthy of Jayhawk Capital will, without designation as investment advisor or additional compensation, provide investment advice and consultation to Primarius Capital. Primarius Capital and the Funds are entitled to tell third parties, and, with prior written approval, include in literature regarding the Funds, that Jayhawk is a significant shareholder in the Fund and that Kent C. McCarthy and Jayhawk Capital have a participatory role in the Funds' investment strategy as a consultant/analyst. Prior to any such representation being made or published in written form, it must be submitted to Jayhawk Capital for written approval.

### Section 6.    Indemnification

Aside from any obligations and responsibilities owed proportionately by all shareholders in the Fund, Jayhawk has no obligation or responsibility for the liabilities of the Funds or Primarius Capital Further, the Funds and Primarius Capital agree to indemnify and hold harmless Jayhawk, Jayhawk Capital and Kent C. McCarthy for any claim made against them, individually or jointly, by third parties and/or shareholders of the Funds for acts or omissions related to the Fund.

### Section 7.    Miscellaneous

#### A.    Entire Agreement

This agreement constitutes the entire agreement among the parties with respect to the subject matter herein, supersedes all prior agreements, communications and understanding among the parties with respect thereto, whether written or oral, and no party shall be liable or bound to any other party in any manner by any promises, conditions, warranties, representations or covenants as specifically set forth herein.

#### B.    Choice of Law; Severability

This agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Kansas. If one or more provisions of this agreement are held to be unenforceable under the laws of the State of Kansas, such provision or provisions shall be governed under the laws in the State of California as interpreted by the courts in the State of Kansas (or other mutually agreeable location). If the courts in the State of Kansas cannot or will not so interpret the provision or provisions, the provision or provisions shall be excluded from this agreement and the balance of the agreement shall be interpreted as if such provision or provisions were so excluded and shall be enforceable in accordance with its terms.

Arbitration

Any dispute arising out of or relating to this agreement shall be finally settled by arbitration conducted expeditiously in accordance with the then current rules for arbitration of Commercial Disputes promulgated by the American Arbitration Association by a sole arbitrator. Within 30 days of written notice from the other party requesting it to do so, a party must provide the requesting party with the name of its choice for the arbitrator. If either party refuses or neglects to provide the name of its choice for arbitrator within these time frames, then the other party shall select the arbitrator. If the choice of the requesting party is unacceptable to the other party, it must decline such choice within 15 days and the selection of the arbitrator shall be made by the drawing of lots. Any court having jurisdiction of the parties may enter judgment on the award rendered by the arbitrator and conduct proceedings to enforce the judgment. The place of the arbitration shall be Johnson County, Kansas, (or other mutually agreeable location) and the language shall be English and the arbitrator shall be from the United States. The arbitrator shall have the authority to determine which party bears the cost of the arbitration including the fees charged by the arbitrator during the arbitration. The arbitrator shall determine any and all questions concerning the arbitrability of the dispute. Subject to the express

provisions of this agreement, the arbitrator is empowered to order specific enforcement, award attorney's fees and damages in excess of compensatory damages, and shall award the costs of the arbitration, including but not limited to the arbitrator's fees, to the prevailing party.

Notices

Unless otherwise provided, any notice required or permitted under this agreement shall be given in writing and shall be deemed effectively given upon personal delivery to the party to be notified by hand or professional courier service or five days after deposit with the United States Post Office, by registered or certified mail, postage prepaid, and addressed as follows:

    If to Primarius Capital at:
    Attention: Patrick Lin/Peter Yee
    Primarius Capital Management
    101 California Street
Suite 4010
San Francisco, California
94111

If to Jayhawk or Jayhawk Capital at:
    Attention: Kent C. McCarthy/Marcey M. Berges
Jayhawk Capital Management, L.L.C.
8201 Mission Road
Suite 110
Prairie Village, Kansas
66208

Amendments and Waivers

No term of this agreement may be amended or modified nor may the observance of any term of this agreement be waived (either generally or in a particular instance and either retroactively), except pursuant to the written consent of each party.

Attorney Fees

If any action at law or in equity is necessary to enforce or interpret the terms of this agreement or any other agreement or document to be executed or delivered pursuant hereto, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and disbursements in addition to any other relief to which such party may be entitled.

Remedies

In case any one or more of the covenants and/or agreements set forth in this agreement shall have been breached by any party hereto, the party entitled to the benefit of such covenants or agreements may proceed to protect and enforce its rights either by suit in equity and/or by action at law, including

but not limited to, an action for damages as a result of any such breach and/or an action for specific performance of any such covenant or agreement contained in this agreement. The rights, powers and remedies of the parties under this agreement are cumulative and not exclusive of any other right, power or remedy which such parties may have under any other agreement or under applicable law. No failure to exercise, and no delay in exercising, any right, power or remedy hereunder, shall operate as a waiver thereof, nor shall any single or partial assertion or exercise of any right, power or remedy of a party hereunder preclude or require any other or further assertion or exercise thereof. Representations and Assignment

Primarius Capital represents that it has the exclusive rights to payment from the Fund of all management fees and performance fees payable for the management of the New Funds being established to work with the Fund in a master-feeder fund structure. Further it represents that it will not voluntarily transfer, relinquish or assign these rights. Further, neither this agreement nor any rights or obligations hereunder may be assigned or delegated by either party without the prior written consent of the other party, and any attempt to do so shall be invalid and of no force and effect.

Construction

The parties acknowledge and agree that the agreement has been drafted with combined input and consent from all parties such that no term or provisions is to be construed against either party based upon the contention that the party was the drafter of the term, condition or agreement. Further, all terms and conditions are understood, and the agreement has been signed only after review by, and consultation with, counsel retained by each party on its own behalf.

Signature

This agreement may be signed in counter-parts. Copies and/or facsimiles of signatures to this agreement are to be treated as original signatures.

IN WITNESS WHEREFORE, the parties have executed this agreement as of September 1, 2003.

Management HMITED

by:_____
  Patrick Lin, Manager

China Fund LIMITED

by:_____
  Patrick Lin, Manager

JAYHAWK CHINA FUND (CAYMAN) LTD.

By:_____

Kent C. McCarthy, Managing Member
of Jayhawk Capital Management, L.L.C.,
Manager

JAYHAWK CAPITAL MANAGEMENT, LLC.

By:_____

Kent C. McCarthy, Managing Member