**EXHIBIT  C**

# PRIMARIUS CHINA FUND LP

## *LIMITED PARTNERSHIP AGREEMENT*

### PRIMARIUS CAPITAL LLC
**GENERAL PARTNER**

**Effective as of April 1, 2004**

THE LIMITED PARTNERSHIP INTERESTS ("INTERESTS") IN PRIMARIUS CHINA FUND LP ISSUED PURSUANT TO THIS LIMITED PARTNERSHIP AGREEMENT (THE "AGREEMENT") HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE.    INTERESTS MAY NOT BE TRANSFERRED UNLESS AN EXEMPTION FROM SUCH REGISTRATION IS AVAILABLE.    IN ADDITION, TRANSFERS OF INTERESTS ARE SUBJECT TO THE RESTRICTIONS SET FORTH IN SECTION 5.5 OF THIS AGREEMENT.

# TABLE OF CONTENTS

Page

| | | |
|---|---|---|
| ARTICLE I | DEFINITIONS | 1 |
| | | |
| ARTICLE II | FORMATION; BUSINESS AND OBJECTIVE; STATUS AND DURATION; PRINCIPAL OFFICE | 1 |
| 2.1. | Formation | 1 |
| 2.2. | Business and Objective | 1 |
| 2.3. | Status and Duration | 1 |
| 2.4. | Principal Office | 1 |
| | | |
| ARTICLE III | THE GENERAL PARTNER | 2 |
| 3.1. | Rights, Powers and Authority of the General Partner | 2 |
| 3.2. | Duties of the General Partner | 3 |
| 3.3. | Liabilities of the General Partner Associates | 3 |
| 3.4. | Capital Contribution of the General Partner and Admission of Additional General Partners | 4 |
| 3.5. | Compensation and Reimbursement of Costs and Expenses | 4 |
| 3.6. | Activities of the General Partner Associates; Conflicts of Interest | 5 |
| 3.7. | Reliance by Third Parties | 5 |
| | | |
| ARTICLE IV | LIMITED PARTNERS | 6 |
| 4.1. | Limited Partners Have Limited Personal Liability | 6 |
| 4.2. | Authority of Limited Partners Is Limited | 6 |
| 4.3. | Limited Partners May Not Partition Partnership Property | 7 |
| 4.4. | Limited Partners May Not Remove or Expel General Partner | 7 |
| 4.5. | Subscription Agreements and Other Agreements Incorporated by Reference | 7 |
| | | |
| ARTICLE V | INTERESTS | 7 |
| 5.1. | Issuance and Sale of Interests | 7 |
| 5.2. | Nature of Interests | 8 |
| 5.3. | Nonassessability of Interests | 8 |
| 5.4. | Ownership of Interests | 10 |
| 5.5. | Transfers of Interests | 10 |
| | | |
| ARTICLE VI | DISTRIBUTIONS TO AND WITHDRAWALS BY PARTNERS | 12 |
| 6.1. | Withdrawals by Limited Partners from Capital Accounts | 12 |
| 6.2. | Resignation and Voluntary Withdrawal of Limited Partners | 15 |
| 6.3. | Involuntary Withdrawal of Limited Partners | 15 |
| 6.4. | Status After Withdrawal | 16 |
| 6.5. | Withdrawals by the General Partner | 17 |
| 6.6. | Distributions | 17 |
| 6.7. | Form of Capital Withdrawals | 17 |
| 6.8. | Legal Restrictions on Capital Withdrawals | 18 |
| | | |
| ARTICLE VII | CAPITAL ACCOUNTS; ALLOCATIONS | 18 |
| 7.1. | Capital Accounts; Opening Balances | 18 |
| 7.2. | Closing Balances; Allocation of Profits and Losses for Financial Purposes | 19 |
| 7.3. | Certain Special Allocations | 20 |
| 7.4. | Allocation of Profits and Losses for Federal Income Tax Purposes | 22 |
| 7.5. | No Interest on Capital Contributions | 23 |
| 7.6. | Loans | 23 |

**TABLE OF CONTENTS**
(continued)

Page

| | | |
|---|---|---|
| ARTICLE VIII | RECORDS AND ACCOUNTING; REPORTS; CONFIDENTIALITY | 24 |
| 8.1. | Partnership Books and Records; Inspection Rights | 24 |
| 8.2. | Fiscal Year; Accounting Period; Accounting Methods | 24 |
| 8.3. | Determination and Calculation of Liabilities and Valuation of Assets | 24 |
| 8.4. | Reports | 25 |
| 8.5. | Tax Returns | 25 |
| 8.6. | Confidentiality | 26 |
| ARTICLE IX | EXCULPATION AND INDEMNIFICATION OF GENERAL PARTNER | |
| | ASSOCIATES | 28 |
| 9.1. | Exculpation | 28 |
| 9.2. | Indemnification | 29 |
| 9.3. | Limits on Exculpation and Indemnification | 30 |
| ARTICLE X | AMENDMENT; CONSENTS FOR OTHER PURPOSES | 31 |
| 10.1. | Amendments | 31 |
| 10.2. | Amendment of Certificate | 32 |
| 10.3. | Consents for Other Purposes | 33 |
| ARTICLE XI | DISSOLUTION AND WINDING UP | 33 |
| 11.1. | Events Causing Dissolution | 33 |
| 11.2. | Winding Up | 33 |
| 11.3. | Compensation of Liquidating Trustee | 34 |
| 11.4. | Final Statement | 34 |
| 11.5. | Distribution of Property and Proceeds of Sale Thereof | 34 |
| 11.6. | Deficit Capital Accounts | 35 |
| ARTICLE XII | MISCELLANEOUS | 35 |
| 12.1. | Construction and Governing Law | 35 |
| 12.2. | Counterparts | 37 |
| 12.3. | Binding Effect | 38 |
| 12.4. | Third Party Beneficiaries | 38 |
| 12.5. | Remedies for Breach; Effect of Waiver or Consent | 38 |

# PRIMARIUS CHINA FUND LP

## LIMITED PARTNERSHIP AGREEMENT

This Limited Partnership Agreement is entered into by and among Primarius Capital LLC, a Delaware limited liability company ("**PCM**"), as the sole general partner, Patrick Lin, as the organizational limited partner (the "**Organizational Limited Partner**"), and such other Persons as may be admitted to the Partnership as Partners, or who may become Assignees, pursuant to this Agreement, and is effective commencing September 2, 2003.

## ARTICLE I
## DEFINITIONS

Capitalized terms used in this Agreement have the meanings given them in **ANNEX A**.

## ARTICLE II
## FORMATION; BUSINESS AND OBJECTIVE; STATUS AND DURATION; PRINCIPAL OFFICE

**2.1.    Formation.**  Prior to the Initial Closing, PCM shall execute a Certificate of Limited Partnership of the Partnership in a form that complies with Section 17-201 of the Act and file such Certificate in the office of the Secretary of State of the State of Delaware to complete the formation of the Partnership under the Act.

**2.2.    Business and Objective.** The Partnership's business and objective is to profit from: (a) purchasing and otherwise acquiring Financial Instruments, (b) owning and holding Financial Instruments, (c) selling, selling short, trading, exchanging and otherwise disposing of Financial Instruments and (d) otherwise engaging in lawful transactions in Financial Instruments (including covering short sales of Financial Instruments).

### 2.3.    Status and Duration.

(a)    The Partnership shall be a separate legal entity whose existence shall commence upon the filing of the Certificate and continue until the Certificate is canceled.

(b)    The Certificate shall be canceled at the time and in the manner prescribed by Section 17-203 of the Act.

### 2.4.    Principal Office.

(a)    The principal office of the Partnership shall be in care of the General Partner at its offices located at 101 California, Suite 4010, San Francisco, CA 94111, or at such other place as the General Partner may determine from time to time in its sole and absolute discretion.

(b)    The General Partner shall give Notification to the Partners of any change in the location of the principal office of the Partnership within ten (10) Business Days after the effective date of such change.

## ARTICLE III
## THE GENERAL PARTNER

### 3.1.    Rights, Powers and Authority of the General Partner.

(a)    Subject only to the provisions of this Agreement and the requirements of applicable law, the General Partner shall possess full and exclusive right, power and authority to manage and conduct the business and affairs of the Partnership and to take such actions and engage in such transactions for and on behalf of the Partnership as the General Partner may determine to be necessary, appropriate, advisable or convenient to carry on its business and realize its objective.    Subject to the foregoing, the General Partner may, by way of example and not of limitation:

(i)    cause the Partnership to execute, acknowledge and file certificates, instruments and other documents, and amendments thereto, with federal, state, local or foreign authorities, for the purpose of effectuating and continuing the Partnership's valid existence as a limited partnership or qualifying the Partnership to do business as a limited partnership;

(ii)    cause the Partnership to enter into, deliver and perform such contracts, agreements and undertakings as the General Partner may determine, with such broker-dealers (including "prime brokers"), banks, other financial institutions, custodians, administrators, legal counsel, accountants, auditors, appraisers, placement agents, consultants, other service-providers and counterparties as the General Partner may select from time to time, on such terms and subject to such conditions as the General Partner may determine (including terms relating to compensation, exculpation and indemnification), and regardless of whether such service-providers or counterparties are General Partner Associates or have financial, business or other relationships with the Partnership or any Partner);

(iii)    cause the Partnership to engage in any lawful transaction in any Financial Instrument;

(iv)    cause the Partnership to pay such costs and expenses as the General Partner may determine, including: (A) organizational costs and expenses, and offering costs and expenses incurred in connection with the offer and sale of Interests issued on the date of the Initial Closing; (B) costs and expenses incurred in connection with the offer and sale of Interests after the Initial Closing; (C) Management Fees and Substitute Management Fees; (D) due diligence, research and portfolio management costs and expenses, including costs of software programs related to investment modeling and screening, costs of research reports, data feeds and databases, news wires and quotation services, periodical subscription fees, fees of outside consultants and experts, and travel-related costs and expenses; (E) transaction costs incurred in connection with the investment and reinvestment of the Partnership's assets, including brokerage commissions, dealer mark-ups, mark-downs and spreads, and related clearing and settlement charges; (F) interest expense on Partnership borrowings (including margin debt and obligations under repurchase agreements) and expenses associated with short sales; (G) insurance costs and expenses (including premiums for liability insurance with respect to the Partnership, Indemnitees and other Persons); (H) direct operating expenses, including bank service fees; legal, accounting, auditing, administrative, compliance, bookkeeping, tax form preparation, custodial and consulting costs and expenses; fees, costs and expenses of third-party service providers that provide such services;  printing and mailing costs;  and government fees and taxes (including state franchise and similar taxes);  (I) costs and expenses associated with qualifying to transact business in such jurisdictions as the General Partner may determine; (J) Indemnification Obligations; (K) filing and other regulatory fees and expenses; and (L) extraordinary expenses (if any);

(v)     cause the Partnership to borrow from, open margin accounts with, and enter into rebate arrangements with respect to short positions with, broker-dealers, banks and other financial institutions;

(vi)    cause the Partnership to secure its payment obligations by mortgaging, pledging or hypothecating, or otherwise creating or granting a security interest, lien or encumbrance in, on or against, all or any part of the Partnership's assets; and

(vii)   otherwise cause the Partnership to engage in any and all lawful transactions and activities.

(b)     **Section 3.1(a)** shall not be construed to limit the General Partner's right, power and authority to delegate, to any Person or Persons selected by the General Partner, any of the General Partner's rights, powers and authority hereunder.

(c)     Notwithstanding the provisions of **Section 3.1(a)**, the General Partner may not cause the Partnership to: (i) compensate any General Partner Associate except upon terms and conditions comparable to those that would be negotiated on an "arm's length" basis between unaffiliated parties for the type of service or transaction in question, except that this limitation shall not apply to any payments or allocations made to the General Partner pursuant to this Agreement; or (ii) expend Partnership funds to compensate placement agents, finders or other Persons for marketing Interests or otherwise introducing prospective investors to the Partnership.

### 3.2.    Duties of the General Partner.

(a)     Neither the General Partner nor any other General Partner Associate shall be required to devote its full time or any material portion of its time to the business and affairs of the Partnership, except that the General Partner shall devote so much of its time to the business and affairs of the Partnership, and cause other General Partner Associates to devote so much of their time to the business and affairs of the Partnership, as the General Partner shall determine to be necessary to achieve the Partnership's objective.

(b)     The General Partner shall be responsible for all salaries and employee benefit expenses of the General Partner Associates involved in the management and conduct of the Partnership's business and affairs and related overhead (including rent, utilities and other similar items), except to the extent otherwise contemplated in **Section 3.1(a)** or in the Memorandum.

(c)     Except to the extent provided in **Section 3.2(b)**, the General Partner shall not be required to discharge any of its duties under this Agreement that require the payment of funds to third parties unless adequate Partnership funds are readily available for that purpose.

### 3.3.    Liabilities of the General Partner Associates.

(a)     Except to the extent otherwise required by law, no General Partner Associate other than the General Partner shall be personally liable for repayment, satisfaction or discharge of any debt, liability or obligation of the Partnership, whether arising in tort, contract or otherwise.

(b)     The General Partner shall be liable for the repayment, satisfaction and discharge of all debts, liabilities and obligations of the Partnership, but only to the extent required by law. Except to the extent otherwise required by law, the General Partner shall be liable under this **Section 3.3(b)** only to the extent of its assets, and shall not be required to maintain any minimum net worth.

(c)     Neither the General Partner nor any other General Partner Associate shall have any personal liability for:  (i) the repayment, to any Limited Partner or Assignee, of any Capital Contribution by such Limited Partner or Assignee,  or (ii) the payment, to any Limited Partner or Assignee, of any positive balance in any Capital Account of such Limited Partner or Assignee.

### 3.4.     Capital Contribution of the General Partner and Admission of Additional General Partners.

(a)     On or before the date of the Initial Closing, the General Partner shall make a Capital Contribution in such amount as the General Partner shall determine in its sole and absolute discretion (but in no event less than $1,000).

(b)     Subject to **Section 3.4(c)**, PCM, in its sole and absolute discretion, may cause the Partnership to admit one or more Persons (including one or more Affiliates of PCM) to the Partnership as a general partner or general partners (each such Person, an "**Additional General Partner**"), either in lieu or in addition to PCM.  In connection with admitting an Additional General Partner to the Partnership, PCM may amend this Agreement to provide that such newly admitted Additional General Partner shall possess and may exercise any one or more of the rights, powers and authority possessed by PCM hereunder.

(c)     If the admission of one or more Additional General Partners pursuant **Section 3.4(b)** would constitute an "assignment" of this Agreement by PCM within the meaning of Section 202(a)(1) of the Advisers Act, PCM may not effect such admission without: (i) giving Notification to the Limited Partners, at least forty-five (45) days prior to the date of such admission, setting forth all material facts relating to such admission; and (ii) obtaining the Consent of the Partnership to such admission prior to the effective date thereof.

### 3.5.     Compensation and Reimbursement of Costs and Expenses.

(a)     The Partnership shall pay the General Partner, in respect of each Capital Account (other than the Capital Account of the General Partner), the Management Fee as defined in the Memorandum in effect at the time such Capital Account was established pursuant to this Agreement, in the amount(s), at the time(s) and in the manner set forth therein; *provided, however,* that the General Partner, in its sole and absolute discretion, may waive or reduce any or all of the Management Fee in respect of any Capital Account, or agree to a management fee arrangement in respect of any Capital Account that differs from that set forth in the Memorandum in effect at the time such Capital Account was established pursuant to this Agreement (a "**Substitute Management Fee**").  No such waiver, reduction or different arrangement in respect of a particular Capital Account will entitle the Limited Partner or Assignee that holds such Account, or any other Limited Partner or Assignee,  to such a waiver, reduction or different arrangement in respect of any other Capital Account.

(b)     Unless the General Partner determines otherwise in its sole and absolute discretion, the Management Fee or Substitute Management Fee in respect of a Capital Account shall be debited directly from that Account and paid to the General Partner, and shall not be credited to the General Partner's Capital Account.

(c)     Subject to **Sections 3.1(c)** and **3.2(b)**, to the extent a General Partner Associate incurs any cost or expense determined by the General Partner to be necessary, appropriate, advisable or convenient to effect the formation of the Partnership, carry on its business or realize its objective, the Partnership shall reimburse such General Partner Associate for such cost or expense (unless the General

Partner determines, in its sole and absolute discretion, that such General Partner Associate shall bear such cost or expense without reimbursement).

(d) To the extent the General Partner Associates incur costs or expense of the types described in **Section 3.1(a)(iv)(A)** and the General Partner has determined that such costs or expenses are necessary, appropriate, advisable or convenient either to effect the formation of the Partnership or to offer and sell Interests on or prior to the date of the Initial Closing, the Partnership shall: (i) reimburse such General Partner Associates for such costs and expenses out of the proceeds received by the Partnership at the Initial Closing (except to the extent the General Partner determines, in its sole and absolute discretion, that such General Partner Associates shall bear such costs or expenses without reimbursement); and (ii) amortize such costs and expenses in equal installments over 60 months, commencing as of the end of the month in which the Initial Closing occurs, for purposes of determining Net Assets.

**3.6.** **Activities of the General Partner Associates; Conflicts of Interest.** Each Limited Partner, by subscribing for an Interest, shall be deemed to have: (a) given, for itself and for each subsequent Assignee of all or any part of such Interest, full and informed consent to each action and practice involving an actual or potential conflict between the interests of any one or more General Partner Associates, on the one hand, and any one or more of the Partnership, the Limited Partners and the Assignees, on the other hand, and (b) agreed, for itself and for each subsequent Assignee of all or any part of such Interest, not to object to any such action or practice, and not to bring any Proceeding against any General Partner Associate or the Partnership, on the grounds that such action or practice involves or involved a breach of the fiduciary duty of loyalty on the part of the General Partner or any other General Partner Associate, if: (i) such action or practice is described in this Agreement; (ii) such action or practice was described in the Memorandum in effect at the time the General Partner accepted such Limited Partner's Subscription Agreement; or (iii) the General Partner has given Notification to the Limited Partners, at least thirty (30) days prior to the taking of such action or the implementation of such practice, setting forth all material facts relating to such action or practice, and has obtained the Consent of the Partnership to such action or practice prior to the taking of such action or the implementation of such practice.

**3.7.** **Reliance by Third Parties.**

(a) Notwithstanding any other provision of this Agreement, any Person dealing with the Partnership shall be entitled to assume that the General Partner has full right, power and authority to: (i) transfer, sell, assign, exchange, pledge, mortgage or hypothecate, create or grant a security interest, lien or encumbrance in, on or against, or otherwise convey or dispose of, in any manner, any and all assets of the Partnership and (ii) enter into any agreements on behalf of the Partnership and cause the Partnership to perform such agreements, and such Person shall be entitled to deal with the General Partner as if the General Partner were the Partnership's sole party in interest, both legally and beneficially.

(b) In no event shall any Person dealing with the General Partner or any of its representatives be obligated to ascertain that the provisions of this Agreement have been complied with or to inquire into the necessity or expedience of any action of the General Partner or any of its representatives.

(c) Each and every certificate, instrument or other document executed on behalf of the Partnership by the General Partner shall be conclusive evidence in favor of each and every Person relying thereon or claiming thereunder that: (i) at the time of the execution and delivery of such certificate, instrument or document, this Agreement was in full force and effect; (ii) the Person executing and delivering such certificate, instrument or document was duly authorized and empowered to do so for

-5-

and on behalf of the Partnership; and (iii) such certificate, instrument or other document was duly executed and delivered in accordance with this Agreement and is binding upon the Partnership.

## ARTICLE IV
## LIMITED PARTNERS

### 4.1.    Limited Partners Have Limited Personal Liability.

(a)    Subject to the provisions of **Section 4.1(b)**, no Limited Partner or Assignee shall be personally liable for the debts, liabilities or obligations of the Partnership, whether arising in tort, contract or otherwise, unless: (i) such Limited Partner or Assignee expressly agrees otherwise; (ii) such Limited Partner or Assignee, in addition to exercising its rights, powers and authority as a Limited Partner or Assignee, as the case may be, is admitted to the Partnership as a general partner; or (iii) such Limited Partner or Assignee "participates in the control of the business" of the Partnership within the meaning of Section 17-303 of the Act. For the avoidance of doubt, this **Section 4.1(a)** shall not be interpreted to: (i) suggest that Capital Accounts are not subject to risk of loss, including the possible loss of the entire balances thereof or (ii) limit the liabilities of Limited Partners and Assignees under **Section 5.3**.

(b)    Notwithstanding the provisions of **Section 4.1(a)**, if the Partnership incurs a withholding tax or other tax obligation with respect to the share of Partnership income allocable to any Capital Account, and if the amount of any such obligation exceeds the balance of such Capital Account, then the Limited Partner or Assignee that holds such Capital Account must, upon demand by the General Partner, pay to the Partnership, as a Capital Contribution, an amount equal to such excess. The General Partner is not obligated to apply for or obtain a reduction of or exemption from any applicable withholding tax on behalf of any Limited Partner or Assignee.

### 4.2.    Authority of Limited Partners Is Limited.

(a)    No Limited Partner or Assignee, in its capacity as such, shall take part in the management or conduct of the business or affairs of the Partnership or act or transact any business in the name of or otherwise for or on behalf of the Partnership.

(b)    Without limiting the general scope of **Section 4.2(a)**, no Limited Partner or Assignee, in its capacity as such, shall have the right, power or authority to sign documents for, incur any indebtedness or expenditures on behalf of or otherwise bind the Partnership in connection with any matter.

(c)    No Limited Partner or Assignee, in its capacity as such, shall have the right, power or authority to authorize, approve, agree or consent to, or vote on, any matter affecting the Partnership except to the extent any such right, power or authority is expressly granted to such Limited Partner or Assignee by this Agreement or by provisions of the Act that may not lawfully be modified or nullified by agreement among the partners of a limited partnership formed under the Act.

(d)    To the extent permitted by law, the General Partner may enter into an agreement with any Limited Partner or Assignee whereby such Limited Partner or Assignee agrees to waive all rights, powers and authority to authorize, approve, agree or consent, or vote on, any or all matters affecting the Partnership.

(e)    Without limiting the general scope of Sections 17-303(b), (c), (d) and (f) of the Act: (i) any rights expressly granted to the Limited Partners in this Agreement shall not be deemed to be rights the possession, attempted exercise or exercise of which would involve Limited Partners in

"participation in the control of the business" of the Partnership within the meaning of Section 17-303 of the Act; and (ii) acting or attempting to act in any one or more of the capacities in which a Limited Partner may act or attempt to act under the provisions of this Agreement shall not be deemed to involve such Limited Partner in "participation in the control of the business" of the Partnership within the meaning of Section 17-303 of the Act.

**4.3.    Limited Partners May Not Partition Partnership Property.**

(a)    No Limited Partner or Limited Partners, or Assignee or Assignees, individually or collectively, shall have any right, title or interest in or to specific Partnership Property.

(b)    Each Limited Partner and Assignee irrevocably waives any right that it may have to maintain an action for partition with respect to its Interest or any Partnership Property.

**4.4.    Limited Partners May Not Remove or Expel General Partner.**    No Limited Partner or Limited Partners, or Assignee or Assignees, individually or collectively, shall have any right, power or authority to: (a) remove or expel the General Partner, (b) cause the General Partner to withdraw from the Partnership or (c) appoint a successor general partner in the event of an Event of Withdrawal of the General Partner, the Bankruptcy of the General Partner or otherwise, unless such right, power or authority is conferred on it or them by law.

**4.5.    Subscription Agreements and Other Agreements Incorporated by Reference.**    Each Subscription Agreement or Other Agreement executed and delivered by a Limited Partner or Assignee, including any representations, warranties, covenants and power of attorney set forth therein, is hereby incorporated into this Agreement as if set forth in full in this Agreement.

## ARTICLE V
## INTERESTS

**5.1.    Issuance and Sale of Interests.**

(a)    The Organizational Limited Partner, in his capacity as such, shall not be required to contribute any capital to, and shall not be entitled to withdraw any capital from, the Partnership. The Organizational Limited Partner shall be a limited partner of the Partnership but, in his capacity as such, shall not have an Interest. Immediately after the admission to the Partnership, as a Limited Partner, of a Person who acquires an Interest pursuant to the provisions of **Section 5.1(c)**, the Organizational Limited Partner shall be deemed to have resigned and withdrawn from the Partnership as a limited partner without any further action on the part of the Organizational Limited Partner or the Partnership. Upon such resignation and withdrawal, the Organizational Limited Partner shall cease to (i) have any interest, right, power or authority in or with respect to the Partnership as a Partner and (ii) be subject to any of the duties or liabilities of a Partner (unless he shall thereafter become a Partner in accordance with the provisions of this Agreement).

(b)    After the date of this Agreement, no Person shall be admitted to the Partnership as a Limited Partner unless such admission is effected in accordance with **Section 5.1(c)** or **Section 5.5(b)(ii)(A)**.

(c)    The General Partner may authorize the Partnership to offer, sell and issue Interests, and to admit Persons to the Partnership as Limited Partners in connection therewith, in such manner and at such time or times as the General Partner may determine, except that the General Partner may not cause the Partnership to offer, sell or issue Interests in a manner inconsistent with this Agreement

-7-

or the Memorandum in effect at the relevant time, or to any Person who has failed to execute a Subscription Agreement or other document under which such Person has agreed to be bound by the provisions of this Agreement as a Limited Partner.

(d)     The General Partner may accept or reject the amount of any subscription for an Interest in whole or in part in its sole and absolute discretion.

(e)     Each Person whose Subscription Agreement has been accepted by the General Partner shall, to the extent the General Partner has agreed to accept a Capital Contribution or Capital Contributions under such Subscription Agreement,     make such Capital Contribution or Capital Contributions in cash in immediately available funds (unless the General Partner agrees in its sole and absolute discretion to accept such Capital Contribution in the form of property other than cash) at the time(s) and place(s) set forth in such Subscription Agreement or in a Notification given to such Person pursuant to such Subscription Agreement; *provided, however,* that subject to the provisions of Section 17-502(b)(1) of the Act, the General Partner may compromise or waive any obligation a Limited Partner may have to the Partnership under its Subscription Agreement (including an obligation to make a Capital Contribution to the Partnership) or otherwise, on such terms and subject to such conditions as the General Partner may determine.

(f)     Subject to **Section 5.1(g)**, the General Partner shall cause the books and records of the Partnership to reflect the admission of a Person to the Partnership as a Limited Partner as of first day of the Accounting Period during which the Partnership accepts the initial Capital Contribution that the General Partner has agreed to accept under such Person's Subscription Agreement, provided the Partnership receives such initial Capital Contribution no later than the first Business Day of such Accounting Period.

(g)     The General Partner may establish a Capital Account for a Limited Partner pursuant to **Section 7.1(a)** and deem a Capital Contribution to have been made to such Capital Account as of the beginning of an Accounting Period even though such Capital Contribution is received by the Partnership after the first Business Day of such Accounting Period if the General Partner determines that deeming such Capital Contribution to have been made as of the beginning of such Accounting Period does not have and cannot reasonably to expected to have a material adverse effect on the Limited Partners generally. In that event, the General Partner may in its sole and absolute discretion charge the Opening Balance of such Capital Account (determined as of the beginning of such Accounting Period), or require such Limited Partner to pay, interest for the period from the beginning of such Accounting Period to the date such Capital Contribution is actually received by the Partnership. Any interest charged to (or paid by) such Limited Partner shall be credited *pro rata* to the Opening Balances of all other Capital Accounts (determined as of beginning of such Accounting Period).     All interest required to be paid or charged under this **Section 5.1(g)** will be at a floating rate determined by the General Partner.

(h)     A Person who has been admitted to the Partnership as a Limited Partner and who wishes to make a Capital Contribution not required to be made under such Person's Subscription Agreement may do so only upon the approval of the General Partner. The General Partner may withhold such approval in its sole and absolute discretion.

**5.2.    Nature of Interests.**  Interests shall be deemed to be personal property giving only the rights, powers, authority, privileges and preferences provided in this Agreement, notwithstanding the nature of the property held by the Partnership.

**5.3.    Nonassessability of Interests.**     Each Interest, when issued and fully paid for in accordance with the provisions of the related Subscription Agreement, shall be fully paid and

-8-

nonassessable, and, subject to **Section 4.1(b)**, neither the Partnership nor any officer, employee or agent of the Partnership shall have the right, power or authority to call upon a Limited Partner or Assignee to pay any sum of money whatsoever in respect of such Limited Partner's or Assignee's Interest, whether in the form of a Capital Contribution, a loan or otherwise, other than that which such Limited Partner or Assignee has agreed to pay by way of such Subscription Agreement or has otherwise expressly agreed to pay. However, each Person shall be required to return to the Partnership amounts previously distributed to it by the Partnership as follows:

   (a) A Person who receives any amount distributed by the Partnership in violation of Section 17-607(a) of the Act shall be liable to the Partnership for the return of such amount, together with interest thereon from the date of such distribution at a floating rate determined by the General Partner, notwithstanding that such Person had no knowledge of such violation at the time of its receipt of such amount. Subject to the provisions of Section 17-502(b)(1) of the Act, the General Partner may compromise or waive any such liability on such terms and subject to such conditions as the General Partner may determine. This **Section 5.3(a)** shall not apply to distributions made pursuant to **Section 11.5**.

   (b) A Person who receives any amount distributed by the Partnership in violation of Section 17-804(a) of the Act shall be liable to the Partnership for the return of such amount, together with interest thereon from the date of such distribution at a floating rate determined by the Liquidating Trustee, notwithstanding that such Person had no knowledge of such violation at the time of its receipt of such amount. Subject to the provisions of Section 17-502(b)(1) of the Act, the Liquidating Trustee may compromise or waive any such liability on such terms and subject to such conditions as the Liquidating Trustee may determine.

   (c) A Person who receives any amount distributed by the Partnership in excess of the amount to which such Person was entitled under this Agreement because the Net Assets attributable to such Person's Capital Account(s) were miscalculated for any reason (irrespective of whether the event or circumstance giving rise to such miscalculation was known or unknown to the General Partner or such Person at the time of such distribution), shall be liable to the Partnership for the return of such amount, together with interest thereon from the date of such distribution at a floating rate determined by the General Partner

   (d) Without limiting the scope of **Section 5.3(c)**, the General Partner may determine to treat any expenditure of the Partnership that is incurred, or any liability of the Partnership that becomes known or fixed, after the Accounting Period in which the event or circumstance (whether known or unknown) giving rise to such expenditure or liability occurred (the "**Prior Accounting Period**") as either (i) arising in the Accounting Period in which such expenditure is incurred or such liability becomes known or fixed or (ii) arising in such Prior Accounting Period, in which later case such expenditure or liability shall be charged to Persons who were Partners or Assignees during such Prior Accounting Period (whether or not such Persons are Partners or Assignees during the Accounting Period in which such expenditure is incurred or such liability becomes known or fixed) in accordance with the Opening Balances of their Capital Accounts as of the beginning of such Prior Accounting Period, and the General Partner may require a Partner, Assignee or former Partner or Assignee to: (A) return to the Partnership amounts previously distributed to such Person by the Partnership to the extent of such Person's share of such expenditure or liabilities (determined in accordance with the Opening Balance of such Person's Capital Account as of the beginning of such Accounting Period) and (B) pay interest on such repayment, accruing from the time such Person received such distribution, at a floating rate determined by the General Partner.

(e)     If a Person receives a distribution from the Partnership in an amount less than the amount to which such Person was entitled under this Agreement because the Net Assets attributable to such Person's Capital Account(s) were miscalculated for any reason (irrespective of whether the event or circumstance giving rise to such miscalculation was known or unknown to the General Partner or such Person at the time of such distribution), the General Partner, in its sole and absolute discretion, may cause the Partnership to pay the amount of such difference to such Person, together with interest thereon from the date of such distribution at a floating rate determined by the General Partner.

(f)     Each Person shall remain liable to the Partnership, prior to the cancellation of the Certificate as provided in **Section 2.3(b)** and thereafter for the time period set forth in **Section 9.2(h)**, in an aggregate amount not to exceed such Person's Capital Withdrawals (and distributions made to such Person pursuant to **Section 11.5**) to the extent necessary to enable the Partnership to satisfy its Indemnification Obligations. Each Person's liability under this **Section 5.3(f)** shall be in the proportion that the amount of such Person's Capital Withdrawals (and distributions made to such Person pursuant to **Section 11.5**) bears to all Capital Withdrawals by Limited Partners and Assignees (and all distributions made to all Limited Partners and Assignees pursuant to **Section 11.5**).

(g)     The General Partner may, to the extent necessary to settle the liabilities described in this **Section 5.3**, either adjust the Capital Accounts of the appropriate Persons(s) downward or upward to reflect amounts due from or owing to such Person(s), as the case may be, or cause the Partnership to request payments from or make payments to the appropriate Persons(s). The General Partner shall not be required to make any such downward adjustment or request for payment unless failure to do so would have a material adverse effect on the Partnership.     It shall be conclusively presumed that any failure to make any such downward adjustment or request for payment shall not have a material adverse effect on the Partnership if the amount in question is less than 1% of the amount of Net Assets at the time contemplated for such adjustment or request.     If the General Partner requests such a payment from a Person and such Person does not comply with such request, the General Partner shall exercise its reasonable discretion in determining whether the Partnership should institute a Proceeding against such Person to recover the amount requested.

**5.4.     Ownership of Interests**. The ownership of Interests shall be recorded on the books and records of the Partnership, and no certificates certifying the ownership of Interests shall be issued except as the General Partner may determine from time to time in its sole and absolute discretion.

**5.5.     Transfers of Interests.**

(a)     *Restrictions on Transfer.*     No Limited Partner or Assignee may Transfer an Interest (or any interest therein) unless: (i) such Transfer has received the General Partner's express prior approval (it being understood and agreed that the General Partner may withhold such approval in its sole and absolute discretion); (ii) in the case of a Limited Partner or Assignee that is a natural person, such Limited Partner or Assignee dies or a court of competent jurisdiction adjudges him to be incompetent to manage his person or his property (in which case such Interest shall be Transferred to the Personal Representative of such Limited Partner or Assignee without the approval of the General Partner, subject to the restrictions set forth in this **Section 5.5(a)** with respect to any subsequent Transfer of such Interest (or interest therein)); or (iii) such Transfer arises by operation of the provisions of Section 17-703(a) of the Act.

(b)     *Duties and Liabilities of Transferors and Transferees.*

(i)     Duties and Liabilities of Transferors.

(A)     If a Person Transfers an Interest (or an interest therein) pursuant to **Section 5.5(a)**, such Person or its Personal Representative shall be responsible for any legal, accounting and other costs and expenses incurred by the Partnership in connection with such Transfer, including costs and expenses associated with reviewing such Transfer for compliance with this **Section 5.5** and applicable law.

(B)     Upon the request of the General Partner, in the case of a Transfer of an Interest (or any interest therein) of a type other than that described in **Section 5.5(a)(ii)**, the transferee or the transferor of such Interest (or interest therein) shall, at such Person's sole cost and expense, either cause the Partnership to be provided with, or authorize the Partnership to obtain, an opinion of counsel reasonably satisfactory to the General Partner that the proposed Transfer complies with the 1933 Act and any applicable state securities laws.

(C)     Unless the General Partner expressly agrees otherwise in its sole and absolute discretion, no Transfer of an Interest (or any interest therein), other than pursuant to a statutory merger or consolidation of the transferor wherein all duties and liabilities of the transferor are assumed by a successor corporation by operation of law, shall relieve the transferor of its duties and liabilities under this Agreement.

(ii)     Rights, Duties and Liabilities of Transferees.

(A)     No Person to whom a Transfer of an Interest (or an interest therein) has been made pursuant to the provisions of **Section 5.5(a)** (an "**Assignee**"), including a Personal Representative to whom a Transfer is made pursuant to **Section 5.5(a)(ii)**, shall be entitled to be admitted to the Partnership as a Limited Partner or to exercise any of the rights, powers or authority of a Limited Partner, unless the General Partner approves thereof.   The General Partner may withhold such approval in its sole and absolute discretion.

(B)     Prior to the admission of an Assignee to the Partnership as a Limited Partner pursuant to **Section 5.5(b)(ii)(A)**, such Assignee shall be entitled only to share in such increases and decreases of Net Assets, to receive such distributions, and to receive such allocations of Tax Items, as the transferor would have been entitled to share and receive in respect of the Interest or interest therein Transferred by such transferor to such Assignee, and shall have no other rights, powers or authority in or with respect to the Partnership, except as otherwise expressly set forth herein.

(C)     An Assignee admitted to the Partnership as a Limited Partner pursuant to **Section 5.5(b)(ii)(A)** shall, to the extent of the Interest Transferred to such Assignee, succeed to all of the rights, powers and authority of the transferor Limited Partner under this Agreement in the place and stead of such transferor Limited Partner, except to the extent the General Partner and such Assignee expressly agree otherwise.

(D)     Unless the General Partner expressly agrees otherwise in its sole and absolute discretion, notwithstanding any provision of Section 17-702(c) of the Act, any Assignee to whom an Interest (or an interest therein) is Transferred, whether or not such Assignee is admitted to the Partnership as a Limited Partner, shall, to the extent of such Interest (or interest therein),  succeed to the duties, obligations and liabilities of the transferor under this Agreement.

-11-

(c)    *Effective Dates of Transfers.*

(i)    Transfers of Interests (or interests therein) pursuant to this **Section 5.5** may be made on any day, but for purposes of this Agreement, a Transfer shall be deemed to occur at the beginning of the Accounting Period during which such Transfer occurs, if such Transfer occurs on or prior to the fifteenth of such Accounting Period, or at the beginning of the Accounting Period immediately following the Accounting Period during which such Transfer occurs, if such Transfer occurs after the fifteenth day of an Accounting Period, or such other time determined by the General Partner pursuant to such convention as may be administratively feasible and consistent with applicable law.

(ii)    All distributions pursuant to this Agreement attributable to a Transferred Interest (or interest therein): (A) with respect to which the distribution record date determined by the General Partner is before the date such Transfer is deemed to occur, shall be made to the transferor, and (B) with respect to which the distribution record date determined by the General Partner is on or after the date such Transfer (other than a pledge, encumbrance, hypothecation or mortgage) is deemed to occur, shall be made to the transferee.

(iii)    If any Interest (or an interest therein) is deemed to be Transferred on any day other than the first day of a calendar year, then each Tax Item attributable thereto for such year shall be allocated to the transferor and the transferee by taking into account their varying interests during such year in accordance with Section 706(d) of the Code, using any method permitted thereunder.

(d)    *Effect of Non-Complying Transfers.* Any Transfer of any Interest (or interest therein) in breach of this **Section 5.5**, or that would, in the General Partner's judgment, either: (i) cause the Partnership, the Master Fund or the General Partner to be in violation of any requirement, condition or guideline contained in any federal state or foreign law or in any order, directive, opinion, ruling or regulation of a federal, state or foreign governmental agency or self-regulatory organization; (ii) jeopardize the Partnership's or the Master Fund's continuing classification as a partnership for federal income tax purposes; (iii) result in the Partnership or the Master Fund being treated as a "publicly traded partnership" within the meaning of Section 7704 of the Code and applicable Treasury Regulations, (iv) result in any of the assets of the Partnership or the Master Fund being treated as Plan Assets, (v) necessitate the registration of the Partnership or the Master Fund as an investment company under the 1940 Act or (vi) result in the occurrence of any "prohibited transaction" (within the meaning of Section 406 of ERISA or Section 4975(c) of the Code), shall be wholly null and void and shall not effectuate the Transfer contemplated thereby. The Partnership shall have the right to obtain injunctive relief (in addition to and not in lieu of any other remedies available to it) in the event of any breach or threatened breach of the provisions of this **Section 5.5**.

## ARTICLE VI
## DISTRIBUTIONS TO AND WITHDRAWALS BY PARTNERS

### 6.1.    Withdrawals by Limited Partners from Capital Accounts.

(a)    No Limited Partner or Assignee shall be entitled to withdraw any amount from the Partnership except to the extent of a positive balance in such Limited Partner's or Assignee's Capital Account(s), determined after giving effect to all adjustments thereto contemplated by this Agreement, and no Limited Partner or Assignee shall be entitled to withdraw any amount from, or receive the fair value of any portion of, any Capital Account of such Limited Partner or Assignee, except to the extent (i) such right is described in the Memorandum in effect at the time such Capital Account was established pursuant to this Agreement, or the General Partner, in its sole and absolute discretion, has agreed to a Substitute Withdrawal Arrangement with such Limited Partner or Assignee with respect to such Capital Account;

(ii) the General Partner, in its sole and absolute discretion, permits such withdrawal; or (iii) such Limited Partner or Assignee is entitled to receive distributions in connection with the winding up of the Partnership as provided in **Article XI**. All Capital Withdrawals shall be subject to the provisions of **Sections 5.3**, **6.1(b)-(i)**, **6.7**, **6.8**, **6.9** and **6.10**.

(b) In order to provide for equitable treatment among Persons withdrawing funds at various times, the amount withdrawn by any Limited Partner or Assignee from a Capital Account may, in the sole and absolute discretion of the General Partner, be subject to a charge to reflect: (i) the transaction costs actually and reasonably incurred by the Partnership in connection with selling assets to effect such withdrawal (to the extent the General Partner sells Partnership assets to effect such withdrawal) and/or (ii) the transaction costs that the General Partner determines the Partnership would reasonably incur if the General Partner were to sell Partnership assets to effect such withdrawal (to the extent the General Partner determines not to sell Partnership assets to effect such withdrawal). To the extent the General Partner determines to sell Partnership assets to effect a withdrawal, the transaction costs actually and reasonably incurred by the Partnership in connection with such sales shall be charged against and deducted from the withdrawal proceeds otherwise payable to the withdrawing Limited Partner or Assignee. To the extent the General Partner determines not to sell Partnership assets to effect a withdrawal, the transaction costs that the General Partner determines the Partnership would reasonably incur if it sold assets for that purpose will be charged against and deducted from the withdrawal proceeds otherwise payable to the withdrawing Limited Partner or Assignee and credited to the Capital Accounts from which withdrawals are not then being made, *pro rata* in accordance with their respective Opening Account balances as of the beginning of the Accounting Period during which such withdrawal was effective.

(c) If (i) a Limited Partner or Assignee requests withdrawal of a specific dollar amount from a Capital Account and the General Partner approves such withdrawal in its sole and absolute discretion, or such Limited Partner or Assignee has the right to withdraw such amount from such Capital Account pursuant to **Section 6.1(a)**, or (ii) a Limited Partner or Assignee is required pursuant to this Agreement to withdraw a specific dollar amount from a Capital Account, and, in either such case, such amount (in the General Partner's judgment) is less than 95% of the balance of such Capital Account, the General Partner shall cause the Partnership, to the extent reasonably practicable, to distribute the amount permitted or required to be withdrawn within thirty (30) days following the effective date of such withdrawal.

(d) If (i) a Limited Partner or Assignee requests withdrawal of a specific dollar amount from a Capital Account and the General Partner approves such withdrawal in its sole and absolute discretion, or such Limited Partner or Assignee has the right to withdraw such amount from such Capital Account pursuant to **Section 6.1(a)**, or (ii) a Limited Partner or Assignee is required pursuant to this Agreement to withdraw a specific dollar amount from a Capital Account, and, in either such case, such amount (in the General Partner's judgment) is equal to or greater than 95% of the balance of such Account, the General Partner shall make a good faith estimate of the amount permitted or required to be withdrawn and shall cause the Partnership, to the extent reasonably practicable, to distribute 90% of such estimated amount within thirty (30) days following the effective date of such withdrawal and to distribute the remaining amount to which such Limited Partner or Assignee is entitled in connection with such withdrawal within thirty (30) days after the next regular determination of Net Assets.

(e) Notwithstanding any other provision of this Agreement, the General Partner may suspend withdrawals and/or payments due to Limited Partners and Assignees in connection with withdrawals for the whole or any part of any period during which:

(i) the General Partner determines that: (A) effecting such withdrawals or making such payments would violate the Act or have a material adverse effect on the Limited Partners

-13-

generally; (B) it is not reasonably practicable to accurately ascertain the value of a material portion of the assets of the Partnership due to factors such as the closure of or the suspension of trading on any stock exchange or other market on which such assets are usually traded or the break-down in any of the means usually employed by the General Partner in ascertaining such value; or (C) circumstances exist as a result of which it is not reasonably practicable for the Partnership to realize on the value of a material portion of its assets; or

(ii)     the General Partner or Board of Directors of the Master Fund ("**Master Fund Governing Body**") has informed the General Partner that the Master Fund Governing Body has determined that: (A) effecting withdrawals from the Master Fund would violate applicable law or have a material adverse effect on investors in the Master Fund generally; (B) it is not reasonably practicable to accurately ascertain the value of a material portion of the assets of the Master Fund due to factors such as the closure of or the suspension of trading on any stock exchange or other market on which such assets are usually traded or the break-down in any of the means usually employed by the Master Fund in ascertaining such value; or (C) circumstances exist as a result of which it is not reasonably practicable for the Master Fund to realize on the value of a material portion of its assets. The General Partner may also temporarily suspend withdrawals and/or payments due to Limited Partners and Assignees in connection with withdrawals in order for the Partnership or the Master Fund to effect the orderly liquidation of its assets necessary to effect withdrawals.

(f)     If: (i) a Limited Partner or Assignee has duly requested a withdrawal from a Capital Account as of a particular date pursuant to the provisions of **Section 6.1(a)**, or the General Partner permits or requires a Limited Partner or Assignee to withdraw an amount from a Capital Account as of a particular date pursuant to the provisions of this Agreement, (ii) no suspension of withdrawals or withdrawal payments is in effect as of such date and (iii) the General Partner subsequently determines to suspend withdrawals or withdrawal payments prior to the time such Limited Partner or Assignee has received the entire amount due to it in connection with such withdrawal, then: (A) the balance of such Capital Account for purposes of determining the amount such Limited Partner or Assignee is entitled to withdraw from such Account shall be determined as of such date, and such withdrawal shall be deemed to be effected as of such date, and (B) the Partnership may withhold payment of the remaining amount due to such Limited Partner or Assignee in connection with such withdrawal until such suspension has been lifted (subject to the General Partner's right to withhold amounts from such withdrawal until the thirtieth day after the next regular determination of Net Assets, as provided in **Section 6.1(d)**).

(g)     If: (i) a Limited Partner or Assignee has duly requested a withdrawal from a Capital Account as of a particular date pursuant to the provisions of **Section 6.1(a)**, or the General Partner permits or requires a Limited Partner or Assignee to withdraw an amount from a Capital Account as of a particular date pursuant to the provisions of this Agreement and (ii) a suspension of withdrawals or withdrawal payments is in effect as of such date, then (A) the General Partner will give Notification of such suspension to such Limited Partner or Assignee; and (B) the balance of such Capital Account for purposes of determining the amount such Limited Partner or Assignee is entitled to withdraw from such Account shall be determined as of the first month-end following the end of such suspension, and such withdrawal shall be effected in accordance with the provisions of **Section 6.1(c)** or **(d)**, as the case may be, as of such first month-end; *provided, however,* that (I) such Limited Partner or Assignee (other than a Limited Partner or Assignee required to withdraw) may rescind its withdrawal request by giving Notification of such rescission to the General Partner no later 10 (ten) days after the date the General Partner has given Notification of such suspension to such Limited Partner or Assignee; and (II) if the General Partner subsequently determines to suspend withdrawals and/or withdrawal payments prior to the time such Limited Partner or Assignee has received the entire amount due to it in connection with such withdrawal, the Partnership may withhold payment of the remaining amount due to such Limited Partner or Assignee in connection with such withdrawal until such suspension has been lifted (subject to the

-14-

General Partner's right to withhold amounts from such withdrawal until the thirtieth day after the next regular determination of Net Assets, as provided in **Section 6.1(d)**).

(h)     In general, withdrawal proceeds shall not bear interest from the effective date of the withdrawal to the date of payment. However, the General Partner, in its sole and absolute discretion, may cause the Partnership to credit interest to a Limited Partner or Assignee in respect of any withdrawal proceeds payable to such Limited Partner or Assignee.

(i)     Unless the General Partner determines otherwise in its sole and absolute discretion, no Person who is a "judgment creditor" of a Limited Partner or Assignee within the meaning of Section 17-703(a) of the Act may withdraw any amount from any Capital Account of such Limited Partner, notwithstanding that the related Interest has been charged to satisfy a judgement against such Limited Partner or Assignee in favor of such Person in accordance with the provisions of Section 17-703(a) of the Act.

(j)     The General Partner, in its sole and absolute discretion, may agree in writing to a withdrawal arrangement in respect of any Capital Account of a Limited Partner or Assignee that is a substitute for that set forth in the Memorandum in effect at the time such Capital Account was established pursuant to this Agreement (a "**Substitute Withdrawal Arrangement**"). No such substitute arrangement in respect of a particular Capital Account will entitle the Limited Partner or Assignee that holds such Account, or any other Limited Partner or Assignee, to such a substitute arrangement in respect of any other Capital Account.

(k)     The General Partner, in its sole and absolute discretion, may permit a Limited Partner or Assignee to withdraw amounts from a Capital Account at times that differ from, or upon notice periods that are shorter than, the times and notice periods set forth in: (i) the Memorandum in effect at the time such Capital Account was established pursuant to this Agreement; or (ii) any Substitute Withdrawal Arrangement with such Limited Partner or Assignee. No such permission to withdraw an amount from a Capital Account shall entitle the Limited Partner or Assignee that holds such Account, or any other Limited Partner or Assignee, to such permission in respect of any other Capital Account.

**6.2.     Resignation and Voluntary Withdrawal of Limited Partners.**

(a)     Prior to the completion of the winding up of the business and affairs of the Partnership, no Limited Partner or Assignee shall have the right to resign or withdraw as such, unless such Limited Partner or Assignee withdraws the entire balance(s) of its Capital Account(s) in accordance with this Agreement or such resignation or withdrawal has been approved by the General Partner in its sole and absolute discretion.

(b)     Subject to the provisions of **Sections 5.3**, **6.1(b)-(i)**, **6.7**, **6.8**, **6.9** and **6.10**, any Limited Partner or Assignee whose resignation or withdrawal has been approved by the General Partner shall be entitled to withdraw any positive balance(s) in its Capital Account(s), determined as of the effective date of such resignation or withdrawal.

**6.3.     Involuntary Withdrawal of Limited Partners.** The General Partner, in its sole and absolute discretion, may require any Limited Partner or Assignee to: (a) withdraw all or any portion of its Capital Account(s) as of any month-end by giving not less than five (5) days' Notification to such Limited Partner or Assignee; or (b) withdraw as a Limited Partner or Assignee as of any month-end by giving not less than five (5) days' Notification to such Limited Partner or Assignee. The General Partner may at any time require any Limited Partner or Assignee to withdraw all or any portion of its Capital Account(s), or withdraw as a Limited Partner or Assignee, immediately upon Notification to such Limited

Partner or Assignee, as the case may be, if (i) the General Partner determines that such Limited Partner or Assignee made a material misrepresentation to the Partnership in connection with acquiring its Interest; (ii) a Proceeding is commenced or threatened against the Partnership or any other Partner or Assignee arising out of, or relating to, such Limited Partner's or Assignee's investment in the Partnership; or (iii) the General Partner determines that such Limited Partner's or Assignee's continuing ownership of an Interest would either: (A) cause the Partnership, the Master Fund or the General Partner to violate any requirement, condition or guideline contained in any federal, state or foreign law or in any order, directive, opinion, ruling or regulation of a federal, state or foreign governmental agency or self-regulatory organization, (B) require the Partnership, the Master Fund or the General Partner to comply with any requirement, condition or guideline contained in any federal, state or foreign law or in any order, directive, opinion, ruling or regulation of a federal, state or foreign governmental agency or self-regulatory organization, to which it is not subject as of the date of this Agreement; (C) jeopardize the Partnership's or the Master Fund's continuing classification as a partnership for federal income tax purposes, (D) result in the Partnership or the Master Fund being treated as a "publicly traded partnership" within the meaning of Section 7704 of the Code and applicable Treasury Regulations, (E) result in any of the assets of the Partnership or the Master Fund being treated as Plan Assets, (F) necessitate the registration of the Partnership or the Master Fund as an investment company under the 1940 Act or (G) result in the occurrence of any "prohibited transaction" (within the meaning of Section 406 of ERISA or Section 4975(c) of the Code). Subject to the provisions of **Sections 5.3, 6.1(b)-(i), 6.7, 6.8, 6.9** and **6.10**, any Limited Partner or Assignee who is so required to withdraw an amount from a Capital Account or to withdraw as a Limited Partner or Assignee shall withdraw from the relevant Capital Account(s) the amount(s) such Limited Partner or Assignee is required to withdraw, as specified by the General Partner.

### 6.4.    Status After Withdrawal.

(a)    Except as provided in **Section 6.2** or **Section 6.3**, a Person who is permitted or required to resign or withdraw as a Limited Partner or Assignee pursuant to this Agreement shall have no rights against the Partnership; *provided, however,* that this **Section 6.4(a)** shall not be interpreted to limit a former Limited Partner's or Assignee's right (subject to the limitations contained in **Articles IX** and **XII**) to bring any Proceeding against the Partnership, any General Partner Associate or any Liquidating Trustee Associate.

(b)    A Person who is permitted or required to resign or withdraw as a Limited Partner or Assignee pursuant to the provisions of this Agreement shall continue as a Limited Partner or Assignee, as the case may be, until the effective date of such resignation or withdrawal, but not thereafter, notwithstanding that withdrawal proceeds are not paid to such Person until after the effective date of such resignation or withdrawal.

(c)    For purposes of determining the amount of withdrawal proceeds payable to a Limited Partner or Assignee in connection with such Limited Partner's or Assignee's resignation or withdrawal as a Limited Partner or Assignee, or in connection with a Capital Withdrawal from a Capital Account of such Limited Partner or Assignee, such Limited Partner's or Assignee's Capital Account(s) shall be valued as of the effective date of such resignation or withdrawal, notwithstanding that: (i) the requisite approval or Notification of such resignation or withdrawal was given prior to such effective date or (ii) withdrawal proceeds are not paid to such Person until after the effective date of such resignation or withdrawal.

### 6.5. **Withdrawals by the General Partner**.

(a)     The General Partner may withdraw amounts from its Capital Account at any time, without notice to the Limited Partners, in its sole and absolute discretion; *provided, however,* that: (i) subject to **Section 6.5(b)**, the General Partner may not withdraw any amount from its Capital Account to the extent that, immediately after such withdrawal, the balance of such Capital Account would be less than $1,000; and (ii) the General Partner may not withdraw any amounts from its Capital Account in respect of its Incentive Allocations and Substitute Incentive Allocations except to the extent such Incentive Allocations and Substitute Incentive Allocations have been credited to its Capital Account pursuant to this Agreement or upon the completion of the winding up of the Partnership.  The General Partner, however, may cause the Partnership to advance amounts to the General Partner equal to the General Partner's good faith estimates of its accrued Incentive Allocations and Substitute Incentive Allocations, subject to the General Partner's obligation to return such advances (without interest) to the Partnership as of the end of the relevant Fiscal Year to the extent the amounts so advanced exceed the actual Incentive Allocations and Substitute Incentive Allocations determined as of the end of such Fiscal Year.

(b)     The General Partner, in its sole and absolute discretion, may withdraw as the general partner of the Partnership upon giving not less than ninety (90) days' prior Notification to the Limited Partners.  In that case, the General Partner, in its sole and absolute discretion, may withdraw the entire balance of its Capital Account.

### 6.6. **Distributions.**

(a)     The General Partner, in its sole and absolute discretion, may, at any time and from time to time, cause the Partnership to make a distribution to the Partners and Assignees.

(b)     The General Partner shall establish a distribution record date for each distribution made pursuant to **Section 6.6(a)**, which date shall always be the last day of an Accounting Period.

(c)     Subject to **Section 7.3**, each distribution pursuant to **Section 6.6(a)** shall be made *pro rata* from the Capital Accounts in accordance with their Closing Balances as of the applicable distribution record date.

### 6.7. **Form of Capital Withdrawals.**

(a)     All Capital Withdrawals may be made: (i) in cash; (ii) by way transfer of other Partnership Property having a value (determined by the General Partner as of the date of transfer in accordance with the principles set forth in **Annex B**) equal to the amount of cash that would otherwise be distributed; or (iii) by way of any combination of the foregoing, as the General Partner (or the Liquidating Trustee, in the case of a distribution made pursuant to **Article XI**) may determine.

(b)     To the extent that the General Partner (or the Liquidating Trustee) determines that a Capital Withdrawal shall consist of property other than cash, the General Partner (or the Liquidating Trustee) shall determine the fair market value of the property to be distributed and, in connection with such distribution (but subject to the provisions of **Section 7.3**), adjust the Capital Accounts of all Partners upward or downwards to reflect the difference between the book value and the fair market value thereof, as if such gain or loss had been recognized upon an actual sale of such property and allocated pursuant to **Section 7.2**.  Subject to the provisions of **Section 7.3**, all distributions of property other than cash shall be allocated among the holders of the Capital Accounts entitled thereto in

-17-

the proportions and amounts provided for herein, such that each such holder shall, except for immaterial variances, receive a *pro rata* portion of the same type or form of property.

**6.8.    Legal Restrictions on Capital Withdrawals.** Notwithstanding any other provision of this Agreement, no Capital Withdrawal shall be made to the extent that, after giving effect to such withdrawal, the Partnership would be in violation of Section 17-607(a) or Section 17-804(a) of the Act.

**6.9.    Withholding from Capital Withdrawals.** The General Partner may withhold taxes from any Capital Withdrawal to the extent required by the Code or any other applicable law. Any such withholding shall be deemed to constitute part of such Capital Withdrawal and shall not affect the amount payable to the relevant Partner or Assignee in connection with such Capital Withdrawal.

**6.10.    Distributions Upon Dissolution.** Upon dissolution of the Partnership pursuant to **Article XI**, the Partnership shall make no additional distributions pursuant to this **Article VI**, but shall make all distributions in accordance with the order and priority set forth in **Section 11.5**, notwithstanding that such dissolution occurs subsequent to a distribution record date or the effective day of a withdrawal but prior to making the related distribution that would otherwise be made in connection therewith pursuant to this Agreement.

## ARTICLE VII
## CAPITAL ACCOUNTS; ALLOCATIONS

### 7.1.    Capital Accounts; Opening Balances.

(a)    The General Partner shall establish on the books of the Partnership: (i) a single capital account for the General Partner and (ii) a separate capital account for each Capital Contribution made by a Limited Partner (each, an "**Account**" or "**Capital Account**").

(b)    As of the first day of each Accounting Period, the General Partner shall establish the balance of each Capital Account (the "**Opening Balance**" of such Account).

(c)    In the case of the General Partner's Capital Account, the Opening Balance shall be, for the Accounting Period during which the first Capital Contribution is credited to such Account, an amount equal to the amount of such Capital Contribution, and, for each Accounting Period thereafter, shall be an amount equal to the Closing Balance of such Capital Account as of the end of the immediately preceding Accounting Period, minus the amount of any Capital Withdrawal from such Capital Account effected at the end of such immediately preceding Accounting Period, plus the amount of any Capital Contribution made to such Capital Account no later than the first Business Day of such Accounting Period.

(d)    In the case of a Capital Account of a Limited Partner, the Opening Balance shall be, for the Accounting Period during which the Capital Contribution is credited to such Account pursuant to this Agreement, an amount equal to the amount of such Capital Contribution, less the amount of the Management Fee charged against such Account for such Period (if such Accounting Period begins as of the beginning of a calendar quarter), and, for each Accounting Period thereafter, shall be an amount equal to the Closing Balance of such Capital Account as of the end of the immediately preceding Accounting Period, minus the amount of any Capital Withdrawal from such Capital Account effected at the end of such immediately preceding Accounting Period, minus the amount of the Management Fee charged against such Account for such Period (if such Accounting Period begins as of the beginning of a calendar quarter).

**7.2.** **Closing Balances; Allocation of Profits and Losses for Financial Purposes.** As of the end of each Accounting Period (but before deducting any Capital Withdrawals effected or deemed effected as of end of such Accounting Period), the General Partner shall establish the closing balances of Capital Accounts for such Accounting Period (the "**Closing Balance**" of each such Account) by adjusting the Opening Balances of such Accounts for such Accounting Period in the following manner and order:

(a)     subject to any special allocations to be made to fewer than all Partners and Assignees or to be made to Partners and Assignees disproportionately pursuant to **Section 7.3** and to the provisions of **Section 8.3**, any increase in Net Assets prior to charging Incentive Allocations and Substitute Incentive Allocations against Capital Accounts shall be credited *pro rata* among the Opening Balances of all Capital Accounts;

(b)     subject to any special allocations to be made to fewer than all Partners and Assignees or to be made to Partners and Assignees disproportionately pursuant to **Section 7.3** and to the provisions of **Section 8.3**, any decrease in Net Assets shall be debited *pro rata* from the Opening Balances of all Capital Accounts (except that, if the Capital Account of a Limited Partner or Assignee is thereby reduced to zero, any further decrease that would otherwise be debited from the Opening Balance of such Account under this **Section 7.2(b)** shall be debited instead from the General Partner's Capital Account); and

(c)     as of the end of each Incentive Allocation Calculation Period in respect of a Limited Partner's or Assignee's Capital Account, the Incentive Allocation for such Incentive Allocation Calculation Period shall be debited from the Opening Balance of such Capital Account (after such Opening Balance has been credited with its share of any increase in Net Assets in accordance with **Section 7.2(a)**) and credited to the General Partner's Capital Account.  For purposes of this **Section 7.2(c)**:

(i)     the "**High Water Mark**" for a Capital Account as of the end of an Incentive Allocation Calculation Period for such Account means: (A) the highest level of Net Profit in respect of such Account as of the end of any prior Incentive Allocation Calculation Period for such Account, other than an Incentive Allocation Calculation Period for such Account which ended solely as a result of a Capital Withdrawal made or required to be made from such Account; or (B) $0, if higher, subject to adjustment as provided in **Sections 7.2(c)(vi)** and **(vii)**.

(ii)     "**Incentive Allocation**" in respect of a Capital Account for an Incentive Allocation Calculation Period for such Account means an amount equal to twenty percent (20%) of the Net New Profit in respect of such Account as of the end of such Incentive Allocation Calculation Period.

(iii)     "**Incentive Allocation Calculation Period**" for a Capital Account means: (A) the period beginning on the date the Capital Contribution is credited to such Account and ending on the earlier of the effective date of a Capital Withdrawal from such Account or the end of the calendar year during which such Capital Contribution is so credited, and (B) subsequently, the period from the end of the immediately previous Incentive Allocation Calculation Period for such Account and ending on the earlier of the effective date of a Capital Withdrawal from such Account or the first calendar year-end falling after the end of the immediately previous Incentive Allocation Calculation Period for such Account.  A High Water Mark for a Capital Account shall not be established as of the end of an Incentive Allocation Calculation Period for such Account that ends other than as of the end of a calendar year.  Rather, the existing High Water Mark for such Capital Account, as adjusted in the manner provided in **Section 7.2(c)(vii)**, shall continue to be the High Water Mark until a new High Water Mark is established as of the end of a subsequent calendar year.

-19-

(iv) "**Net Profit**" in respect of a Capital Account as of the end of an Incentive Allocation Calculation Period for such Account means the sum of all forms of income, including (i) interest and (ii) increases (realized or unrealized) in the value of the Partnership's portfolio, credited to such Account since the date of its inception through and including the end of such Incentive Allocation Calculation Period pursuant to this Agreement, less the sum of all Partnership costs and expenses, including (i) Management Fees and Substitute Management Fees (but excluding Incentive Allocations) and (ii) decreases (realized or unrealized) in the value of the Partnership's portfolio, debited from such Account since the date of its inception through and including the end of such Incentive Allocation Calculation Period pursuant to this Agreement.

(v) "**Net New Profit**" in respect of a Capital Account as of the end of an Incentive Allocation Calculation Period for such Account means the amount by which Net Profit in respect of such Account as of the end of such Incentive Allocation Calculation Period for such Account exceeds the High Water Mark for such Account as of the end of such Incentive Allocation Calculation Period.

(vi) If a Capital Withdrawal is made or required to be made from a Capital Account following a decrease in Net Assets debited from such Account that reduces the Net Profit in respect of such Account below the High Water Mark for such Account, the High Water Mark for such Account will be decreased *pro rata* (in the same proportion as the amount of the withdrawal bears to the Net Assets attributable to such account immediately prior to such withdrawal).

(vii) If an Incentive Allocation Calculation Period for a Limited Partner's or Assignee's Capital Account ends as of a date other than as of the end of a calendar year because such Limited Partner or Assignee is permitted or required to make a Capital Withdrawal from such Account as of a date other than as of the end of a calendar year, then: (A) an Incentive Allocation in respect of such Account shall be calculated and allocated to the General Partner's Capital Account as of the end of such period in an amount equal to the product of (x) a fraction, the numerator of which is the amount of such withdrawal and the denominator of which is the Net Assets attributable to such Account as of the end of such period as estimated in good faith by the General Partner (without reduction for the amount of such withdrawal) (such fraction, the "**Withdrawal Fraction**") times (y) the product of (i) 20% times (ii) the amount by which any Net Profit allocated to such Account since its inception through the end of such period exceeds the High Water Mark for such Account as of the end of such period (such High Water Mark, the "**Existing High Water Mark**") and (B) the High Water Mark shall be adjusted to equal the amount of the Existing High Water Mark plus an amount equal to the product of (I) the Withdrawal Fraction times (II) the excess of (x) the amount of Net Profit allocated to such Account since its inception through the end of such period over (y) the Existing High Water Mark.

(viii) The General Partner may waive any or all of the Incentive Allocation in respect of any Capital Account, or agree to an Incentive Allocation arrangement in respect of any Capital Account that is a substitute for that set forth in this **Section 7.2(c)** (a "**Substitute Incentive Allocation**") and, in connection with such Substitute Incentive Allocation, modify the provisions of this **Section 7.2(c)** with respect to such Capital Account to the extent necessary to reflect such Substitute Incentive Allocation. No such waiver or substitute arrangement in respect of a particular Capital Account will entitle the Limited Partner or Assignee that holds such Account, or any other Limited Partner or Assignee, to such a waiver or substitute arrangement in respect of any other Capital Account.

## 7.3. **Certain Special Allocations.**

(a) To enable the Partnership to participate, directly or indirectly, in Hot Issues, the General Partner may establish one or more Hot Issue Brokerage Accounts and Hot Issue Memorandum

Accounts, and specially allocate to all Partners and Assignees that are not Restricted Persons all increases and decreases of Net Assets attributable to the Partnership's direct or indirect investments in Hot Issues. Each Limited Partner and Assignee agrees to furnish the General Partner such information and representations and warranties regarding such Limited Partner's or Assignee's status under the Hot Issues Rule as the General Partner may from time to time request, and acknowledges that: (i) a failure to respond reasonably promptly to any such request shall entitle the General Partner to assume that such Limited Partner or Assignee falls within the proscription of the Hot Issues Rule and therefore is not entitled to participate in any Hot Issue and (ii) the good faith determination of the General Partner as to whether such Limited Partner or Assignee falls within the proscription of the Hot Issues Rule shall be binding upon the Partnership and such Limited Partner or Assignee. The General Partner may, but shall not be required to, cause those Limited Partners and Assignees who participate in Hot Issues to compensate those Limited Partners and Assignees who may not, by appropriate and reasonable debits against the Capital Accounts of such participating Limited Partners and Assignees and appropriate credits to the Capital Accounts of such non-participating Limited Partners and Assignees. Each Partner and Assignee authorizes the General Partner to disclose such Partner's or Assignee's identity to any member of the NASD who reasonably requests the General Partner to disclose the identities of investors in the Partnership for the purpose of enabling such member to determine whether investors in the Partnership are Restricted Persons.

(b)    To the extent that the General Partner determines that any costs or expenses incurred by the Partnership have been incurred by reason of circumstances applicable to one or more but fewer than all Partners and Assignees, the General Partner may charge such costs or expenses only to those Partners and Assignees whose particular circumstances gave rise to such costs or expenses. Without limiting the scope of the foregoing:

(i)    the General Partner may charge to a Limited Partner's or Assignee's Capital Account the reasonable cost of any special services that the Partnership provides to such Limited Partner or Assignee at its request; and

(ii)    if a tax or other assessment is imposed on the Partnership, and the assessment amount is determined by the status or identity of one or more Partners or Assignees (*e.g.,* their residence), the General Partner may specially allocate the related expense to, and deduct the affected Partner's or Assignee's allocable share of the assessment from, the appropriate Capital Account (as if the deduction were a distribution).

(c)    If, for legal, tax, regulatory or other reasons, the General Partner and a Limited Partner or Assignee agree that such Limited Partner or Assignee cannot or should not participate in a particular asset or assets of the Partnership, or in increases or decreases in Net Assets attributable to a particular asset or assets of the Partnership, the General Partner and such Limited Partner or Assignee may agree that: (i) such asset or assets shall be held in a separate custodial account or represented by a special memorandum account; and (ii) such Limited Partner or Assignee shall not participate in such custodial or memorandum account, or in increases or decreases in Net Assets attributable to the assets or assets held in or represented by such account, as the case may be.

(d)    If one or more Limited Partners or Assignees bring a Proceeding against the Partnership or the General Partner that is Judicially Determined to be frivolous or the equivalent, the General Partner may charge the Partnership's costs and expenses relating to such Proceeding solely to the Capital Accounts of those Partners or Assignees.

(e)    The General Partner may otherwise allocate increases and decreases of Net Assets on a basis other than *pro rata* among the Opening Capital balances of Capital Accounts to the extent it determines that doing so is required by law or regulation or is more appropriate and equitable under the circumstances than allocating on such a *pro rata* basis.

### 7.4.    Allocation of Profits and Losses for Federal Income Tax Purposes.

(a)    The General Partner shall establish on the books of the Partnership, for each Partner and Assignee, a capital account maintained in strict accordance with tax accounting principles reflecting the adjusted tax basis of such Partner's or Assignee's Capital Account(s) for federal income tax purposes (a "**Tax Basis Capital Account**"). The Tax Basis Capital Account of a Partner or Assignee will be increased by (i) the amount of cash contributed by such Partner or Assignee to the Partnership; (ii) the adjusted tax basis of other property contributed to the Partnership by such Partner or Assignee (net of liabilities secured by such contributed property that the Partnership is considered to assume or take subject to under Section 752 of the Code); and (ii) allocations to such Partner or Assignee of the Partnership's taxable income and gain. Each Partner's or Assignee's Tax Basis Capital Account will be decreased by (A) the amount of cash distributed by the Partnership to such Partner or Assignee; (B) the adjusted tax basis of other property distributed by the Partnership to such Partner or Assignee (net of liabilities secured by such distributed property that such Partner or Assignee is considered to assume or take subject to under Section 752 of the Code); and (C) allocations to such Partner or Assignee of the Partnership's taxable losses and deductions. The General Partner may make such modifications as may be necessary to assure that the Partners' and Assignees respective Tax Basis Capital Accounts are maintained in accordance with federal income tax accounting principles applicable to partnerships.

(b)    As of the end of each Fiscal Year, except as otherwise required by Section 704 of the Code and applicable Treasury Regulations, the Partnership's Tax Items shall be determined and allocated among the Partners, Assignees, former Partners and former Assignees for Federal income tax purposes as set forth below. The allocations set forth below are intended to comply with the substantial economic effect test under Section 704(b) of the Code and Treasury Regulation §1.704-1(b)(2).

(i)    The Tax Items shall first be allocated to former Partners and former Assignees that ceased to be Partners or Assignees at any time during such Fiscal Year, in such amounts and in such proportions as the General Partner may determine would equitably reflect the amounts credited to or debited from their Capital Accounts for such Fiscal Year and for all prior Fiscal Years, as compared to the aggregate of such Tax Items allocated to them in all prior Fiscal Years, with the objective of eliminating, to the extent practicable, the Book/Tax Disparities of such former Partners and former Assignees.

(ii)    Remaining Tax Items shall be allocated to Partners and Assignees who have withdrawn any portion, but not all, of their Capital Accounts at any time during such Fiscal Year, in the case of any such Partner or Assignee in an amount not to exceed the amount of such Partner's or Assignee's Capital Withdrawals and in such proportions as the General Partner may determine would equitably reflect the amounts credited to or debited from such Partner's or Assignee's Capital Account(s) for such Fiscal Year and for all prior Fiscal Years, as compared to the aggregate of such Tax Items allocated to such Partner or Assignee in all prior Fiscal Years. The objective of such allocation shall be to eliminate, to the extent practicable, the Book/Tax Disparity of each such Partner or Assignee with respect to the portion of his Capital Account(s) that has been withdrawn.

(iii)    Remaining Tax Items shall be allocated to the Partners and Assignees in such amounts and in such proportions as the General Partner may determine would equitably reflect the amounts credited to or debited from their Capital Accounts for such Fiscal Year and all prior Fiscal Years, as compared to the aggregate of the Tax Items allocated to them for all prior Fiscal Years. The objective of such allocation shall be to eliminate, to the extent practicable, the Book/Tax Disparities of such Partners and Assignees.

(iv)    Remaining Tax Items shall be allocated among all Persons who are Partners or Assignees as of the end of such Fiscal Year, *pro rata* in accordance with the Closing Balances of their Capital Accounts as of the end of such Fiscal Year.

(c)    The General Partner may from time to time (and in respect of certain Fiscal Years but not others) allocate taxable income and loss separately for tax purposes, on a gross basis without netting such income and loss.

(d)    Certain of the tax allocations set forth in this **Section 7.4** are intended to allocate Tax Items in accordance with Section 704(b) of the Code and applicable Treasury Regulations (which are incorporated by reference herein). If the General Partner permits a Limited Partner or Assignee to make a Capital Contribution in kind, the General Partner shall modify the Partnership's tax allocations accordingly, as contemplated in Section 704(b) of the Code and applicable Treasury Regulations.

(e)    Notwithstanding the foregoing, the General Partner may allocate Tax Items in a manner other than that set forth in this **Section 7.4**, provided the allocation is made in accordance with Section 704(b) of the Code and applicable Treasury Regulations, including a "Qualified Income Offset." In accordance with the "Qualified Income Offset" provision of Treasury Regulation §1.704-1(b)(2)(ii)(d), a Partner or Assignee who unexpectedly receives any adjustments, allocations, or distributions described in Treasury Regulations §§1.704-1(b)(2)(ii)(d)(4), (5), or (6), which create or increase a deficit balance in any Capital Account of such Partner or Assignee, will be allocated items of the Partnership's income and gain (consisting of a *pro rata* portion of each item of Partnership income, including gross income, and gain for the year) in an amount and manner sufficient to eliminate the deficit balance as quickly as possible.  Any allocation made pursuant to this paragraph (e) shall replace any allocation otherwise provided for herein.

(f)    Any federal tax elections (including elections under Sections 988 and 475(f) of the Code and those referenced in **Section 8.5(a)**) or other decisions relating to allocations made under this **Section 7.4** will be made in any manner that the General Partner may determine reflects the purposes and intent hereof.

**7.5.    No Interest on Capital Contributions.**  Partners and Assignees shall not be entitled to interest on their Capital Contributions or on their Capital Accounts.

**7.6.    Loans.**  Loans by a Partner or Assignee to the Partnership shall not be considered Capital Contributions. Unless the General Partner determines otherwise in its sole and absolute discretion, if any Partner or Assignee shall advance funds to the Partnership in excess of the Capital Contribution(s) required to be made by such Partner or Assignee pursuant to this Agreement, the making of such advances shall not result in any increase in the amount of any Capital Account of such Partner or Assignee.  The amounts of any such advances shall be a debt of the Partnership to such Partner or Assignee and shall be payable or collectible only out of the assets of the Partnership in accordance with the terms and subject to the conditions upon which such advances are made.  The repayment, upon the winding up of the Partnership, of loans made to the Partnership by a Partner or Assignee shall be subject to the order of priority set forth in **Section 11.5**.

## ARTICLE VIII
## RECORDS AND ACCOUNTING; REPORTS; CONFIDENTIALITY

### 8.1.    Partnership Books and Records; Inspection Rights.

(a)     The General Partner shall cause the Partnership to maintain such books and records relating to the business and affairs of the Partnership as are required to be maintained under the Act ("**Required Records**") and such other books and records as the General Partner, in its sole discretion, may determine.

(b)     Each Partner or its duly authorized representative, upon reasonable demand to the General Partner (which demand shall be in writing and shall state the purpose thereof), shall have the right, subject to the provisions of **Section 8.6**, Section 17-305(b) of the Act and such other reasonable standards as may be established from time to time by the General Partner (including standards governing what information and documents are to be furnished at what time and location and at whose cost and expense), to inspect the Required Records at the principal office of the Partnership (during usual business hours), or to obtain copies of the Required Records from the General Partner, for any purpose reasonably related to such Partner's interest as a Partner; *provided, however,* that no Partner or Assignee shall have the right to inspect any Subscription Agreement or Other Agreement to which such Partner or Assignee is not a party, notwithstanding that such Subscription Agreement or Other Agreement is a Required Record. For the avoidance of doubt, no Partner or Assignee shall have the right to inspect any books or records in the possession or under the control of the General Partner or the Partnership to the extent such books or records are not Required Records.

### 8.2.    Fiscal Year; Accounting Period; Accounting Methods.

(a)     The Fiscal Year of the Partnership shall be the calendar year, and the Fiscal Quarters of the Partnership shall be the calendar quarters, unless the General Partner determines otherwise.

(b)     The initial Accounting Period shall commence as of the date of the Initial Closing and close at the close of business on the last day of the calendar month in which the Initial Closing occurs. Each subsequent Accounting Period shall commence immediately after the close of the first preceding Accounting Period and close at the close of business on the first to occur of (i) the last day of the calendar month in which such Accounting Period commenced; (ii) the date immediately prior to the effective date of the admission of a Partner pursuant to the provisions of this Agreement; (iii) the date immediately prior to the effective date of an increase in a Partner's Capital Account resulting from a Capital Contribution to such Account; (iv) the effective date of any Capital Withdrawal; (v) a date determined by the General Partner; and (vi) the date the Certificate is canceled as provided in **Section 2.3(b)**.

(c)     The Partnership shall keep its financial books under the accrual method of accounting, and, as to matters not specifically covered in this Agreement or in the Memorandum, in accordance with generally accepted accounting principles applied on a consistent basis.

### 8.3.    Determination and Calculation of Liabilities and Valuation of Assets.

(a)     The General Partner shall value the Assets of the Partnership in accordance with the principles set forth in **ANNEX B**.

(b)     The General Partner shall determine the amount of the Liabilities of the Partnership in accordance with generally accepted accounting principles (except as otherwise provided in **Sections 3.5(d)** and **8.3(d)**).

(c)     For purposes of determining the Partnership's Liabilities at a particular time, the General Partner may estimate costs or expenses that are incurred on a regular or recurring basis over yearly or other periods and treat the amount of any such estimate as accruing in equal portions over any such period.

(d)     The General Partner may establish (and increase or decrease from time to time) such reserves for the Partnership for: (i) estimated accrued costs or expenses; and (ii) contingent, unknown or unfixed debts, liabilities or obligations of the Partnership, even if such reserves are not required by generally accepted accounting principles ("**Reserves**"). Any such Reserve, to the extent reversed, shall be allocated among the Capital Accounts of the Persons who are Partners or Assignees at the time of such reversal in the manner provided in **Section 7.2**, unless the General Partner determines that it would be more equitable to allocate such reversal among the Capital Accounts of those Persons who were Partners or Assignees at the time such Reserve was established.

## 8.4.     Reports.

(a)     As soon as reasonably practicable after the end of each Fiscal Quarter, the General Partner shall cause to be delivered to each Person who was a Partner or Assignee at any time during such Fiscal Quarter a report setting forth (i) the net asset value of such Partner's or Assignee's Capital Account(s) as of the end of such quarter as compared with the end of the previous quarter and (ii) such other financial information (if any) as the General Partner may deem appropriate in its sole and absolute discretion.

(b)     As soon as reasonably practicable after the end of each Fiscal Year, the General Partner will cause to be delivered to each Person who was a Partner or Assignee at any time during such Fiscal Year a report on the Partnership's operations during such year. Such report shall include a balance sheet of the Partnership as of the end of such Fiscal Year, a statement showing the increase or decrease in Net Assets (as the case may be) for such Fiscal Year and a statement of such Partner's or Assignee's capital as of the end of such Fiscal Year, together with the report thereon of the independent certified public accounting firm selected by the General Partner to prepare such report.

## 8.5.     Tax Returns.

(a)     The General Partner will cause all required federal, state and local income or information tax returns for the Partnership to be prepared and timely filed (subject to the General Partner's discretion to obtain extensions) with the appropriate authorities. The General Partner shall determine the accounting methods and conventions under the tax laws of the United States, the several states and other relevant jurisdictions as to the treatment of Tax Items or any other method or procedure relating to the preparation of such tax returns. In addition, the General Partner may cause the Partnership to make (or refrain from making) any and all tax elections permitted by such tax laws, including the election referred to in Section 754 of the Code, and may charge the costs of complying with such election to the Partner(s) or Assignee(s) who requested that such election be made.

(b)     As soon as reasonably practicable after the end of each Fiscal Year, the General Partner shall cause to be delivered to each Person who was a Partner or Assignee at any time during such Fiscal Year such tax information and schedules relating to the Partnership as are necessary to enable such Person to prepare its federal income tax return in accordance with the laws, rules and regulations then

prevailing (it being understood and agreed that the tax returns of the Partnership may be delayed so that it may be necessary for the Limited Partners and Assignees to obtain extensions for the filing of their own tax returns).

(c)    Each Limited Partner and Assignee agrees in respect of any year in which such Limited Partner or Assignee had an investment in the Partnership that, unless the General Partner expressly agrees otherwise, such Limited Partner or Assignee shall not: (i) treat, on its individual tax returns, any Tax Item relating to such investment in a manner inconsistent with the treatment of such Tax Item by the Partnership, as reflected on the Schedule K-1 or other information statement furnished by the Partnership to such Partner or Assignee; or (ii) file any claim for refund relating to any such Tax Item based on, or which would result in, any such inconsistent treatment.

(d)    The General Partner is hereby appointed the "tax matters partner" of the Partnership for all purposes pursuant to Sections 6221-6231 of the Code.

### 8.6.    **Confidentiality.**

(a)    *General Rule of Confidentiality.*  Except as provided in **Section 8.6(b)**, each Limited Partner and Assignee agrees to keep confidential, not to make any use of, and not to provide or disclose to any Person, any information or matter relating to the Partnership and its business and affairs, including reports furnished to Limited Partners and Assignees pursuant to **Section 8.4**,  the identities of other Partners and Assignees, any offering materials used in connection with the marketing and private placement of Interests (including this Agreement, the Subscription Agreements and Other Agreements) and any information or matter related to any investment made by the Partnership (all of the foregoing, "**Confidential Information**").

(b)    *Exceptions to General Rule of Confidentiality.*  Notwithstanding the provisions of **Section 8.6(a)**:

(i)    A Limited Partner or Assignee may provide or disclose Confidential Information to its members, partners, shareholders, directors, officers and employees, to its financial, legal, tax and other advisors, and to such other Persons as the General Partner may approve in its sole and absolute discretion (each of the foregoing, an "**Authorized Person**"), for any purpose reasonably related to its interest in the Partnership; *provided, however,* that such Limited Partner or Assignee notifies each such Authorized Person in writing of the restrictions set forth in this **Section 8.6** and states in such writing, in a prominent fashion, that such Authorized Person, by receiving such Confidential Information, will be deemed to have agreed to comply with such restrictions.

(ii)    A Limited Partner or Assignee or any of its Authorized Persons may provide or disclose Confidential Information to any Person if: (A) the information contemplated to be provided or disclosed is publicly known at the time of proposed disclosure as a result of actions other than a breach by such Limited Partner or Assignee or any of its Authorized Persons of the provisions of this **Section 8.6**; (B) such disclosure is required by law or regulation; (C) such disclosure is required to be made by a governmental agency, regulatory authority or self-regulatory organization having jurisdiction over such Limited Partner or Assignee;  (D) such disclosure is made in good faith in response to a written request for information by a governmental agency, regulatory authority or self-regulatory organization having jurisdiction over such Limited Partner or Assignee; (E) such disclosure is made in good faith during the course of an examination of such Limited Partner or Assignee by a governmental agency, regulatory authority or self-regulatory organization having jurisdiction over such Limited Partner or Assignee; or (F) such disclosure is approved in advance by the General Partner. A Limited Partner or Assignee or its Authorized Person who discloses Confidential Information pursuant to this **Section**

**8.6(b)(ii)** shall: (I) in the case of any disclosure made pursuant to clause (D) of this **Section 8.6.(b)(ii)**, promptly provide the General Partner a copy of the written request for information described in that clause; and (II) in the case of any disclosure made pursuant to clauses (B), (C) or (E) of this **Section 8.6(b)(ii)**, use its reasonable best efforts to: (x) give reasonable prior Notification of such disclosure to the General Partner to afford the General Partner the opportunity to obtain an appropriate protective order and (y) inform each recipient of such information of the confidential nature of such information.

(c)     *Disclosure of Tax Treatment.* Notwithstanding anything to the contrary in this Agreement or in any other documents pertaining to an investment in the Partnership, an investor (and each employee, representative or other agent of an investor) may disclose to any and all persons, without limitation of any kind, the anticipated tax treatment and tax structure of the Partnership and transactions contemplated by the Partnership, and all materials of any kind (including opinions or other tax analyses) related to such tax treatment and tax structure, if any.

(d)     *Rights of General Partner.*

(i)     The General Partner may disclose to any of the Partnership's investors or prospective investors such information relating to the Partnership or its investments as the General Partner determines to be necessary to retain any such investor as an investor in the Partnership or facilitate an investment in the Partnership by any such prospective investor, as the case may be.

(ii)     The General Partner may disclose to any of the Partnership's service provider's or prospective service providers such information relating to the Partnership or its investments as the General Partner determines to be necessary, appropriate, advisable or convenient to carry on the Partnership's business and realize its objective.

(iii)     Unless the General Partner expressly agrees otherwise, the General Partner shall have the right to publicize: (A) the fact that it serves as the general partner of the Partnership, (B) the performance of the Partnership and (C) the identity of Limited Partners and Assignees, provided it does so in a manner that does not constitute "general advertising" or "general solicitation" with respect to the Partnership or the Interests within the meaning of Rule 503(c) of Regulation D under the 1933 Act.

(e)     *Proprietary Information of General Partner.* Each Limited Partner and Assignee acknowledges and agrees that PCM and its licensors own all rights, title and interest in and to the trading models, strategies, software and other proprietary materials utilized or generated by them in the course of managing and conducting the business and affairs of the Partnership, including all patent, trademark, copyright and trade secret rights therein (all of the foregoing, "**Proprietary Information**"). Nothing in this Agreement shall be construed as granting the Limited Partners or Assignees any rights or license of any kind with respect to the Proprietary Information. Each Limited Partner and Assignee agrees: (i) to keep the Proprietary Information confidential pursuant to **Section 8.6(a)**, and (ii) not to copy, alter, reverse engineer or decompile the Proprietary Information or otherwise attempt to access or use any of the trade secrets contained therein. The name "Primarius" and all rights to use that name belong exclusively to PCM, which has consented to the use by the Partnership of the name "Primarius" in the Partnership's name and has granted the Partnership a license to use the name "Primarius" in the Partnership's name. PCM may revoke that license in its sole and absolute discretion at any time. In the event of such revocation, the Partnership shall cease to use the name "Primarius" in its name and shall take all necessary action under the Act to change its name to a name that does not include the name "Primarius."

## ARTICLE IX
## EXCULPATION AND INDEMNIFICATION
## OF GENERAL PARTNER ASSOCIATES

### 9.1.   Exculpation.

(a)     Notwithstanding any other provision of this Agreement:

(i)     to the extent that, at law or in equity, the General Partner or Liquidating Trustee, as the case may be, has duties (including fiduciary duties) and liabilities relating thereto to the Partnership, any Limited Partner or any Assignee, the General Partner or Liquidating Trustee, as the case may be,  shall not be liable for monetary or other damages to the Partnership or such Limited Partner or Assignee for the General Partner's or Liquidating Trustee's good faith reliance on the provisions of this Agreement or the governing documents of the Master Fund or for:  (A) losses sustained or liabilities incurred by the Partnership or such Limited Partner or Assignee as a result of errors or mistakes in judgment on the part of the General Partner or Liquidating Trustee, as the case may be, or any act or omission of the General Partner or Liquidating Trustee, as the case may be, except to the extent that it is Judicially Determined that an act or omission of the General Partner or Liquidating Trustee, as the case may be, was material to the matter giving rise to such losses or liabilities and that such act or omission constituted criminal wrongdoing, willful misfeasance, bad faith or gross negligence on the part of the General Partner or Liquidating Trustee, as the case may; (B) errors or mistakes in judgment on the part of any Person, or any act or omission of any Person, selected by the General Partner or Liquidating Trustee to perform services for or otherwise transact business with the Partnership or the Master Fund, as the case may be, except to the extent that it is Judicially Determined that such selection involved criminal wrongdoing, willful misfeasance, bad faith or gross negligence on the part of the General Partner or the Liquidating Trustee, as the case may, and was material to the matter giving rise to such losses or liabilities; or (C) circumstances beyond the General Partner's or Liquidating Trustee's control, including changes in tax or other laws, rules or regulations or the bankruptcy, insolvency or suspension of normal business activities of any broker-dealer, bank or other financial institution holding Partnership Property or assets of the Master Fund; and

(ii)     to the extent that, at law or in equity, a General Partner Associate (other than the General Partner), a Liquidating Trustee Associate (other than the Liquidating Trustee) or a Strategic Advisor has duties (including fiduciary duties) and liabilities relating thereto to the Partnership or any Limited Partner or Assignee, such General Partner Associate, Liquidating Trustee Associate or Strategic Advisor shall not be liable for monetary or other damages to the Partnership or such Limited Partner or Assignee for such General Partner Associate's, Liquidating Trustee Associate's or Strategic Advisor's good faith reliance on the provisions of this Agreement or the governing documents of the Master Fund or for losses sustained or liabilities incurred by the Partnership or such Limited Partner or Assignee, except to the extent that it is Judicially Determined that an act or omission of such General Partner Associate, Liquidating Trustee Associate or Strategic Advisor, as the case may be, was material to the matter giving rise to such losses or liabilities and that such act or omission constituted criminal wrongdoing, willful misfeasance or bad faith on the part of such General Partner Associate, Liquidating Trustee Associate or Strategic Advisor, as the case may be.

(b)     Each General Partner Associate, each Liquidating Trustee Associate and each Strategic Advisor shall be fully protected in relying in good faith upon the books and records of the Partnership and the Master Fund and upon such information, opinions, reports or statements presented to the Partnership or the Master Fund by any of its Partners, Assignees,  officers or agents (including legal counsel, accountants, auditors, appraisers, investment bankers and other independent experts acting for the Partnership, the Master Fund or any Partner as to matters such General Partner Associate, Liquidating

Trustee Associate or Strategic Advisor, as the case may be, reasonably believes are within such other Person's professional or expert competence, including information, opinions, reports, or statements as to the value and amount of the assets, liabilities, profits or losses of the Partnership or the Master Fund or any other facts pertinent to the existence and amount of assets from which distributions by the Partnership or the Master Fund might properly be made.

### 9.2.  **Indemnification.**

(a)     To the fullest extent permitted by law, the Partnership shall indemnify each General Partner Associate, each Liquidating Trustee Associate and each Strategic Advisor (each, an "**Indemnitee**") against any and all Losses, except to the extent that it is Judicially Determined that an act or omission of such Indemnitee was material to the matter giving rise to such Losses and that such act or omission constituted criminal wrongdoing, willful misfeasance, bad faith or gross negligence on the part of such Indemnitee (if such Indemnitee is the General Partner or the Liquidating Trustee), or criminal wrongdoing, willful misfeasance or bad faith on the part of such Indemnitee (if such Indemnitee is a General Partner Associate other than the General Partner, a Liquidating Trustee Associate other than the Liquidating Trustee or a Strategic Advisor).

(b)     To the extent it is Judicially Determined that the Partnership may not lawfully indemnify an Indemnitee for Losses pursuant to the provisions of **Section 9.2(a)** (other than by reason of such Indemnitee's failure to adhere to the standard of conduct applicable to such Indemnitee, as described in **Section 9.2(a)**), the Partnership shall, to the fullest extent permitted by law, contribute to the amount paid or payable by such Indemnified Party as a result of such Losses in such proportion as is appropriate to reflect not only the relative benefits received by the Partnership, on the one hand, and such Indemnitee, on the other hand, but also the relative fault of the Partnership and such Indemnitee, as well as any other equitable considerations.

(c)     Reasonable legal fees and other costs and expenses (including costs and expenses associated with any investigation and preparation) incurred by an Indemnitee in connection with any Proceeding in which such Indemnitee is a party, witness or deponent shall be paid or reimbursed by the Partnership in advance of the final disposition of the Proceeding upon receipt by the Partnership of (i) a written affirmation by such Indemnitee of such Indemnitee's good faith belief that the standard of conduct necessary for indemnification by the Partnership, as stated in **Section 9.2(a)**, has been met, and (ii) a written undertaking by or on behalf of such Indemnitee to promptly repay the amount paid or reimbursed if it shall ultimately be Judicially Determined that such Indemnitee is not entitled to be indemnified by the Partnership.

(d)     The Partnership may purchase and maintain insurance, at its own cost and expense, on behalf of any one or more Persons against any liability that may be asserted against or costs or expenses that may be incurred by such Person(s) in connection with the activities of the Partnership, regardless of whether the Partnership would have the power to indemnify any such Person(s) against such liability under the provisions of this Agreement.

(e)     An Indemnitee shall not be denied indemnification in whole or in part under this **Section 9.2** solely because the Indemnitee had an interest in the transaction with respect to which the indemnification applies.

(f)     Any Indemnitee entitled to indemnification hereunder shall use its reasonable best efforts to minimize the amount of any claim for indemnification hereunder.

(g)     The rights of an Indemnitee to indemnification, contribution and reimbursement provided by this **Section 9.2** shall be in addition to any other rights to which such Indemnitee may be entitled under any agreement with the Partnership, as a matter of law or otherwise, and shall continue as to a General Partner Associate or Liquidating Trustee Associate, as the case may be, who has ceased to serve in such capacity and shall also be for the benefit of such Indemnitee's Personal Representatives, but shall not be deemed to create any rights for the benefit of any other Persons. This **Article IX**, however, shall not be construed to entitle any Indemnitee to receive any amount in respect of any Losses of such Indemnitee to the extent that, after giving effect to the receipt of such amount and the receipt by such Indemnitee of any other payments in respect of such Losses, from whatever source or sources,  such Indemnitee shall have recovered an aggregate amount in excess of such Losses.

(h)     Indemnification Obligations shall remain in effect for a period of two years after the cancellation of the Certificate pursuant to **Section 2.3(b)**; except that Indemnification Obligations shall continue as to any Loss of which any Indemnitee shall have given Notification to the Partnership on or prior to the date such Indemnification Obligation would otherwise terminate in accordance with this **Section 9.2**, until it is Judicially Determined that the Partnership is not liable for such Loss.

**9.3.**    **Limits on Exculpation and Indemnification.** The General Partner acknowledges, on its own behalf, on behalf of the other General Partner Associates, the Liquidating Trustee Associates and the Strategic Advisors, that: (a) the federal securities laws (and the rules and regulations thereunder) confer certain rights on each Limited Partner and Assignee and impose certain liabilities on the General Partner Associates, the Liquidating Trustee Associates and the Strategic Advisors, and that the General Partner Associates, the Liquidating Trustee Associates and the Strategic Advisors may not lawfully seek an agreement from any Limited Partner or Assignee to waive, modify or limit such Limited Partner's or Assignee's exercise of such rights or to relieve the General Partner Associates, the Liquidating Trustee Associates or the Strategic Advisors of such liabilities to any extent; and (b) other applicable laws may confer rights on the Limited Partners and Assignees, and/or impose liabilities on the General Partner Associates, the Liquidating Trustee Associates or the Strategic Advisors, that may not be waived, modified or limited by agreement between the General Partner Associates, the Liquidating Trustee Associates or the Strategic Advisors, on the one hand, and the Limited Partners and Assignees, on the other hand. Accordingly,  to the extent a Limited Partner or Assignee has rights under the federal securities laws (or the rules and regulations thereunder), nothing in this **Article IX** should be construed to impose any limitation on a Limited Partner's or Assignee's exercise of such rights, and to the extent a General Partner Associate, a Liquidating Trustee Associate or a Strategic Advisor has any liability under the federal securities laws (or any rule or regulation thereunder), nothing in this **Article IX** should be construed to impose any limitation on such liability.     Similarly, to the extent a Limited Partner or Assignee has rights or a General Partner Associate, a Liquidating Trustee Associate or a Strategic Advisor has liabilities under other applicable law that may not be waived, modified or limited by agreement between such General Partner Associate, Liquidating Trustee Associate or Strategic Advisor, on the one hand, and such Limited Partner or Assignee, on the other hand, nothing in this **Article IX** should be construed to impose any limitation on such Limited Partner's or Assignee's exercise of such rights or to relieve such General Partner Associate, Liquidating Trustee Associate or Strategic Advisor of such liabilities.

## ARTICLE X
## AMENDMENT; CONSENTS FOR OTHER PURPOSES

### 10.1.  Amendments.

(a)      Subject to **Section 10.1(b)**, the General Partner may amend this Agreement at any time and from time to time, whether by changing any one or more of the provisions hereof, deleting any one or more provisions herefrom or adding one or more provisions hereto:

(i)      without obtaining the authorization, approval, agreement, consent or vote of any Limited Partner or Assignee to: (A) cure any ambiguity or inconsistency herein, (B) address any matter or question not addressed herein or (C) reconstitute the Partnership as a "series" type limited partnership pursuant to and for any purpose contemplated by Section 17-218 of the Act; provided that, in the General Partner's judgment, no such amendment pursuant to this **Section 10.1(a)(i)** has or could reasonably be expected to have a materially adverse effect on the Partnership or any Limited Partner or Assignee;

(ii)      without obtaining the authorization, approval, agreement, consent or vote of any Limited Partner or Assignee: (A) to add to the obligations of the General Partner hereunder, or surrender any right, power or authority granted to the General Partner hereunder, for the benefit of the Partnership or the Limited Partners; (B) to provide, pursuant to **Section 3.4(b)**, that any one or more Additional General Partners may possess and exercise any one or more of the rights, powers and authority possessed by the General Partner under this Agreement; (C) to change the name of the Partnership; (D) to reflect the admission, substitution, termination and withdrawal of Partners, Assignees and Capital Contributions and Capital Withdrawals, effected after the date hereof in accordance with this Agreement; and (E) for such other purpose or purposes as the General Partner may determine to be necessary, appropriate, advisable or convenient to the management and conduct of the business and affairs of the Partnership, provided that, in the General Partner's judgment, no such amendment pursuant to this clause (E) has or could reasonably be expected to have a materially adverse effect on the Partnership or any Limited Partner or Assignee.

(iii)      without obtaining the authorization, approval, agreement, consent or vote of any Limited Partner or Assignee, to cause the Partnership to enter into an agreement with any Limited Partner or Assignee to waive or modify the application of any provision of this Agreement with respect to such Limited Partner or Assignee, provided that, in the General Partner's judgment, no such waiver or modification pursuant to this subparagraph (iii) has or could reasonably be expected to have a materially adverse effect on the Partnership or any other Limited Partner or Assignee. It shall be conclusively presumed that: (A) any amendment of this Agreement arising from the General Partner's entering into a Substitute Incentive Allocation arrangement, Substitute Management Fee arrangement or Substitute Withdrawal Arrangement with any one or more Limited Partners or Assignees with respect to any one or more Capital Accounts of such Limited Partner(s) or Assignee(s) shall not have or reasonably be expected to have a material adverse effect on the Partnership or on any Limited Partner or Assignee with whom such an arrangement is not entered into; and (B) any waiver granted pursuant to the provisions of **Section 3.5(a)** or **Section 7.2(c)(vii)** shall not be deemed to have a material adverse effect on the Partnership or on any Limited Partner or Assignee to whom such a waiver is not granted.

(iv)      without obtaining the authorization, approval, agreement, consent or vote of any Limited Partner or Assignee, to: (A) cause the provisions of **Section 7.4** to comply with the provisions of Section 704 of the Code and applicable Treasury Regulations, (B) otherwise cause the Partnership or the Master Fund to comply with any requirement, condition or guideline contained in any federal, state or foreign law or in any order, directive, opinion, ruling or regulation of a federal, state or

foreign governmental agency or self-regulatory organization, (C) qualify the partnership as or qualify the partnership to do business as a limited partnership or a partnership in which Limited Partners have limited liability, under the laws of any State in which the General Partner determines such qualification to be necessary or advisable, (D) ensure the Partnership's or the Master Fund's continuing classification as a partnership for federal income tax purposes, (E) prevent the Partnership or the Master Fund from being treated as a "publicly traded partnership" within the meaning of Section 7704 of the Code and applicable Treasury Regulations, (F) prevent any of the assets of the Partnership or the Master Fund from being treated as Plan Assets, (G) prevent the Partnership or the Master Fund from being required to register as an investment company under the 1940 Act, (H) prevent that Partnership or the Master Fund from being subject to any provision of the 1940 Act (other than provisions applicable to a company that relies on Section 3(c)(1) or Section 3(c)(7) of the 1940 Act, as the vase may be or (I) prevent any "prohibited transaction" (within the meaning of Section 406 of ERISA or Section 4975(c) of the Code) from occurring, provided that that the General Partner takes such measures are reasonably necessary to prevent any amendment pursuant to this **Section 10.1(a)(iv)** from having a material adverse affect on the Partnership or any Limited Partner;

(v) in a manner that materially adversely affects or could reasonably be expected to have a material adverse effect on the Partnership or the Limited Partners generally, if the General Partner gives Notification to the Limited Partners, at least thirty (30) days prior to the implementation of such amendment, setting forth all material facts relating to such amendment, and obtains the Consent of the Partnership to such amendment prior to the implementation thereof; or

(vi) in a manner that materially adversely affects or could reasonably be expected to have a material adverse effect on any one or more specific Limited Partners, if the General Partner receives consent to such amendment from such affected Limited Partner(s).

(b) Notwithstanding any other provision of **Section 10.1(a)**, this Agreement may not be amended so as to: (i) require a Limited Partner or Assignee to pay any sum of money whatsoever in respect of such Limited Partner's or Assignee's Interest, whether in the form of a Capital Contribution, a loan or otherwise, other than that which such Limited Partner or Assignee has agreed to pay by way of such Limited Partner's Subscription Agreement, this Agreement or another agreement executed and delivered by such Limited Partner or Assignee; (ii) materially reduce the increases and decreases of Net Assets or the amount of distributions to which such Limited Partner or Assignee is entitled under this Agreement, without the consent of such Limited Partner or Assignee; or (iii) modify the limited liability of a Limited Partner, without the consent of such Limited Partner.

(c) If the General Partner adopts an amendment to this Agreement pursuant to **Section 10.1(a)(i), (ii), (iii) or (iv)**, it will provide Limited Partners a copy of such amendment, or a reasonably detailed description of such amendment, within ten (10) Business Days after the effective date of such change; *provided, however,* that an inadvertent failure to comply with the provisions of this **Section 10.1(c)** with respect to any such amendment shall not affect the substance or effectiveness of such amendment in any respect.

(d) For the avoidance of doubt, no amendment may be made to this Agreement without the consent or approval of the General Partner.

### 10.2. Amendment of Certificate.

(a) The General Partner shall cause the Certificate to be amended and/or restated at such time or times, to such extent and in such manner as may be required by the Act.

(b)      The General Partner may cause the Certificate to be amended and/or restated in accordance with the principles set forth in **Section 10.1**, and any such amendment and/or restatement shall be effective immediately upon the filing of a certificate of amendment in the office of the Secretary of State of the State of Delaware or upon such future date as may be stated therein.

**10.3.**      **Consents for Other Purposes.**   The General Partner may from time to time determine to submit to the Partnership, for its approval, actions or practices that are not required to be approved by the Partnership or the Limited Partners pursuant to this Agreement (including transactions subject to the provisions of Section 206(3) of the Advisers Act).   Any such action or practice will be deemed to have been approved by the Partnership if: (a) no later than thirty (30) days prior to the proposed taking of such action or implementation of such practice, the General Partner gives Notification to the Limited Partners describing such action or practice in reasonable detail and (b) prior to the taking of such action or implementation of such practice, the General Partner obtains the Consent of the Partnership to such action or practice.

## ARTICLE XI
## DISSOLUTION AND WINDING UP

**11.1.**      **Events Causing Dissolution.**   The Partnership shall be dissolved upon the first to occur of the following events, and, except as otherwise required by the Act or other applicable law, no other event shall cause the dissolution of the Partnership:

(a)      December 31, 2050;

(b)      the General Partner, in its sole and absolute discretion, declares in writing that the Partnership shall be dissolved and gives Notification of such declaration to the Limited Partners;

(c)      an Event of Withdrawal or the Bankruptcy of the General Partner; *provided, however*, that no such Event of Withdrawal or Bankruptcy shall cause the dissolution of the Partnership if at the time of such Event of Withdrawal or Bankruptcy there is at least one other general partner of the Partnership that has been admitted to the Partnership as a general partner pursuant to **Section 3.4(b)** and such other general partner carries on the business of the Partnership (it being understood and agreed that this Agreement shall be construed to permit the business of the Partnership to be carried on by such other general partner in the event of an Event of Withdrawal or the Bankruptcy of the General Partner); or

(d)      the entry of a decree of judicial dissolution of the Partnership under Section 17-802 of the Act.

**11.2.**      **Winding Up.**   If the Partnership is dissolved pursuant to **Section 11.1**, its business and affairs shall be wound up as soon as reasonably practicable thereafter in the manner set forth below.

(a)      The winding up of the business and affairs of the Partnership shall be carried out by a liquidating trustee (the "**Liquidating Trustee**").   Unless otherwise required by law, the Liquidating Trustee shall be the General Partner or a Person appointed by the General Partner; *provided, however,* that if the Partnership is dissolved pursuant to the provisions of **Section 11.1 (c)** or **(d)**, the Liquidating Trustee shall be a person appointed by a Majority in Interest of the Limited Partners determined as of the beginning of the Accounting Period during which the decree is entered.   The appointment of a Liquidating Trustee may be revoked, and a successor Liquidating Trustee may be appointed, by the General Partner; *provided, however,* that if the Partnership is dissolved pursuant to the provisions of **Section 11.1(c)** or **(d)**,   such revocation and appointment of a successor may be made only by a Majority

-33-

in Interest of the Limited Partners determined as of the beginning of the Accounting Period during which the decree is entered.

(b)     The Liquidating Trustee shall possess full and exclusive right, power and authority, in the name of and for and on behalf of the Partnership, to take such actions as are permitted to be taken by a liquidating trustee under the Act, to the extent the Liquidating Trustee determines such actions are necessary, appropriate, advisable or convenient to effect the orderly winding up of the Partnership's business and affairs.

**11.3.    Compensation of Liquidating Trustee.**  The Liquidating Trustee shall be entitled to receive from the Partnership such reasonable compensation for its services to the Partnership as the General Partner may from time to time determine; *provided, however,* that if the Partnership is dissolved pursuant to the provisions of **Section 11.1(c)** or **(d)**, the Liquidating Trustee shall be entitled to receive from the Partnership such reasonable compensation for its services to the Partnership as a Majority in Interest of the Limited Partners (determined as of the beginning of the Accounting Period during which the decree is entered) may from time to time determine.

**11.4.    Final Statement.**  Within a reasonable time following the completion of all desired sales, retirements and other dispositions of Partnership Property on behalf of the Partnership following the dissolution of the Partnership (excluding, for purposes of this **Section 11.4**, the disposition of reserves described in **Section 11.5(d)**), the Liquidating Trustee shall furnish to each Partner a statement setting forth the assets and the liabilities of the Partnership as of the date of such completion and each Partner's share of distributions pursuant to **Section 11.5**.

**11.5.    Distribution of Property and Proceeds of Sale Thereof.**

(a)     Within 30 days following completion of the statement referred to in **Section 11.4**, the Liquidating Trustee shall, in accordance with Section 17-804(a) of the Act, distribute the Partnership's assets in the following order of priority:

(i)     to pay or make reasonable provision for the payment of the debts, liabilities and obligations of the Partnership to creditors of the Partnership (including the compensation payable to the Liquidating Trustee and other costs and expenses associated with the dissolution and winding up of the Partnership), including, to the extent permitted by applicable law,  Partners and former Partners who are creditors of the Partnership (other liabilities for distributions to Partners and former Partners under Sections 17-601 or 17-604 of the Act);

(ii)    to pay or make reasonable provision for the payment of the debts, liabilities and obligations of the Partnership to creditors of the Partnership who are Partners and former Partners (other liabilities for distributions to Partners and former Partners under Sections 17-601 or 17-604 of the Act), to the extent not paid or provided for pursuant to **Section 11.5(a)(i)**;

(iii)   to satisfy liabilities of the Partnership to Partners, Assignees and former Partners and Assignees for distributions under Sections 17-601 or 17-604 of the Act; and

(iv)    to the Partners and Assignees, in proportion to the positive balances in their respective Capital Accounts after allocating all items for all periods prior to and including the date of distribution pursuant to **Article VII**,  including items relating to sales and distributions pursuant to this **Article XI**.

-34-

(b) All distributions required under **Section 11.5(a)** shall be made no later than ninety (90) days of the close of the Fiscal Year in which the completion of the winding up of the Partnership's business and affairs occurs.

(c) Pursuant to the provisions of Section 17-804(b) of the Act, if there are sufficient assets to satisfy the claims of all priority groups specified above, such claims shall be paid in full and any such provision for payment shall be made in full. If there are sufficient assets to satisfy the claims of one or more but not all priority groups specified above, the claims of the highest priority groups that may be paid or provided for in full shall be paid or provided for in full, before paying or providing for any claims of a lower priority group. If there are insufficient assets to pay or provide for the claims of a particular priority group specified above, such claims shall be paid or provided for ratably to the claimants in such group to the extent of the assets available to pay such claims.

(d) Amounts in reserves established by the Liquidating Trustee pursuant to Section 17-804 of the Act shall be paid to creditors of the Partnership as set forth in **Sections 11.5(a)(i)** and **(ii)**. Any amounts remaining in such reserves after such payments shall be paid as provided in **Sections 11.5(a)(iii)** and **(iv)**.

**11.6. Deficit Capital Accounts.** Notwithstanding any other provision of this Agreement, to the extent that, upon completion of the winding up of the business and affairs of the Partnership, there is a deficit in any Partner's Capital Account, such deficit shall not be an asset of the Partnership and such Partner shall not be obligated to contribute such amount to the Partnership to bring the balance of such Capital Account to zero.

## ARTICLE XII
## MISCELLANEOUS

### 12.1. Construction and Governing Law.

(a) This Agreement, the Certificate and the Subscription Agreements, as modified or supplemented by any Other Agreements, contain the entire understanding and agreement among the respective parties hereto and thereto with respect to the subject matter hereof and thereof, and supersede all prior and contemporaneous agreements, understandings, arrangements, inducements or conditions, express or implied, oral or written, between or among any of the parties hereto with respect to the subject matter hereof and thereof.

(b) All provisions of this Agreement, the Certificate, the Subscription Agreements and the Other Agreements shall be governed by and construed and administered in accordance with the internal substantive laws of the State of Delaware without regard to principles of conflict of laws (to the extent not preempted by ERISA or the Securities and Commodities Laws). In applying the provisions of this Agreement, it is understood and agreed that, regardless of where this Agreement may be executed by a party hereto, this Agreement is executed and delivered by the parties pursuant to the Act, and that the parties intend that the provisions of this Agreement be given full force and effect pursuant to the principles set forth in Sections 17-1101 (b), (c) and (d) of the Act. Without limiting the scope of the preceding sentence, to the extent this Agreement modifies or nullifies any provision of the Act that would apply in the absence of such modification or nullification, as permitted by the Act (any such provision of the Act being referred to herein as a "default" provision), such modification or nullification shall apply in preference to such "default" provision.

(c)     The parties hereto intend that the provisions hereof be construed as if drafted jointly by the parties and that no presumption or burden of proof arise favoring or disfavoring any party by virtue of the authorship of this Agreement.

(d)     In case any one or more of the provisions contained in this Agreement shall, for any reason, be found or held invalid, illegal or unenforceable in any respect in any jurisdiction, such provision shall be ineffective to the extent, but only to the extent, of such invalidity, illegality or unenforceability without invalidating the remainder of such invalid, illegal or unenforceable provision or provisions or any other provisions of this Agreement in that or any other jurisdiction, unless such a construction would be unreasonable. If the General Partner shall determine, with the advice of reputable counsel, that any provision of this Agreement is in conflict with (i) the Securities and Commodities Laws or (ii) other applicable laws, rules, regulations or orders, whether generally or in a particular application, the conflicting provision or such particular application thereof, as the case may be, shall not be deemed to constitute a part of this Agreement for so long as such conflict exists (*provided, however,* that such determination shall not affect any of the remaining provisions of this Agreement or any lawful application of any provision, or render invalid or improper any action taken or omitted prior to such determination). In construing the meaning or application of the Securities and Commodities Laws, counsel to the General Partner may consider the effect of any applicable order or interpretive release issued by the Securities and Exchange Commission or the Commodity Futures Trading Commission, as the case may be, or any applicable "no action" or interpretive position issued by the staff of either such Commission, that modifies or interprets the Securities and Commodities Laws.

(e)     If any provision of this Agreement appears to the General Partner to be ambiguous, or inconsistent with any other provision of this Agreement, the General Partner may construe such provision in such manner as it may determine, and such construction shall be conclusive and binding as to the meaning to be given to such provision.

(f)     All matters concerning: (i) the valuation of the Partnership's Assets; (ii) the determination of the Partnership's liabilities; (iii) the allocation of profits, gains and losses among the Partners and Assignees, including taxes thereon; and (iv) the Partnership's accounting procedures (to the extent not provided for in this Agreement), shall be determined by the General Partner, whose determinations in such matters shall, absent manifest error, be conclusive and binding on the Partners and Assignees.

(g)     In any case in this Agreement where it is provided that the General Partner may take, approve or agree to a particular action, do a particular thing, or make a particular designation or determination, and such case does not expressly require Limited Partner or Assignee authorization, approval, agreement or consent or the vote of Limited Partners or Assignees, as the case may be, the General Partner shall possess full right, power and authority to take, approve or agree to such action, to do such thing, or to make such designation or determination, without obtaining any prior or subsequent authorization, approval, agreement, consent or vote of any Limited Partner or Assignee, as the case may be.

(h)     In any case in this Agreement where it is provided that the General Partner may take, approve or agree to a particular action, do a particular thing, or make a particular designation or determination, in the General Partner's "sole and absolute discretion," the General Partner, in taking, approving, or agreeing to such action, doing such thing, or making such designation or determination, shall be required to act in good faith, but shall be entitled to consider only such interests and factors as it desires, including its own interests, and has no duty or obligation to give any consideration to any interest of or factors affecting the Partnership, any Limited Partner or any Assignee.

(i)    In any case in this Agreement where it is provided that the General Partner may take, approve or agree to a particular action, do a particular thing, or make a particular designation or determination, and such case does not provide that the General Partner may take, approve or agree to such action, do such thing, or make such designation or determination, in the General Partner's "sole and absolute discretion," the General Partner may take, approve or agree to such action, do such thing, or make such designation or determination in its discretion on such terms and in such manner as it may reasonably determine in good faith to be necessary, appropriate, advisable or convenient to carry on the Partnership's business and realize its objective.

(j)    Each reference in this Agreement to a statute or regulation, or provision thereof, shall be deemed to refer to such statute or regulation, or provision thereof, as amended from time to time, or to any superseding statute or regulation, or provision thereof, as is from time to time in effect, as well as to applicable regulations then in effect thereunder.

(k)    In computing the number of days for purposes of this Agreement, all days shall be counted, including Saturdays, Sundays and holidays; *provided, however,* that if the final day of any time period falls on a day that is not a Business Day, then the final day of such time period shall be deemed to be the next day which is a Business Day.

(l)    Except as otherwise stated in this Agreement, references in this Agreement to Articles, Sections and Annexes are to Articles, Sections and Annexes of this Agreement. The headings to Articles and Sections are for convenience of reference only and shall not be considered in construing the meaning of this Agreement.

(m)    Where appropriate, each definition and pronoun in this Agreement includes the singular and the plural, and reference to a particular gender includes each other gender. As used in this Agreement, the word "including" shall mean "including without limitation," and the word "or" is not exclusive.

(n)    The express provisions of this Agreement control and supersede any course of performance or usage of the trade inconsistent with any of the provisions hereof.

(o)    **THE PARTNERS AND ASSIGNEES HEREBY CONSENT TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA AND THE FEDERAL COURTS OF THE UNITED STATES, IN EACH CASE SITTING IN SAN FRANCISCO COUNTY, CALIFORNIA, IN ANY PROCEEDING RELATING TO THIS AGREEMENT.**

**THE PARTNERS AND ASSIGNEES AGREE NOT TO RAISE ANY OBJECTION TO VENUE IN THE COURTS OF THE STATE OF CALIFORNIA AND THE FEDERAL COURTS OF THE UNITED STATES, IN EACH CASE SITTING IN SAN FRANCISCO COUNTY, CALIFORNIA, IN ANY PROCEEDING RELATING TO THIS AGREEMENT.**

**EACH PARTNER AND ASSIGNEE CONSENTS TO SERVICE OF PROCESS IN ANY PROCEEDING RELATING TO THIS AGREEMENT BY WAY OF NOTIFICATION THEREOF BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID.**

**12.2.    Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original as against any party whose signature appears thereon, and all of which shall together constitute one and the same instrument. Any writing, including a Subscription

Agreement or Other Agreement, that has been duly executed by a Person in which such Person has agreed to be bound hereby as a Limited Partner shall be considered a counterpart for purposes of the foregoing.

**12.3.** **Binding Effect.** This provisions of this Agreement shall be binding upon the Partners (including former Partners), Assignees (including former Assignees) and their respective Personal Representatives and shall inure to the benefit of the Partners (including former Partners), Assignees (including former Assignees), General Partner Associates (including former General Partner Associates), Liquidating Trustee Associates (including former Liquidating Trustee Associates), Strategic Advisors (including former Strategic Advisors) and their respective Personal Representatives (collectively, the "**Parties**").

**12.4.** **Third Party Beneficiaries.** The provisions of this Agreement (including **Section 3.3(b)**) are intended solely to govern the relations (a) between or among any two or more Parties and (b) between or among any one or more Parties, on the one hand, and the Partnership, on the other hand. No Person (other than a Party) who owes any debts, liabilities or obligations to or who otherwise has any claim against or dealing with the Partnership shall obtain any rights under any provision of this Agreement, whether as third party beneficiary or otherwise. No creditor of a Party shall have the right to obtain possession of, or otherwise exercise legal or equitable remedies with respect to, Partnership Property.

**12.5.** **Remedies for Breach; Effect of Waiver or Consent.** A waiver or consent, express or implied, of or to any breach or default by any Person in the performance by that Person of his duties with respect to the Partnership is not a consent to or waiver of any other breach or default in the performance by that Person of the same or any other duties of that Person with respect to the Partnership. Failure on the part of a Person to complain of any act of any other Person or to declare any other Person in default with respect to the Partnership, irrespective of how long that failure continues, shall not constitute a waiver by that Person of its rights with respect to that default until the applicable statute of limitations period has run.

IN WITNESS WHEREOF, the undersigned have executed this Limited Partnership Agreement as of the date first above written.

GENERAL PARTNER:

**PRIMARIUS CAPITAL LLC**          **ORGANIZATIONAL LIMITED PARTNER:**

By: _____

Name:                                           Patrick Lin
Title:

**LIMITED PARTNERS:**

Each Person hereafter admitted as a Limited Partner pursuant to the General Partner's acceptance of such Person's Subscription Agreement or another document that has been duly executed by such Person in which such Person has agreed to be bound hereby as a Limited Partner.

## ANNEX A

## DEFINITIONS

"**Account**" or "**Capital Account**" of a Partner is defined in **Section 7.1(a)**.

"**Accounting Period**" – a period determined in accordance with **Section 8.2(b)**.

"**Act**" – the Delaware Revised Uniform Limited Partnership Act, 6 Del. C. Section 17-101 et seq.

"**Additional General Partner**" is defined in **Section 3.4(b)**.

"**Advisers Act**" – the Investment Advisers Act of 1940.

"**Affiliate**" of a specified Person – any Person that directly, or indirectly through one or more intermediaries, Controls, is Controlled by, or is under common Control with, such specified Person.

"**Agreed Value**" of a Capital Contribution in a form other than cash – the fair market value of such Capital Contribution as mutually agreed to by the General Partner and the Limited Partner that makes such Capital Contribution.

"**Agreement**" – this Limited Partnership Agreement, as amended and/or restated from time to time in accordance with **Article X**.

"**Assets**" of the Partnership – (i) all of the Partnership's investments in Financial Instruments (including accrued interest and dividends receivable in respect of such investments); (ii) all of the Partnership's cash on hand or on deposit, including any interest accrued thereon; (iii) all of the Partnership's accounts receivable; (iv) all amounts payable to the Partnership upon its demand; and (v) all of the Partnership's other assets of every kind and nature, including prepaid expenses; *provided, however,* that no value shall be placed on the name or goodwill of the Partnership, which shall be considered the exclusive property of the General Partner.

"**Assignee**" is defined in **Section 5.5(b)(ii)(A)**.

"**Authorized Person**" is defined in **Section 8.6(b)(i)**.

"**Bankruptcy**" of a Person – (i) such Person (A) makes an assignment for the benefit of creditors; (B) files a voluntary petition in bankruptcy; (C) is adjudged a bankrupt or insolvent, or has entered against it an order for relief, in any bankruptcy or insolvency proceeding; (D) files a petition or answer seeking for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation; (E) files an answer or other pleading admitting or failing to contest the material allegations of a petition filed against it in any proceeding of such nature; or (F) seeks, consents to or acquiesces in the appointment of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties; or (ii) one hundred and twenty (120) days after the commencement of any proceeding against such Person seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under any statute, law or regulation, the proceeding has not been dismissed, or if within ninety (90) days after the appointment without such Person's consent or acquiescence of a trustee, receiver or liquidator of such Person or of all or any substantial part of its properties, the appointment is not vacated or stayed, or within ninety (90) days after the expiration of any such stay, the appointment is not vacated. Without limiting the scope of the foregoing, if a Person is a

partnership, Bankruptcy of such Person shall also include the Bankruptcy of any general partner of such Person.

"**Benefit Plan Investor**" – (i) any "employee benefit plan" as defined in ERISA, regardless of whether such employee benefit plan is subject to ERISA, (ii) any "plan" as defined in Section 4975(e)(1) of the Code, regardless of whether such plan is subject to Section 4975 of the Code, and (iii) any entity deemed for any purpose of ERISA or Section 4975 of the Code to hold assets of any such "employee benefit plan" or " plan" due to investments made in such entity by such employee benefit plans and plans. Benefit Plan Investors include, by way of example and not of limitation, corporate pension and profit sharing plans, "simplified employee pension plans," Keogh plans for self-employed individuals (including partners), individual retirement accounts, medical benefit plans, life insurance plans, church pension plans, governmental pension plans, foreign pension plans, and bank commingled trust funds, or insurance company separate accounts, for such plans and accounts.

"**Book/Tax Disparity**" of a Partner – the difference between the (aggregate) balance of such Partner's Capital Account(s) and the balance of such Partner's Tax Basis Capital Account.

"**Business Day**" – any day other than a day on which the New York Stock Exchange is closed.

"**Capital Contribution**" – the amount of money or, if the General Partner determines in any particular case that a contribution of capital to the Partnership may be made in whole or in part in the form of property other than cash, the fair market value of such other property contributed by a Partner to the capital of the Partnership.

"**Capital Withdrawal**" – a withdrawal of cash or other property from a Capital Account, and any distribution of cash or other property made by the Partnership to a Partner, pursuant to this Agreement (including distributions pursuant to the provisions of **Article XI**). Each Capital Withdrawal shall be deemed to be effected as of the end of an Accounting Period, notwithstanding that a distribution in connection with such Capital Withdrawal is made after the end of such Accounting Period. For the avoidance of doubt, a distribution shall not include any amount constituting reasonable compensation for present or past services (including Management Fees and Substitute Management Fees to the General Partner). The amount of a Capital Withdrawal shall be the amount of cash distributed in connection with such withdrawal (to the extent cash is distributed in connection with such withdrawal) plus the value of any Partnership Property distributed in connection with such withdrawal (to the extent Partnership Property is distributed in connection with such withdrawal), determined in accordance with the principles set forth in **Annex B**.

"**CE Act**" – the Commodity Exchange Act.

"**Certificate**" – the Certificate of Limited Partnership of the Partnership described in **Section 2.1**, as originally filed in the office of the Secretary of State of the State of Delaware and as subsequently amended and/or restated from time to time in accordance with this Agreement and the Act.

"**Closing Balance**" of a Capital Account is defined in **Section 7.2**.

"**Code**" – the Internal Revenue Code of 1986.

"**Confidential Information**" is defined in **Section 8.6(a)**.

"**Consent of the Partnership**" when used with respect to a particular transaction, practice, amendment to this Agreement or other action (any such transaction, practice, amendment or other action

being referred to in this Agreement as a "**Consent Transaction**"), shall be deemed to have been obtained if a Majority in Interest of the Limited Partners, determined as of the beginning of the Accounting Period in which Notification of such Consent Transaction is given to the Limited Partners in accordance with this Agreement, approves such Consent Transaction, it being understood and agreed that, for purposes of the foregoing: (i) a Limited Partner shall be deemed to have approved a Consent Transaction if such Limited Partner either (A) affirmatively approves such Consent Transaction prior to the completion, consummation or implementation thereof; (B) fails to give Notification to the Partnership of its objection to such Consent Transaction prior to the completion, consummation or implementation thereof; or (C) has or is granted the opportunity to withdraw all amounts from its Capital Account(s) prior to the completion, consummation or implementation thereof; and (ii) the Opening Balance of a Limited Partner that, pursuant to the provisions of **Section 4.2(d)**, has waived its right, power and authority to authorize, approve, agree or consent, or vote on, the matter in question, shall not be considered in either the numerator or denominator of the quotient described in the definition of Majority in Interest for purposes of determining whether a Majority in Interest has approved such Consent Transaction.

"**Control**" – when used with respect to a particular Person, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through the ownership of voting securities, by contract or otherwise.

"**Entity**" – any domestic or foreign corporation, partnership (whether general or limited), joint venture, limited liability company, business trust or association, trust, estate, unincorporated association or organization, custodian, government (or political subdivision, department or agency thereof), cooperative or other entity, whether acting in an individual or representative capacity.

"**ERISA**" – the Employee Retirement Income Security Act of 1974.

"**Event of Withdrawal**" – an event of withdrawal of the General Partner within the meaning of Section 17-402(a)(1), (2) or (11) of the Act.

"**Financial Instruments**" – (i) capital stock; (ii) shares of beneficial interest, partnership interests and similar financial instruments; (iii) bonds, notes and debentures (whether subordinated, convertible or otherwise); (iii) shares of open and closed-end investment companies and other mutual funds, including money market funds; (iv) commercial paper, (v) obligations of the United States or any state thereof, foreign governments and instrumentalities of any of them; (vi) any other instruments that are defined as "securities" under the Commodities and Securities Laws or that are commonly known as "securities;" (vii) currencies; (viii) spot and forward currency transactions; (ix) commodity, interest rate, currency, equity and other derivative products, including (A) futures contracts (and options thereon) relating to stocks, stock indices, currencies, U.S. Government securities and securities of foreign governments and other commodities and financial instruments; (B) swaps, options, warrants, caps, collars, floors and forward rate agreements; and (C) agreements relating to or securing such transactions; (x) equipment lease certificates and equipment trust certificates; (xi) accounts and notes receivable and payable held by trade or other creditors; (xii) trade acceptances; (xiii) contract and other claims; (xiv) executory contracts; (xv) participations in Financial Instruments; (xvi) repurchase agreements; and (xvii) certificates of deposit, banker's acceptances, trust receipts and other obligations and instruments or evidences of indebtedness of whatever kind of nature; in each case, of any Person, whether or not publicly traded or readily marketable, all without restriction of any kind, except as otherwise provided in the Memorandum.

"**Fiscal Quarter**" – a fiscal quarter of the Partnership determined in accordance with **Section 8.2(a)**.

"**Fiscal Year**" – the fiscal year of the Partnership determined in accordance with **Section 8.2(a)**.

"**General Partner**" – PCM and any Additional General Partner, to the extent that PCM, pursuant to **Section 3.4(b)**, provides that such Additional General Partner shall possess any one or more of the rights, powers and authority of PCM in its capacity as general partner of the Partnership under this Agreement.

"**General Partner Associate**" – the General Partner, any Affiliate of the General Partner and any member, partner, shareholder, other beneficial owner, manager, director, officer, employee or agent of the General Partner or any such Affiliate and their Personal Representatives.

"**High Water Mark**" is defined in **Section 7.2(c)**.

"**Hot Issue**" – a public offering of securities that trade at a premium in the secondary market whenever such secondary market begins.

"**Hot Issue Brokerage Account**" – a special trading account, established with a broker-dealer, this is permitted under the Hot Issue Rule to participate in Hot Issues.

"**Hot Issue Memorandum Account**" – a memorandum account maintained in the accounting records of the Partnership on a Partner by Partner basis with respect to each Hot Issue in which the Partnership participates to reflect the participation of each Partner (other than Partners that are Restricted Persons) in allocations and distributions attributable to such Hot Issue.

"**Hot Issues Rule**" – IM-2110-1 (entitled "Free-Riding and Withholding") of the Conduct Rules promulgated by the NASD, as amended from time to time by the NASD.

"**Incentive Allocation**" is defined in **Section 7.2(c)**.

"**Incentive Allocation Calculation Period**" is defined in **Section 7.2(c)**.

"**Indemnification Obligation**" – an obligation of the Partnership to indemnify a General Partner Associate pursuant to **Article IX**.

"**Indemnitee**" is defined in **Section 9.2(a)**.

"**Initial Closing**" – the day on which the Partnership first admits a Limited Partner (other than the Organizational Limited Partner, in its capacity as such) to the Partnership as a Partner.

"**Interest**" – a Partnership Interest held by a Person in its capacity as a Limited Partner.

"**Judicially Determined**" – determined in a judgment or order, not subject to further appeal or discretionary review, by a court, governmental body or agency or self-regulatory organization having jurisdiction to render or issue such judgment or order.

"**Liabilities**" of the Partnership – (i) all of the Partnership's bills and accounts payable; (ii) all of the Partnership's accrued or payable expenses; (iii) the current market value of all of the Partnership's short sale obligations after accounting for or reflecting any hedge or other offsetting positions; and (iv) all of the Partnership's other liabilities, present or future, including Reserves.

"**Limited Partner**" as of a particular time – a Person who has been admitted to the Partnership as a limited partner in accordance with this Agreement and who has not, pursuant to this Agreement, (i)

A - 4

withdrawn all amounts from its Capital Account(s), (ii) resigned or withdrawn from the Partnership as a limited partner, (iii) been required to withdraw from the Partnership as a limited partner or (iv) assigned its entire Interest to a substitute Limited Partner pursuant to **Section 5.5(b)(ii)(A)**.

"**Liquidating Trustee**" is defined in **Section 11.2(a)**.

"**Liquidating Trustee Associate**" – the Liquidating Trustee, any Affiliate of the Liquidating Trustee, and any member, partner, shareholder, other beneficial owner, manager, director, officer, employee or agent of the Liquidating Trustee or any such Affiliate and their Personal Representatives.

"**Losses**" of a General Partner Associate or Liquidating Trustee Associate – any and all losses, damages, liabilities, costs, expenses (including reasonable legal fees and costs and expenses), judgments, fines, amounts paid in settlement, and other amounts actually and reasonably paid or incurred by such General Partner Associate or Liquidating Trustee Associate in connection with any and all Proceedings that arise from or relate, directly or indirectly, to acts or omissions (or alleged acts or omissions) of such General Partner Associate or Liquidating Trustee Associate in connection with this Agreement or the business or affairs of the Partnership and in which such General Partner Associate or Liquidating Trustee Associate may be involved, or is threatened to be involved, as a party, witness, deponent or otherwise, whether or not the same shall proceed to judgment or be settled or otherwise be brought to a conclusion.

"**Majority in Interest**" of the Limited Partners as of the beginning of an Accounting Period – Limited Partners (other than Limited Partners who are also General Partner Associates) the Opening Balances of whose Capital Accounts at such time exceed 67% of the Opening Balances of the Capital Accounts at such time of all Limited Partners (other than Limited Partners who are also General Partner Associates).

"**Management Fee**" is defined in the Memorandum.

"**Master Fund**" is defined in the Memorandum.

"**Memorandum**" – the Confidential Private Placement Memorandum in effect at the time of the Initial Closing, as amended or supplemented from time to time, prepared by or under the direction of the General Partner describing the Partnership, the General Partner and the offer and sale of Interests.

"**NASD**" – the National Association of Securities Dealers, Inc.

"**Net Assets**" of the Partnership at a particular time – the total value of the Partnership's Assets at such time (taking into account realized and unrealized appreciation and depreciation), less the total amount of the Partnership's Liabilities at such time, in each case determined in accordance with this Agreement  and generally accepted accounting principles (except as provided in **Section 3.5(d)**) and **Section 8.3(d)**).

"**Net New Profit** " is defined in **Section 7.2(c)**.

"**Net Profit**"  is defined in **Section 7.2(c)**.

"**1940 Act**" – the Investment Company Act of 1940.

"**1934 Act**" – the Securities Exchange Act of 1934.

"**1933 Act**" – the Securities Act of 1933.

A - 5

"**Notification**" to a Person – a written notice that is deemed to be duly given to such Person on the date of delivery if delivered in person to such Person or sent to such Person by confirmed facsimile transmission or reputable overnight courier, or on the earlier of actual receipt or three (3) Business Days after the date of mailing if mailed to such Person by registered or certified mail (first class postage prepaid, return receipt requested); *provided, however,* that: (i) a Notification to the Partnership shall be deemed to be duly given to the Partnership only upon its actual receipt by the Partnership; and (ii) Notification constituting service of process on a Partner or Assignee in any Proceeding relating to this Agreement shall be made exclusively as provided in **Section 12.1(o)**. Any Notification required or permitted to be given to the Partnership shall be sent to the principal office of the Partnership, or to such other address or facsimile number as the General Partner may specify in a Notification given to all other Partners. Any Notification required or permitted to be given to a Partner shall be sent to such Partner at such address or to such facsimile number as such Partner may notify the Partnership by way of a Notification (it being understood and agreed that a Subscription Agreement, duly executed by a Person who subscribes for a Limited Partnership Interest pursuant thereto, shall constitute a Notification by such Person of its address and facsimile number).

"**Opening Balance**" of a Capital Account is defined in **Section 7.1(b)**.

"**Organizational Limited Partner**" is defined in the first paragraph of this Agreement.

"**Other Agreement**" means any document evidencing a Substitute Management Fee arrangement, Substitute Incentive Allocation arrangement, Substitute Withdrawal Arrangement or arrangement entered into pursuant to the provisions of this Agreement.

"**Partner**" – the General Partner, each Additional General Partner and each Limited Partner.

"**Partnership**" – Primarius China Fund LP, the Delaware limited partnership whose formation shall be completed upon the filing of the Certificate and whose business and affairs shall be governed by this Agreement.

"**Partnership Interest**" of a Partner at any particular time – such Partner's interest, rights, powers and authority in and with respect to the Partnership at such time as determined in accordance with this Agreement. Such rights include (i) such Partner's share of the profits and losses of the Partnership, and such Partner's right to receive distributions and to withdraw assets from the Partnership, pursuant to this Agreement and (ii) such Partner's other rights, powers and authority in respect of the Partnership under this Agreement.

"**Partnership Property**" at any particular time – all interests, properties (whether tangible or intangible) and rights of any type contributed to or acquired by the Partnership and then owned or held by or for the account of the Partnership.

"**PCM**" is defined in the first paragraph of this Agreement.

"**Person**" – any natural person, whether acting in an individual or representative capacity, or any Entity.

"**Personal Representative**" is defined in Section 17-101(15) of the Act.

"**Plan Assets**" – money or other property in which a Benefit Plan Investor is deemed to have an ownership interest for purposes of ERISA or Section 4975 of the Code.

"**Proceeding**" – any claim, demand, action, suit or proceeding (including any action by or in the right of the Partnership), civil, criminal, administrative or investigative, brought by or before (or threatened to be brought by or before) any court, arbitrator, mediator, governmental body or agency or self-regulatory organization, that directly or indirectly arises from or relates to this Agreement, the business or affairs of the Partnership or a Limited Partner's investment in the Partnership.

"**Required Records**" is defined in **Section 8.1(a)**.

"**Reserves**" is defined in **Section 8.3(d)**.

"**Restricted Person**" means any Person who is restricted from participating in a Hot Issue pursuant to the Hot Issues Rule.

"**Securities and Commodities Laws**" – any one or more of the Advisers Act, the 1933 Act, the 1934 Act, the 1940 Act and the CE Act, to the extent each is applicable to the General Partner or the Partnership.

"**Strategic Advisor**" – a Person selected by the General Partner to advise it with regard to general economic and market conditions and/or to identify particular investment opportunities (it being understood and agreed that the General Partner may appoint one or more Strategic Advisors and terminate the appointment of any Strategic Advisor at any time in its sole and absolute discretion.

"**Subscription Agreement**" of a Person – the Subscription Agreement and Power of Attorney (and related documents) in such form or forms as the General Partner may from time to time determine, as completed and executed by such Person and delivered by such Person to the Partnership, pursuant to which such Person (i) subscribes for an Interest by agreeing to contribute capital to the Partnership in such amount or amounts, at such time or times and otherwise in such manner as may be set forth therein; and (ii) agrees to be bound by this Agreement as a Limited Partner.

"**Substitute Incentive Allocation**" is defined in **Section 7.2(c)**.

"**Substitute Management Fee**" is defined in **Section 3.5(a)**.

"**Substitute Withdrawal Arrangement**" is defined in **Section 6.1(j)**.

"**State**" is defined in Section 17-101(16) of the Act.

"**Tax Basis Capital Account**" – is defined in **Section 7.4(a)**.

"**Tax Item**" – any item of income, gain, expense, deduction, loss or credit allocable to Partners for federal income tax purposes.

"**Transfer**" of an Interest or an interest therein – (i) any transaction in which a Person assigns or purports to assign an Interest, or an interest therein, to another Person, and includes: (A) any transfer, sale, assignment, gift, exchange, pledge, mortgage or hypothecation of an Interest, or any interest therein; (B) the creation or granting of a security interest, lien or encumbrance in, on or against an Interest, or any interest therein; or (C) any other conveyance or disposition of an Interest, or an interest therein, whether voluntary, involuntary or by operation of law; and (ii) any agreement, including a structured note or swap transaction, under which a Limited Partner or Assignee agrees to: (i) grant any other Person an economic interest in such Limited Partner's or Assignee's Capital Account(s) or (ii) pay any person an amount

A - 7

determined in whole or in substantial part by reference to the change in value of a Capital Account or to the performance of the Partnership.

"**Treasury Regulations**" – the income tax regulations promulgated under the Code.

## ANNEX B

### VALUATION PRINCIPLES

(i)     Securities for which the primary market is a national securities exchange or the Nasdaq National Market of the Nasdaq Stock Market shall be valued at the last sale price on such exchange or market during regular trading hours on the day of valuation or, if there was no sale on such day, at the mean between the highest closing bid and lowest closing asked prices on such day on such exchange or market.

(ii)    Options on Securities and Securities indices that are listed on a national securities exchange shall be valued at the mean between the highest bid and lowest asked prices on the day of valuation as reported by the exchange determined by the General Partner to be the primary exchange for such option.

(iii)   U.S. Government securities for which market quotations are available shall be valued at a price provided by an independent pricing agent or broker-dealer.

(iv)    Short-term debt securities, including bonds, notes, debentures and other debt securities, and money market instruments such as certificates of deposit, commercial paper, bankers' acceptances and obligations of domestic and foreign banks, with remaining maturities of more than 60 days, for which reliable market quotations are readily available, shall each be valued at current market quotations as provided by an independent pricing agent or principal market maker.

(v)     Futures contracts and options thereon traded on a commodities exchange or board of trade shall be valued at the last sale price at the close of trading on such exchange or board of trade or, if there was no sale on the applicable commodities exchange or board of trade on such day, at the mean between the highest quoted bid and lowest quoted asked prices on such exchange or board of trade as of the close of trading on the valuation date.

(vi)    Quotations of foreign securities in a foreign currency shall be converted to U.S. dollar equivalents at the current rate obtained from a recognized bank or dealer.

(vii)   Forward currency exchange contracts shall be valued at the current cost of covering or offsetting such contracts.

(viii)  All assets not described in categories (i)-(vii) above shall be valued in any fair and reasonable manner the General Partner may determine.

(ix)    If on the relevant valuation date the exchange or market herein designated for the valuation of any given asset is not open for business on the relevant valuation date, the valuation of such asset shall be determined as of the last preceding date on which such exchange or market was open for business; if an instrument could not be liquidated on the relevant valuation date due to the operation of daily limits or other rules of the exchange or market designated for the valuation thereof or similar factors, the settlement price on the first subsequent day on which the instrument could be liquidated shall be the basis for determining the value thereof for that valuation date, or such other value as the General Partner may determine to be fair and reasonable.

(x)     If the General Partner determines that it is advisable to modify any of the foregoing valuation principles in order to reflect restrictions upon marketability or other factors affecting

B - 1

the value of an asset, it shall value the asset in question on the basis of such factors as it determines to be pertinent.    Without limiting the scope of the foregoing, the valuation of an asset by the General Partner may reflect the amounts invested by the Partnership in such asset, notwithstanding that such amounts may not represent the reported market value of such asset.

CH02/22260775.3