review or evaluation with respect to any violation of any laws, rules or regulations, nor is Primarius the subject of any pending or threatened adverse proceedings by any regulatory authority having jurisdiction over its operations.

5.9    Primarius (i) is not subject to an order of the SEC issued under Section 203(f) of the Advisers Act; (ii) has not been convicted within ten years of the date hereof of any felony or misdemeanor involving conduct described in Section 203(e)(2)(A)-(D) of the Advisers Act; (iii) has not been found by the SEC to have engaged, and has not been convicted of engaging, in any of the conduct specified in paragraph (1), (5) or (6) of Section 203(e) of the Advisers Act; and (iv) is not subject to an order, judgment or decree described in Section 203(e) of the Advisers Act.

### Section 6.    Conditions Precedent to the Obligations of Jayhawk and Lucky Henry.

The obligations of Jayhawk and Lucky Henry pursuant to this Agreement are subject to the satisfaction at or prior to the Effective Date of the following conditions, unless waived in writing by such parties:

6.1    Primarius shall have accepted its appointment as a general partner of Lucky Henry, to serve as the successor of Jayhawk, and shall have executed the Amended and Restated Partnership Agreement.

6.2    As of the Effective Date, Lin shall have executed the Amended and Restated Primarius Operating Agreement.

6.3    As of the Effective Date, Lin and Darlet Lin shall have delivered an undertaking to Jayhawk providing substantially as follows:

"On and after the Effective date for so long as Jayhawk and Jayhawk Investments shall be members of Primarius, Patrick Lin and Darlet Lin may employ the following investment strategy solely in connection with their personal accounts and investment funds, other entities and/or separate accounts managed by Primarius: a long-short equity investment strategy employing fundamental analysis to invest primarily in publicly-traded equity securities of small-capitalization U.S. companies; *provided, however*, that if Jayhawk and Jayhawk Investments cease to be members of Primarius due to the dissolution of Primarius by Lin without the consent of Jayhawk or Jayhawk Investments, then neither Lin nor Darlet Lin shall be permitted to employ said investment strategy for a period of one-year after the effective date of such dissolution except with respect to their personal accounts. It is acknowledged by the parties that Patrick Lin and Darlet Lin may have professional responsibilities in addition to Primarius."

### Section 7.    Conditions Precedent to the Obligations of Primarius.

The obligations of Primarius pursuant to this Agreement are subject to the satisfaction at or prior to the Effective Date of the following conditions, unless waived in writing by Primarius:

7.1    Jayhawk shall have appointed Primarius as a general partner of Lucky Henry, to serve as the successor to Jayhawk, and shall have notified the Lucky Henry Limited Partners in writing of such appointment; and (ii) Jayhawk shall have resigned and withdrawn, in writing, as the general partner of Lucky Henry.

7.2    The Lucky Henry Limited Partners shall have consented in writing to: (i) the appointment of Primarius to serve as a general partner of Lucky Henry, to succeed Jayhawk; (ii) the resignation of Jayhawk as the general partner of Lucky Henry; (iii) the appointment of Lin to serve as the portfolio manager of Lucky Henry on behalf of Primarius; and (iv) the changes in the terms of the original

- 8 -

JAN-30-2004  16:46          JAY CAPITAL                    9136428661   P.12/15

Agreement of Limited Partnership of Lucky Henry, as reflected in the Amended and Restated Partnership Agreement.

7.3     On or prior to the Effective Date, each Lucky Henry Limited Partner shall have executed the Amended and Restated Partnership Agreement.

7.4     As of the Effective Date, the capital account of Jayhawk Investments in Lucky Henry shall have a net asset value of at least three million dollars ($3,000,000).

7.5     On or prior to the Effective Date, each of Jayhawk and Jayhawk Investments shall have executed the Amended and Restated Primarius Operating Agreement.

7.6     On and after the Effective Date, Jayhawk and its affiliates shall execute and deliver such documents, and provide such information, as shall be reasonably requested by Primarius in connection with the implementation of the transactions contemplated by this Agreement, including but not limited to a Certificate of Amendment of the Certificate of Limited Partnership of Lucky Henry (for filing with the Secretary of State of the State of Delaware).

## Section 8.    Indemnification.

8.1     Primarius agrees to indemnify and hold Jayhawk, its affiliates (which term for purposes of this Section 8.1 includes the members, partners, controlling persons (as such term is defined under the Securities Act of 1933, as amended), directors, officers, employees and agents of such persons) harmless from and against any and all losses, claims, damages, costs, liabilities or expenses (including reasonable attorney's fees and expenses), joint or several, to which they may become subject under any of the federal or state securities laws, under any other statute, at common law or otherwise, in each case resulting from the material breach of this Agreement (including but not limited to a material breach of a representation or warranty) by Primarius; *provided, however*, that Primarius shall not be liable in any such case to the extent that any such loss, claim, damage, liability, cost or expense (i) results from a breach by Jayhawk (or by any other indemnified person under this paragraph) of any of their respective obligations under this Agreement or (ii) results from the fraud, gross negligence or willful misconduct of Jayhawk (or by any other indemnified person under this paragraph).

8.2     Jayhawk agrees to indemnify and hold Primarius, its affiliates (which term for purposes of this Section 8.1 includes the members, partners, controlling persons (as such term is defined under the Securities Act of 1933, as amended), directors, officers, employees and agents of Primarius) harmless from and against any and all losses, claims, damages, costs, liabilities or expenses (including reasonable attorney's fees and expenses), joint or several, to which they may become subject under any of the federal or state securities laws, under any other statute, at common law or otherwise, in each case resulting from the material breach of this Agreement (including but not limited to a material breach of a representation or warranty) by Jayhawk; *provided, however*, that Jayhawk shall not be liable in any such case to the extent that any such loss, claim, damage, liability, cost or expense (i) results from a breach by Primarius (or by any other indemnified person under this paragraph) of any of their respective obligations under this Agreement or (ii) results from the fraud, gross negligence or willful misconduct of Primarius (or by any other indemnified person under this paragraph).

8.3     No indemnified person (an "Indemnified Person") seeking indemnification, reimbursement or contribution under this Agreement will, without the indemnifying person's written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened proceeding. Promptly after receipt by an Indemnified Person of notice of the commencement of any action or the making of any claim, such Indemnified Person will notify the indemnifying person thereof. The failure to so notify the indemnifying person will not relieve the indemnifying person from any liability which the indemnifying person may have hereunder except to the extent such failure results in prejudice to the indemnifying person. In case any action or claim is brought against any Indemnified

- 9 -

Person and it notifies the indemnifying person of the commencement or making thereof, the indemnifying person will be entitled to participate therein and, to the extent that the indemnifying person may elect by notice to the Indemnified Person promptly after receiving the aforesaid notice from such Indemnified Person, to assume the defense thereof, provided that the counsel selected by the indemnifying person is reasonably acceptable to all Indemnified Persons. Upon receipt of notice from the indemnifying person to such Indemnified Person of the indemnifying person's election so to assume the defense of such action or claim, the indemnifying person will not be liable to such Indemnified Person under this indemnification provision for any legal or other expenses subsequently incurred by the Indemnified Person in connection with the defense thereof (other than costs of investigation or the production of documents or witnesses) (i) unless the indemnifying person has failed to provide legal counsel reasonably satisfactory to such Indemnified Person in a timely manner; or (ii) such Indemnified Person shall have reasonably concluded that the representation for such Indemnified Person by legal counsel selected by the indemnifying person would be inappropriate due to actual or potential differing interests, in which case the indemnifying person will pay reasonable fees and disbursements of one separate counsel retained by the Indemnified Person as incurred.

## Section 9.    Miscellaneous

9.1    Notices. All notices and other communications under this Agreement must be in writing, and any notice or communication will be deemed to have been duly given (a) when delivered personally, (b) on the business day following the day such notice or other communication is sent by recognized overnight courier, (c) upon acknowledgement of the receipt of a facsimile of such notice or other communication, or (d) on the fifth day following the date of deposit in the United States mail if sent first class, postage prepaid, by registered or certified mail. Notices to each party will be sent to the address set forth with respect to such party on the first page of this Agreement unless either party notifies the other party in writing of a different address in accordance with the requirements of this Section 9.1.

9.2    Amendments in Writing; No Waiver

(a)    None of the terms or provisions of this Agreement may be amended, supplemented or otherwise modified except by a written instrument executed by each of the parties hereto.

(b)    No party hereto shall by any act (except by a written instrument pursuant to Section 9.1 hereof), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder. No failure to exercise, nor any delay in exercising, on the part of any party hereto, any right, power or privilege hereunder shall operate as a waiver thereof. No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. A waiver by any party hereto of any right or remedy hereunder on any one or more occasions shall not be construed as a bar to any right or remedy that any party hereto would otherwise have on any future occasion.

9.3    No Third Party Beneficiaries; Assignment.

(a)    This Agreement shall be binding upon and inure solely to the benefit of the parties hereto and their permitted successors and assigns, and nothing herein, express or implied, is intended to or shall confer upon any other person or entity, any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement or the transactions contemplated hereunder.

(b)    No party hereto may assign any of its rights or obligations under this Agreement to any person or entity without the prior written consent of the other party hereto.

9.4    GOVERNING LAW; Severability, Arbitration.

(a)    THIS AGREEMENT SHALL BE INTERPRETED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO THE

- 10 -

JAN-30-2004  16:47        JAY CAPITAL                              9136428661   P.14/15

PRINCIPLES OF CONFLICT OF LAWS THEREOF. If any provision hereof would be invalid under applicable law, then such provision shall be deemed to be modified to the extent necessary to render it valid while most nearly preserving its original intent. No provision hereof shall be affected as a result of another provision being held invalid.

(b)     Notwithstanding any other provision of this Agreement or any Document (as defined below), any action, dispute, claim or controversy of any kind now existing or hereafter arising between or among any of the parties hereto in any way arising out of, pertaining to or in connection with this Agreement or any related agreement, document, or instrument (collectively, the "Documents") or any transaction contemplated hereby or thereby, or any aspect of the past or present relationships of the parties hereto pursuant to this Agreement or any Document shall be resolved by mandatory and binding arbitration in San Francisco, California before a single arbitrator in accordance with the rules of the American Arbitration Association. The occurrence of any of the foregoing matters shall be referred to herein as a "Dispute." Any of the parties hereto may bring by summary proceedings an action in court to compel arbitration of any Dispute.

9.5     Entire Agreement. This Agreement (along with the agreements annexed hereto) constitutes the entire agreement of the parties hereto with respect to the subject matter hereof, and supersedes all prior agreements and undertakings, both written and oral, between the parties hereto with respect to the subject matter hereof.

9.6     Counterparts. This Agreement may be executed by the parties hereto in any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

9.7     Facsimiles. Any facsimile signature of this Agreement or any other document by any person or entity shall constitute the legal, valid and binding execution of this Agreement or such other document by such person or entity.

9.8     Section Headings. The section headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or to be taken into consideration in the interpretation hereof.

IN WITNESS WHEREOF, the parties have hereunto executed this Agreement as of the day and year first above written.

JAYHAWK CAPITAL MANAGEMENT, L.L.C.

By: _____
Name: Kent C. McCarthy
Title: President

LUCKY HENRY, L.P.

By: Jayhawk Capital Management, L.L.C.,
    its general partner

By: _____
Name: Kent C. McCarthy
Title: President

PRIMARIUS CAPITAL LLC

By: _____
    Name:
    Title:

Annex A  --  Amended and Restated Partnership Agreement of Lucky Henry
Annex B  --  New Lucky Henry Offering Documents
Annex C  --  Form of Consulting Agreement
Annex D  --  Amended and Restated Primarius Operating Agreement
Annex E  --  Unaudited financial statements and list of holdings of Lucky Henry

- 12 -

TOTAL P.15

Patrick Lin
Darlet Lin
8 Honey Hill Road
Orinda, California 94563

June 1, 2003

Jayhawk Capital Management, L.L.C.
8201 Mission Road, Suite 110
Prairie Village, Kansas 66208

Dear Kent:

Reference is made to Section 6.3 of that certain Management Transfer Agreement (the "Agreement") dated as of June 1, 2003, among Jayhawk Capital Management, L.L.C. ("Jayhawk"), Lucky Henry, L.P. ("Lucky Henry") and Primarius Capital LLC ("Primarius"). Subject to the execution of the Agreement by Jayhawk, Lucky Henry and Primarius and the consummation of the transactions contemplated by the Agreement, the undersigned hereby agree that, on and after the date hereof for so long as Jayhawk and Jayhawk Investments (as defined in the Agreement) shall be members of Primarius, the undersigned may employ the following investment strategy solely in connection with their personal accounts and investment funds, other entities and/or separate accounts managed by Primarius: a long-short equity investment strategy employing fundamental analysis to invest primarily in publicly-traded equity securities of small-capitalization U.S. companies; *provided, however*, that if Jayhawk and Jayhawk Investments cease to be members of Primarius due to the dissolution of Primarius by Patrick Lin without the consent of Jayhawk or Jayhawk Investments, then the undersigned shall not be permitted to employ said investment strategy for a period of one-year after the effective date of such dissolution except with respect to their personal accounts. Notwithstanding the foregoing, the undersigned may have professional responsibilities in addition to those pertaining to Primarius.

If the Agreement is not executed by Jayhawk, Lucky Henry and Primarius or the transactions contemplated by the Agreement are not consummated, then this letter shall be of no force or effect.

Sincerely,

_____
Patrick Lin

_____
Darlet Lin