JAN-30-2004  16:43    JAY CAPITAL                              9136428661   P.04/15

## MANAGEMENT TRANSFER AGREEMENT

This Management Transfer Agreement (this "Agreement") is made and entered into as of this 1st day of June, 2003, by and among Jayhawk Capital Management, L.L.C., a Delaware limited liability company with its principal offices located at 8201 Mission Road, Suite 110, Prairie Village, Kansas 66208 ("Jayhawk"), Lucky Henry, L.P., a Delaware limited partnership with its principal offices located as 8201 Mission Road, Suite 110, Prairie Village, Kansas 66208 ("Lucky Henry"), and Primarius Capital LLC, a Delaware limited liability company with its principal offices located at One Montgomery, Suite 3300, San Francisco, California 94104 ("Primarius").

WHEREAS, Lucky Henry is a private investment partnership which commenced investment activities in April, 2002, but which was formally organized in November, 2002 by the filing of a Certificate of Limited Partnership with the Delaware Secretary of State; and

WHEREAS, the sole general partner of Lucky Henry is Jayhawk, which was formed in September, 1995 by the filing of a Certificate of Formation with the Delaware Secretary of State; and

WHEREAS, Kent C. McCarthy ("McCarthy"), the Managing Member of Jayhawk, has had sole investment discretion with respect to the portfolio of Lucky Henry since it commenced investment activities in April, 2002;

WHEREAS, the limited partners of Lucky Henry are: (i) Jayhawk Investments, L.P., a Delaware limited partnership with its principal offices located at 8201 Mission Road, Suite 110, Prairie Village, Kansas 66208, and the sole general partner of which is Jayhawk ("Jayhawk Investments"); and (ii) Brad Shoup, an individual residing in Dallas, Texas; and

WHEREAS, as of April 30, 2003, the approximate net asset value of the capital accounts of the partners of Lucky Henry is as follows: Jayhawk -- $233,611.42; Jayhawk Investments -- $4,876,580.81; and Brad Shoup -- $415,044.19; and

WHEREAS, the members of Jayhawk are: (i) McCarthy; and (ii) KCM Capital, Inc., a Missouri corporation with its principal offices located at 8201 Mission Road, Suite 110, Prairie Village, Kansas 66208, the sole shareholder of which is McCarthy; and

WHEREAS, Jayhawk is registered as an investment adviser in the State of Kansas; and

WHEREAS, Primarius was formed in September, 2002 by the filing of a Certificate of Formation with the Delaware Secretary of State; and

WHEREAS, the sole member of Primarius is Patrick Lin ("Lin"); and

WHEREAS, Primarius is registered as an investment adviser with the State of California; and

WHEREAS, Primarius serves as the sole general partner of Primarius Partners LP, a Delaware limited partnership which was formed in September, 2002 by the filing of a Certificate of Limited Partnership with the Delaware Secretary of State ("Primarius Partners"); and

WHEREAS, in his capacity as the Managing Member of Primarius, Lin has had sole investment discretion with respect to the portfolio of Primarius Partners since it commenced investment activities; and

WHEREAS, Jayhawk Investments is a limited partner of Primarius Partners and has invested $750,000 in Primarius Partners; and

WHEREAS, the parties hereto desire to enter into the transactions contemplated by this Agreement pursuant to which, among other things:

(i) Jayhawk will resign as the general partner of Lucky Henry;

(ii) Primarius will be appointed as the new general partner of Lucky Henry;

(iii) The Agreement of Limited Partnership of Lucky Henry will be amended and restated to reflect the transactions contemplated by this Agreement, to the extent applicable, as well as to effect various other changes to Lucky Henry;

(iv) The Offering Circular and related documentation of Lucky Henry will be replaced by a new Private Offering Memorandum and related documentation;

(v) Each of Jayhawk and Jayhawk Investments will become a member of Primarius pursuant to the terms and subject to the conditions contained herein; and

WHEREAS, the parties intend that the transactions contemplated in this Agreement will be completed and effective as of June 1, 2003 (the "Effective Date").

NOW, THEREFORE, in consideration of the premises and the mutual covenants and representations hereinafter stated, and intending to be legally bound hereby, the parties agree as follows:

**Section 1.   Resignation of Jayhawk as General Partner of Lucky Henry; Appointment of Primarius as New General Partner of Lucky Henry; Adoption of Amended and Restated Limited Partnership Agreement and New Offering Documents.**

1.1   Jayhawk hereby appoints Primarius as a general partner of Lucky Henry as of the Effective Date, to serve as the successor to Jayhawk.

1.2   Jayhawk hereby resigns and withdraws as a general partner of Lucky Henry as of the Effective Date. As of and after the Effective Date, the capital account of Jayhawk in Lucky Henry shall be converted into a limited partner capital account, and Jayhawk shall have the rights and obligations of a limited partner of Lucky Henry with respect to such capital account in accordance with the Amended and Restated Partnership Agreement (as defined below). Jayhawk agrees to enter into the Amended and Restated Partnership Agreement as a limited partner of Lucky Henry, as of the Effective Date.

1.3   Primarius hereby accepts its appointment as a general partner of Lucky Henry as of the Effective Date, and agrees to act as a general partner, to become a party to the Agreement of Limited Partnership of Lucky Henry, and to assume all the obligations and responsibilities of a general partner pursuant to the Agreement of Limited Partnership of Lucky Henry.

1.4   As of the Effective Date, Primarius shall enter into an Amended and Restated Limited Partnership Agreement of Lucky Henry, in substantially the form attached hereto an Annex A (the "Amended and Restated Partnership Agreement"), with the limited partners of Lucky Henry as of the Effective Date (the "Lucky Henry Limited Partners"). Among other things, the Amended and Restated Partnership Agreement provides for the change of Lucky Henry's name to "Primarius Focus LP" and for an increase of the management fee rate payable to Lucky Henry's general partner with respect to certain limited partners. As of, and after, the Effective Date, Primarius shall, in its capacity as general partner of Lucky Henry, have such rights and obligations as are set forth in the Amended and Restated Partnership Agreement, as such document may be further amended from time to time.

1.5   As of the Effective Date, Lucky Henry shall adopt a new Private Offering Memorandum and related offering documentation in connection with the offering of its partnership interests, such

JAN-30-2004  16:43        JAY CAPITAL                           9136428661    P.06/15

documentation to replace the Offering Circular and related documentation that were utilized by Lucky Henry prior to the Effective Date. The new Private Offering Memorandum and related offering documentation shall be in substantially the form attached hereto as Annex B (the "New Lucky Henry Offering Documents"). It is understood and agreed by the parties hereto that Primarius may from time to time in its discretion, as general partner of Lucky Henry, effect any and all amendments and/or modifications to the New Lucky Henry Offering Documents and other documentation pertaining to Lucky Henry as it deems appropriate, in accordance with the terms of the New Lucky Henry Offering Documents and such other documentation.

1.7   As of the Effective Date, Primarius and Jayhawk will enter into one or more consulting agreements in substantially the form attached hereto as Annex C, pursuant to which each party may identify and/or introduce prospective advisory clients to the other party, subject to applicable laws, rules and regulations.

1.8   Within one month after the Effective Date, each of Lin and Darlet Lin (his spouse) will invest at least fifty thousand dollars ($50,000) in Lucky Henry (such investments to be made as limited partner investments or through Primarius, in the discretion of Lin and Darlet Lin).

1.9   Primarius agrees that except as may be required by law, Primarius will not, in its capacity as general partner of Lucky Henry, cause Lucky Henry to acquire or dispose of any securities of LSB Industries (LSBD and LSBDP) prior to the end of October, 2003 without the prior written consent of Jayhawk.

**Section 2.   Issuance of Membership Interests by Primarius to Jayhawk and Jayhawk Investments.**

2.1   As of the Effective Date, Primarius shall admit Jayhawk as a member of Primarius, with the right to receive, or have allocated to its capital account, as appropriate, five percent (5%) of the Gross Fees (as defined below) of Primarius (such right shall hereinafter be referred to as the "Preferred Return"). As used herein, the term "Gross Fees" shall mean, with respect to a specified period, (i) the gross management fees and incentive compensation received by Primarius from Lucky Henry, Primarius Partners, and any other investment funds or separate accounts managed by Primarius during such period, reduced by (ii) all marketing fees, consulting fees, finder's fees and any similar fees paid or incurred (as long as the incurred fees are not waived) by Primarius during such period to third parties. It is understood and agreed by the parties that, in calculating the Gross Fees for a period, effect shall be given to any reductions, waivers, deferrals, suspensions or other modifications of management fees and/or incentive compensation granted by Jayhawk (while it was the general partner of Lucky Henry), Primarius and/or Lucky Henry to limited partners of Lucky Henry. For example, if Primarius determines, in its discretion, to waive the management fees otherwise payable by a limited partner of Lucky Henry with respect to a calendar quarter, then such waived management fees shall not be included in the Gross Fees for such period. The admission of Jayhawk as a member of Primarius shall be subject to Jayhawk entering into an Amended and Restated Operating Agreement of Primarius, in substantially the form attached hereto an Annex D (the "Amended and Restated Primarius Operating Agreement").

2.2   As of the Effective Date, Primarius shall admit Jayhawk Investments as a member of Primarius, on the same terms, and subject to the same conditions, as Jayhawk shall be admitted as a member of Primarius. The admission of Jayhawk Investments as a member of Primarius shall be subject to Jayhawk Investments entering into the Amended and Restated Primarius Operating Agreement.

2.3   During the three-year period immediately following the Effective Date: (i) neither Jayhawk nor Jayhawk Investments will be permitted to effect a withdrawal of capital from Lucky Henry if such withdrawal would result in the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments (after giving effect to any such withdrawal) being less than three million dollars ($3,000,000) (the "Threshold Amount"); and (ii) neither Jayhawk nor Jayhawk Investments will be permitted to effect a

withdrawal of capital from Lucky Henry at any time that the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments (before giving effect to any such withdrawal) is less than the Threshold Amount. Any withdrawals of capital by Jayhawk or Jayhawk Investment shall otherwise be made in accordance with the terms of the Amended and Restated Partnership Agreement. TO DISCUSS ISSUE REGARDING REDUCTION IN THRESHOLD AMOUNT.

2.4   Each of Jayhawk and Jayhawk Investments shall have the right to remain a member of Primarius until the earliest to occur of the following: (i) the dissolution of Primarius in accordance with the terms of the Amended and Restated Primarius Operating Agreement; (ii) such time as Jayhawk and its affiliates shall cease to be limited partners of Lucky Henry; and (iii) such time as Jayhawk shall withdraw as a member of Primarius on a voluntary basis in accordance with the terms of the Amended and Restated Primarius Operating Agreement. In the case of clauses (i) and (ii) above, Jayhawk and Jayhawk Investments shall cease to be members of Primarius as of the date of the specified event and all rights to the Preferred Return shall terminate as of such date.

2.5   If, immediately after any withdrawal of capital by Jayhawk or Jayhawk Investments from Lucky Henry, the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments in Lucky Henry is less than the Threshold Amount, then the Preferred Return for the period in which the withdrawal is made and for future periods (subject to any further adjustments in the Preferred Return pursuant to this Section 2.5) shall be reduced in proportion to the amount by which the aggregate net asset value of such capital accounts is less than the Threshold Amount. For example, if the aggregate net asset value of the capital accounts of Jayhawk and Jayhawk Investments after any such withdrawal is $1,800,000 (i.e. 60% of the Threshold Amount ($3,000,000)), then the Preferred Return for such period and for future periods shall be reduced to 3% (i.e., 60% of 5%). Any adjustment to the Preferred Return will be rounded to the nearest thousandth of a percent. This Section 2.5 will serve to reduce the Preferred Return each time a withdrawal of capital is made that satisfies the conditions expressed in the previous sentence. Any reduction in the Preferred Return as a result of a withdrawal of capital by Jayhawk or Jayhawk Investments may be reversed by a subsequent capital contribution by Jayhawk or Jayhawk Investments in Lucky Henry in an amount equal to such previous withdrawal (i.e., in the event of such a capital contribution, the Preferred Return will be increased by an amount equal to the previous reduction, provided that the resulting Preferred Return does not exceed five percent (5%)); *provided, however*, that this provision shall cease to have any force or effect as of such date, if any, as Jayhawk and Jayhawk Investments cease to be members of Primarius.

2.6   As members of Primarius, each of Jayhawk and Jayhawk Investments shall be entitled to voting rights equivalent to the then current Preferred Return. For example, if the Preferred Return is five percent (5%), then the Voting Ratio (as such term is defined in the Amended and Restated Primarius Operating Agreement) shall be five percent (5%) for each of Jayhawk and Jayhawk Investments.

2.7   Each of Jayhawk and Jayhawk Investments may transfer its membership interest in Primarius to McCarthy or an affiliate of McCarthy without the consent of Primarius or Lin; *provided, however*, that any such transfer will be subject to McCarthy or an affiliate of McCarthy, as applicable, entering into the Amended and Restated Primarius Operating Agreement.

2.8   If after the Effective Date, Lucky Henry is subject to any capital call or equivalent obligation to MediMart Pharmacy, LLC (also known as Star Mart) and/or Star Holdings, LCC, Jayhawk and/or Jayhawk Investments will advance to Lucky Henry the funds required to satisfy any such capital call or equivalent obligation or, alternatively, promptly reimburse Lucky Henry if Lucky Henry has satisfied such capital call or equivalent obligations with its own funds.

Section 3.   **Transaction Fees and Expenses; Management Fees and Incentive Allocations.**

3.1   All expenses incurred in connection with Lucky Henry on or prior to the Effective Date which are not required to be borne by Lucky Henry pursuant to its Agreement of Limited Partnership, will

- 4 -

be borne by Jayhawk. All expenses incurred in connection with Lucky Henry after the Effective Date which are not required to be borne by Lucky Henry pursuant to the Amended and Restated Partnership Agreement will be borne by Primarius.

3.2   All fees and expenses (including but not limited to legal fees) incurred by the parties in connection with this Agreement and the transactions contemplated by this Agreement shall be borne by Lucky Henry.

3.3   On and after the Effective Date for so long as Jayhawk and/or Jayhawk Investments shall remain a member of Primarius, Primarius will waive any management fees and incentive allocations payable by the Lucky Henry Limited Partners and/or Jayhawk as limited partners of Lucky Henry, such waiver to apply to initial capital contributions and additional capital contributions and allocations; *provided, however*, that Primarius may charge management fees to the Lucky Henry Limited Partners with respect to periods occurring after the earlier to occur of the following: (i) the expiration of a period of one (1) year after the Effective Date; and (ii) such time as the total assets under the management of Primarius (including but not limited to the assets in Lucky Henry and Primarius Partners) equal or exceed twenty million dollars ($20,000,000).

3.4   On and after the Effective Date for so long as Jayhawk shall remain a member of Primarius, Primarius will waive any incentive allocations payable by Jayhawk Investments with respect to that portion of Jayhawk Investments' capital account in Primarius Partners attributable to the $500,000 additional capital contribution made by Jayhawk Investments on or about May 1, 2003.

**Section 4.   Representations and Warranties of Jayhawk.**

Jayhawk represents and warrants as follows:

4.1   Lucky Henry is a limited partnership duly organized, validly existing and in good standing under the laws of the State of Delaware. Jayhawk is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.

4.2   Each of Lucky Henry and Jayhawk has all requisite power and authority to execute and deliver this Agreement and the other agreements, documents and instruments to be executed and delivered by it in connection herewith, to consummate the transactions contemplated hereby and thereby and to perform its obligations hereunder and thereunder.

4.3   No authorization, approval or consent of, or notice to or filing or registration with, any governmental agency or body, or any other third party, is required in connection with the execution and delivery by Lucky Henry and Jayhawk of this Agreement and the other agreements, documents and instruments to be executed by Lucky Henry and Jayhawk in connection herewith, the consummation by Lucky Henry and Jayhawk of the transactions contemplated hereby or thereby or the performance by Lucky Henry and Jayhawk of their respective obligations hereunder and thereunder.

4.4   This Agreement and the other agreements, documents and instruments to be executed and delivered by Lucky Henry and Jayhawk in connection herewith, and the consummation by Lucky Henry and Jayhawk of the transactions contemplated hereby and thereby, have been duly and validly authorized, executed and delivered by all necessary corporate or other action on the part of Lucky Henry and Jayhawk and this Agreement constitutes, and the other agreements, documents and instruments to be executed and delivered by Lucky Henry and Jayhawk in connection herewith, when executed and delivered by Lucky Henry and Jayhawk, shall constitute the legal, valid and binding obligations of Lucky Henry and Jayhawk, enforceable against them in accordance with their respective terms, except to the extent that enforceability may be limited by bankruptcy, insolvency and other similar laws affecting the enforcement of creditors' rights generally.

4.5     There are no actions, suits, claims, investigations or legal or administrative or arbitration proceedings pending or, to the knowledge of Jayhawk, threatened or probable of assertion against Lucky Henry or Jayhawk relating to this Agreement or the transactions contemplated hereby before any court, governmental or administrative agency or other body, and no judgment, order, writ, injunction, decree or other similar command of any court or governmental or administrative agency or other body has been entered against or served upon Lucky Henry or Jayhawk relating to this Agreement or the transactions contemplated hereby.

4.6     The execution and delivery by Lucky Henry and Jayhawk of this Agreement and the other agreements, documents and instruments to be executed and delivered by them in connection herewith, the consummation by them of the transactions contemplated hereby and thereby and the performance by them of their respective obligations hereunder and thereunder do not and will not (a) conflict with or violate any of the terms of the Certificate of Limited Partnership or Agreement of Limited Partnership of Lucky Henry or the Certificate of Formation and Operating Agreement of Jayhawk, (b) violate or conflict with any domestic law, ordinance, rule or regulation, or any judgment, order, writ, injunction or decree of any court, administrative or governmental agency or other body, material to Lucky Henry or Jayhawk, or (c) require any authorizations, approvals or consents of, or any notices to or filings or registrations with, any governmental agency or body, or any other third party, applicable to the Lucky Henry or Jayhawk or any of their respective properties or assets.

4.7     The offering and sale of the partnership interests of Lucky Henry has, prior to the Effective Date, complied with all applicable provisions of Securities and Exchange Commission ("SEC") Regulation D promulgated under the Securities Act of 1933, as amended. Without limiting the foregoing, the Offering Circular of Lucky Henry, a copy of which has been provided to Primarius, complies with applicable law and does not contain any misstatement of a material fact or omit to state any material fact necessary to make the statements made therein not misleading.

4.8     Jayhawk is registered as an investment adviser in the State of Kansas.

4.9     Lucky Henry possesses all material consents, approvals, orders, certificates, authorizations and permits issued by, and has made all declarations and filings with, all appropriate federal, state or foreign governmental or self-regulatory authorities and all courts and other tribunals necessary to conduct its business in the manner described in its Offering Circular. Neither Jayhawk nor Lucky Henry is charged with and, to the knowledge of Jayhawk, neither Jayhawk nor Lucky Henry is under investigation, review or evaluation with respect to any violation of any laws, rules or regulations, nor is Jayhawk or Lucky Henry the subject of any pending or threatened adverse proceedings by any regulatory authority having jurisdiction over their respective operations.

4.10    Jayhawk (i) is not subject to an order of the SEC issued under Section 203(f) of the Investment Advisers Act of 1940, as amended (the "Advisors Act"); (ii) has not been convicted within ten years of the date hereof of any felony or misdemeanor involving conduct described in Section 203(e)(2)(A)-(D) of the Advisers Act; (iii) has not been found by the SEC to have engaged, and has not been convicted of engaging, in any of the conduct specified in paragraph (1), (5) or (6) of Section 203(e) of the Advisers Act; and (iv) is not subject to an order, judgment or decree described in Section 203(e) of the Advisers Act.

4.11    Attached hereto as Annex E is: (i) an unaudited balance sheet of Lucky Henry as of April 30, 2003; (ii) an unaudited balance sheet of Lucky Henry as of April 30, 2003; (iii) an unaudited statement of income of Lucky Henry for the period from April, 2002 to April 30, 2003; (iv) a list of all securities and other instruments and investments beneficially owned by Lucky Henry as of May 31, 2003. Each of the documents referred to in this Section 4.11 was true, accurate and complete as of the date with respect to which it was prepared and represented the financial condition of Lucky Henry as of the date with respect to which it was prepared. No material liabilities have been incurred by Lucky Henry prior to the Effective Date which are not reflected in the unaudited balance sheet of Lucky Henry as of May 31, 2003. Since April 30, 2003 there has been no material change in the financial condition of Lucky Henry.

Section 5.   Representations and Warranties of Primarius.

Primarius represents and warrants as follows:

5.1   Primarius is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.

5.2   Primarius has all requisite power and authority to execute and deliver this Agreement and the other agreements, documents and instruments to be executed and delivered by it in connection herewith, to consummate the transactions contemplated hereby and thereby and to perform its obligations hereunder and thereunder.

5.3   No authorization, approval or consent of, or notice to or filing or registration with, any governmental agency or body, or any other third party, is required in connection with the execution and delivery by Primarius of this Agreement and the other agreements, documents and instruments to be executed by Primarius in connection herewith, the consummation by Primarius of the transactions contemplated hereby or thereby or the performance by Primarius of its obligations hereunder and thereunder.

5.4   This Agreement and the other agreements, documents and instruments to be executed and delivered by Primarius in connection herewith, and the consummation by Primarius of the transactions contemplated hereby and thereby, have been duly and validly authorized, executed and delivered by all necessary corporate or other action on the part of Primarius and this Agreement constitutes, and the other agreements, documents and instruments to be executed and delivered by Primarius in connection herewith, when executed and delivered by Primarius, shall constitute the legal, valid and binding obligations of Primarius, enforceable against Primarius in accordance with their respective terms, except to the extent that enforceability may be limited by bankruptcy, insolvency and other similar laws affecting the enforcement of creditors' rights generally.

5.5   There are no actions, suits, claims, investigations or legal or administrative or arbitration proceedings pending or, to the knowledge of Primarius, threatened or probable of assertion against Primarius relating to this Agreement or the transactions contemplated hereby before any court, governmental or administrative agency or other body, and no judgment, order, writ, injunction, decree or other similar command of any court or governmental or administrative agency or other body has been entered against or served upon the Primarius relating to this Agreement or the transactions contemplated hereby.

5.6   The execution and delivery by Primarius of this Agreement and the other agreements, documents and instruments to be executed and delivered by them in connection herewith, the consummation by them of the transactions contemplated hereby and thereby and the performance by them of their respective obligations hereunder and thereunder do not and will not (i) conflict with or violate any of the terms of the Certificate of Formation and Operating Agreement of Primarius, (ii) violate or conflict with any domestic law, ordinance, rule or regulation, or any judgment, order, writ, injunction or decree of any court, administrative or governmental agency or other body, material to Primarius, or (iii) require any authorizations, approvals or consents of, or any notices to or filings or registrations with, any governmental agency or body, or any other third party, applicable to Primarius or any of its properties or assets.

5.7   Primarius is registered as an investment adviser in the State of California.

5.8   Primarius possesses all material consents, approvals, orders, certificates, authorizations and permits issued by, and has made all declarations and filings with, all appropriate federal, state or foreign governmental or self-regulatory authorities and all courts and other tribunals necessary to conduct its business. Primarius is not charged with and, to the knowledge of Primarius, is not under investigation,