# FEE SHARING AGREEMENT

This Fee Sharing Agreement (the "Agreement") is entered into as of September 15, 2003 between Primarius Capital Management, LLC ("Primarius Capital"), The Primarius China Fund ("New China Fund"), Jayhawk China Fund (Cayman), Ltd ("Jayhawk"), and Jayhawk Capital Management, LLC ("Jayhawk Capital").

**WHEREAS**, pursuant to an agreement between the Primarius Capital and the New China (the "Investment Management Agreement"), Primarius Capital is the Investment Manager of The New China Fund (the "Fund"), and,

**WHEREAS** Jayhawk, managed by Jayhawk Capital, wishes to provide seed capital for the Fund by making an investment as a shareholder therein, in exchange for the right to share in the management fee and performance fee allocations payable to Primarius Capital pursuant to the Investment Management Agreement; and,

**WHEREAS** Primarius Capital and Jayhawk acknowledge that to accomplish the goals sought by each there is a need to establish a new fund that will be taxed as a US Partnership (referred to hereinafter as the "Fund"); and,

NOW THEREFORE, the parties agree as follows:

Section 1.    **Capital Contributions to the Funds**

As a condition precedent to Jayhawk's obligation to make any capital contribution pursuant to the terms of the Agreement, the structure of the Fund must be such that US investors placing an investment with the Fund will not be placing it with a PFIC (Passive Foreign Investment Company). The Initial Capital Contribution will be placed in the Fund, which entity will not be treated as a PFIC for US investors.

Jayhawk shall make an initial capital contribution to the New Fund as a shareholder of the New Fund in the amount of US$10,000,000 on or before September 15, 2003 (the "Initial Capital Contribution"). The Fund will issue shares of the Fund to Jayhawk commensurate with the Net Asset Value per Share (calculated at the end of business on the last preceding business day) of New Fund. All costs and/or fees otherwise chargeable with the Initial Capital Contribution are waived.

At Jayhawk's option Jayhawk may contribute capital up to an additional US$100,000,000 under the same terms as are applicable to the Initial Capital Contribution and as set forth in Section 2 below. If Jayhawk exercises this option, the additional funds contributed will not be subject to any lock-up provisions, with redemptions being conducted consistent with the terms of the Funds' initial contribution in Section 3.

Section 2.    **Costs and Fees as to the Initial Capital Contribution**

As to any capital contributions made by Jayhawk pursuant to this agreement, management fees will be 1.0%. Performance, placing, subscription, structural, organizational and redemption/exit fees, costs and/or expenses are waived. Any other fees, costs and/or expenses otherwise chargeable are also waived.

Section 3.   Lock-up/Redemption of the Capital Contribution

Absent a dissolution or liquidation of the Funds, whether voluntary or involuntary, or until such time that Primarius Capital and/or Patrick Lin discontinues his active involvement in the management of the Funds, Jayhawk waives its rights to redemption of the Initial Capital Contribution until December 31, 2004 (the "Initial Lock-up Period"). During the Initial Lock-up Period, consistent with the terms of the Fund's documents, Jayhawk may redeem shares equivalent to the amount of appreciation of the Initial Capital Contribution with 60 (sixty) days notice. Redemptions may be met with cash or in-kind. Should the Net Asset Value of the New Fund shares depreciate, whether before or after Jayhawk has redeemed shares, Jayhawk has no obligation to make any further contribution to the New Fund.

Section 4.   Compensation to Jayhawk

A.   Management Fees

In consideration for the Initial Capital Contribution at the end of each quarter, Primarius Capital shall allocate to Jayhawk ten percent (10.0%) of the net management fees paid and/or payable to Primarius Capital from the Funds and/or its shareholders for the year just concluded. Allocations are reflected at the time earned but final allocation balance is due by the completion of the audit of the previous year. At such time that the allocation of Management Fees becomes a signification portion of Jayhawk's income, allocations will occur on a quarterly basis or another mutually agreeable frequency. If the Initial Capital Contribution is placed by September 15, 2003, the first allocation will be reflected on January 1, 2004 and the amount finalized at the completion of the 2003 audit, and will be net management fees paid and/or payable to Primarius Capital from the Fund and/or its shareholders for the Year ending December 31, 2003. For purposes of these payments, net management fees shall mean all management fees paid and/or payable to Primarius Capital from the Funds and/or its shareholders except for those fees attributable to the Jayhawk Capital Contribution and any other shares owned by Jayhawk. "Net" management fee also includes deducting fees payable to other third party marketers and direct Primarius China related expenses. At Jayhawk's election, the management fees due it are to be reinvested in the Fund by way of an allocation of additional shares based upon the correlating Net Asset Value of the Fund's shares. These shares are not subject to any lock up period and may be redeemed at any time.

B.   Performance Fees

In consideration for the Initial Capital Contribution at the end of each fiscal year, Primarius Capital shall allocate to Jayhawk ten percent (10.0%) of the net performance fees, paid and/or payable to Primarius Capital from the Fund and/or its shareholders. Allocation will be reflected on January 1st of the following year and the amount finalized at the completion of the audit of the previous year. At

Jayhawk's election, the performance fees due it are to be reinvested in the Fund by way of an allocation of additional shares based upon the correlating fiscal year-end Net Asset Value of the Fund's shares. These shares are not subject to any lock up and may be redeemed at any time.

The Management Fees and Performance Fees noted above payable to Jayhawk shall be paid for the life of the Fund.

### C. Reporting

By the 5th of every month, Primarius Capital will strive to provide Jayhawk financial statements, in form and content acceptable to Jayhawk noting all fees paid. By March 15 of each year, Primarius Capital will strive to provide to Jayhawk an audited financial statement, in form and content acceptable to Jayhawk's auditors, noting all fees paid to Jayhawk pursuant to this agreement in the prior year. If the time tables are not able to be met Primarius Capital will provide (as accurate as possible) estimates based on the current knowledge. Parimarius Capital will also keep Jayhawk informed on the status and the expected time of completion of the required reports

The Funds will at all times, including the date upon which the Initial Capital Contribution is placed, have a Custodian or Prime Broker that can, on a daily basis, provide complete and accurate information regarding the Funds' portfolio. Jayhawk will have direct access to this information, and will be entitled to access this information on a daily basis. The obligations set forth in this paragraph will be terminated upon the occurrence that the Initial Capital Contribution are fully redeemed and there are no investors in the Funds.

### Section 5.  Management of Funds

As set forth in Section 1 above, as a condition precedent to Jayhawk's obligation to make the Initial Capital Contribution the structure of the Fund must be a structure that would not be seen as a Passive Foreign Investment Company ("PFIC") for US investors. Concurrently the structure of the Fund, the Fund's documents will be written to (a) authorize taking "short" positions with securities in addition to "long" positions, (b) performance fees is twenty percent (20.0%) and (c) accept contributions in securities as well as cash.

As such, Primarius Capital acknowledges that Patrick Lin, its major shareholder and manager, shall at all times, commencing with September 15, 2003, have a significant portion of his net worth invested in the Fund.

As pertaining to the Fund, Kent C. McCarthy of Jayhawk Capital will, without designation as investment advisor or additional compensation, provide investment advice and consultation to Primarius Capital. Primarius Capital and the Funds are entitled to tell third parties, and, with prior written approval, include in literature regarding the Funds, that Jayhawk is a significant shareholder in the Fund and that Kent C. McCarthy and Jayhawk Capital have a participatory role in the Funds' investment strategy as a consultant/analyst. Prior to any such representation being made or published in written form, it must be submitted to Jayhawk Capital for written approval.

Section 6.    Indemnification

Aside from any obligations and responsibilities owed proportionately by all shareholders in the Fund, Jayhawk has no obligation or responsibility for the liabilities of the Funds or Primarius Capital. Further, the Funds and Primarius Capital agree to indemnify and hold harmless Jayhawk, Jayhawk Capital and Kent C. McCarthy for any claim made against them, individually or jointly, by third parties and/or shareholders of the Funds for acts or omissions related to the Fund.

Section 7.    Miscellaneous

A.    Entire Agreement

This agreement constitutes the entire agreement among the parties with respect to the subject matter herein, supersedes all prior agreements, communications and understanding among the parties with respect thereto, whether written or oral, and no party shall be liable or bound to any other party in any manner by any promises, conditions, warranties, representations or covenants as specifically set forth herein.

B.    Choice of Law; Severability

This agreement shall be governed by and construed and interpreted in accordance with the laws of the State of Kansas. If one or more provisions of this agreement are held to be unenforceable under the laws of the State of Kansas, such provision or provisions shall be governed under the laws in the State of California as interpreted by the courts in the State of Kansas (or other mutually agreeable location). If the courts in the State of Kansas cannot or will not so interpret the provision or provisions, the provision or provisions shall be excluded from this agreement and the balance of the agreement shall be interpreted as if such provision or provisions were so excluded and shall be enforceable in accordance with its terms.

Arbitration

Any dispute arising out of or relating to this agreement shall be finally settled by arbitration conducted expeditiously in accordance with the then current rules for arbitration of Commercial Disputes promulgated by the American Arbitration Association by a sole arbitrator. Within 30 days of written notice from the other party requesting it to do so, a party must provide the requesting party with the name of its choice for the arbitrator. If either party refuses or neglects to provide the name of its choice for arbitrator within these time frames, then the other party shall select the arbitrator. If the choice of the requesting party is unacceptable to the other party, it must decline such choice within 15 days and the selection of the arbitrator shall be made by the drawing of lots. Any court having jurisdiction of the parties may enter judgment on the award rendered by the arbitrator and conduct proceedings to enforce the judgment. The place of the arbitration shall be Johnson County, Kansas, (or other mutually agreeable location) the language shall be English and the arbitrator shall be from the United States. The arbitrator shall have the authority to determine which party bears the cost of the arbitration including the fees charged by the arbitrator during the arbitration. The arbitrator shall determine any and all questions concerning the arbitrability of the dispute. Subject to the express

provisions of this agreement, the arbitrator is empowered to order specific enforcement, award attorney's fees and damages in excess of compensatory damages, and shall award the costs of the arbitration, including but not limited to the arbitrator's fees, to the prevailing party.

Notices

Unless otherwise provided, any notice required or permitted under this agreement shall be given in writing and shall be deemed effectively given upon personal delivery to the party to be notified by hand or professional courier service or five days after deposit with the United States Post Office, by registered or certified mail, postage prepaid, and addressed as follows:

    If to Primarius Capital at:
    Attention: Patrick Lin/Peter Yee
    Primarius Capital Management
    101 California Street
Suite 4010
San Francisco, California
94111

If to Jayhawk or Jayhawk Capital at:
    Attention: Kent C. McCarthy/Marcey M. Berges
Jayhawk Capital Management, L.L.C.
8201 Mission Road
Suite 110
Prairie Village, Kansas
66208

Amendments and Waivers

No term of this agreement may be amended or modified nor may the observance of any term of this agreement be waived (either generally or in a particular instance and either retroactively), except pursuant to the written consent of each party.

Attorney Fees

If any action at law or in equity is necessary to enforce or interpret the terms of this agreement or any other agreement or document to be executed or delivered pursuant hereto, the prevailing party shall be entitled to reasonable attorneys' fees, costs, and disbursements in addition to any other relief to which such party may be entitled.

Remedies

In case any one or more of the covenants and/or agreements set forth in this agreement shall have been breached by any party hereto, the party entitled to the benefit of such covenants or agreements may proceed to protect and enforce its rights either by suit in equity and/or by action at law, including

but not limited to, an action for damages as a result of any such breach and/or an action for specific performance of any such covenant or agreement contained in this agreement. The rights, powers and remedies of the parties under this agreement are cumulative and not exclusive of any other right, power or remedy which such parties may have under any other agreement or under applicable law. No failure to exercise, and no delay in exercising, any right, power or remedy hereunder, shall operate as a waiver thereof, nor shall any single or partial assertion or exercise of any right, power or remedy of a party hereunder preclude or require any other or further assertion or exercise thereof.
Representations and Assignment

Primarius Capital represents that it has the exclusive rights to payment from the Fund of all management fees and performance fees payable for the management of the New Funds being established to work with the Fund in a master-feeder fund structure. Further it represents that it will not voluntarily transfer, relinquish or assign these rights. Further, neither this agreement nor any rights or obligations hereunder may be assigned or delegated by either party without the prior written consent of the other party, and any attempt to do so shall be invalid and of no force and effect.

Construction

The parties acknowledge and agree that the agreement has been drafted with combined input and consent from all parties such that no term or provisions is to be construed against either party based upon the contention that the party was the drafter of the term, condition or agreement. Further, all terms and conditions are understood, and the agreement has been signed only after review by, and consultation with, counsel retained by each party on its own behalf.

Signature

This agreement may be signed in counter-parts. Copies and/or facsimiles of signatures to this agreement are to be treated as original signatures.

IN WITNESS WHEREFORE, the parties have executed this agreement as of September 1, 2003.

Management lIMITED

by:_____
    Patrick Lin, Manager

China Fund LIMITED

by:_____
    Patrick Lin, Manager

JAYHAWK CHINA FUND (CAYMAN) LTD.

By:_____
      Kent C. McCarthy, Managing Member
of Jayhawk Capital Management, L.L.C.,
Manager

JAYHAWK CAPITAL MANAGEMENT, LLC.

By:_____
      Kent C. McCarthy, Managing Member