1  Eliot A. Adelson, Bar No. 205284
   eadelson@kirkland.com
2  KIRKLAND & ELLIS LLP
   555 California Street
3  San Francisco, CA 94104
   Telephone:     415 439-1400
4  Facsimile:     415 439-1500

5  John F. Hartmann, P.C. (admitted *pro hac vice*)
   Matthew M. Wawrzyn (admitted *pro hac vice*)
6  Andrew P. Young (admitted *pro hac vice*)
   KIRKLAND & ELLIS LLP
7  200 East Randolph Drive
   Chicago, IL 60601
8  Telephone:     (312) 861-2000
   Facsimile:     (312) 861-2200

9

   *Attorneys for Jayhawk China Fund (Cayman), Ltd.,*
10 *Jayhawk Capital Management, L.L.C., Jayhawk*
   *Investments, L.P. Jayhawk Institutional Partners, L.P.*
11 *and Kent C. McCarthy*

12
                    UNITED STATES DISTRICT COURT
13
                    NORTHERN DISTRICT OF CALIFORNIA
14
                              OAKLAND DIVISION
15

16
   PRIMARIUS CAPITAL, LLC;                    Case No. C 07-01804-CW
17 PRIMARIUS CHINA FUND, LP;
   PRIMARIUS FOCUS, LP; PRIMARIUS             **DEFENDANTS' NOTICE OF MOTION**
18 PARTNERS, LP; and PRIMARIUS                **AND MOTION FOR STAY AND TO**
   OFFSHORE PARTNERS LTD.,                    **COMPEL ARBITRATION;**
19                                            **MEMORANDUM IN SUPPORT**
                   Plaintiffs,                **OF MOTION FOR STAY AND**
20                                            **TO COMPEL ARBITRATION**
   v.
21                                            Date:        Nov. 1, 2007
   JAYHAWK CAPITAL MANAGEMENT,                Time:        2:00 p.m.
22 LLC; JAYHAWK CHINA FUND                    Courtroom:   2, 4th Floor
   (CAYMUN), LTD.; JAYHAWK                    Judge:       Hon. Claudia Wilken
23 INVESTMENTS, LP; JAYHAWK
   INSTITUTIONAL PARTNERS, LP;
24 KENT C. MCCARTHY AND DOES 1
   through 100, inclusive,
25
                   Defendants.
26

27

28

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

NOTICE OF MOTION FOR STAY AND TO COMPEL ARBITRATION ................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
    FOR STAY AND TO COMPEL ARBITRATION ................................................................ 2

ALLEGED FACTS ........................................................................................................................ 3

    The Parties ......................................................................................................................... 3
    The Management Transfer Agreement .............................................................................. 3
    The Fee Sharing Agreement ............................................................................................... 4
    Plaintiffs' Amended Complaint ......................................................................................... 5

ARGUMENT ................................................................................................................................. 6

I.    THE COURT SHOULD COMPEL ARBITRATION BECAUSE EACH OF
    PLAINTIFFS' CLAIMS FALLS WITHIN ONE OR BOTH OF THE BROAD
    ARBITRATION CLAUSES ............................................................................................. 6

        1.    Federal Securities Claims (Am. Compl. ¶¶ 194 - 200) ............................... 7

        2.    State Statutory and Common Law Fraud Claims (Am. Compl.
            ¶¶ 201 - 205, 212 -214) ................................................................................ 8

        3.    Breach of Fiduciary Duty and Breach of Contract (Am. Compl.
            ¶¶ 203-211) .................................................................................................. 8

        4.    Civil Conspiracy (Am. Compl. ¶¶ 215-216) ............................................... 9

        5.    Declaratory Relief (Am. Compl. ¶¶ 194-221) ............................................. 9

II.    THIS COURT SHOULD STAY THESE PROCEEDINGS PENDING
     ARBITRATION. ............................................................................................................... 9

CONCLUSION ............................................................................................................................ 10

CERTIFICATE OF SERVICE ..................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AT &T Techs., Inc. v. Commc'n Workers of Am.*,
    475 U.S. 643 (1986) .................................................................................................... 6

*Leicht v. Bateman Eichler, Hill Richards, Inc.*,
    848 F.2d 130 (9th Cir. 1988) ........................................................................................ 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................................................... 6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) .................................................................................................... 6

*Shearson/Am. Exp., Inc. v. McMahon*,
    482 U.S. 220 (1987) .................................................................................................... 7

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) .................................................................................. 6, 7

*Three Valleys Muni. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991) ...................................................................................... 7

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960) .................................................................................................... 6

**Statutes**

9 U.S.C. § 2 .......................................................................................................................... 6

9 U.S.C. § 3 ........................................................................................................................ 10

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 .................................................................. 6

## NOTICE OF MOTION FOR STAY AND TO COMPEL ARBITRATION

TO PLAINTIFF AND ITS ATTORNEY OF RECORD:

NOTICE IS HEREBY GIVEN THAT ON Nov. 1, 2007 at 2:00 p.m., or as soon thereafter as counsel may be heard by the above-entitled court, located at 1301 Clay Street, Oakland, California, 94612, in the courtroom of Hon. Claudia Wilkin, Courtroom 2, 4th Floor, Defendants will and hereby does move the Court pursuant to Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure for an Order for Staying This Action and Compelling Arbitration of Plaintiffs' Claims. This motion is brought on the grounds that all causes of action have a significant relationship to or have their origin or genesis in contracts that contain broad arbitration clauses.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities filed herewith, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: August 15, 2007

                */s Eliot A. Adelson*
                Eliot A. Adelson
                Kirkland & Ellis
                555 California Street, 27th Floor
                San Francisco, CA 94104
                Telephone: (415) 439-1400
                Facsimile: (415) 439-1500
                eadelson@kirkland.com

                */s John F. Hartmann, P.C.*
                John F. Hartmann, P.C.
                Matthew Wawrzyn
                Andrew P. Young
                KIRKLAND & ELLIS LLP
                200 East Randolph Drive
                Chicago, IL 60601
                Telephone: (312) 861-2000
                Facsimile: (312) 861-2200
                jhartmann@kirkland.com

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR STAY AND TO COMPEL ARBITRATION

This case should not be in federal court. It should be in arbitration.

Plaintiffs in this case are four hedge funds and their general partner. Defendants are three hedge funds, their general partner, and their principal. Certain of the plaintiffs hold contracts with certain of the defendants. In this action, plaintiffs allege that defendants breached legal obligations arising out of those contracts and, based on those allegations, assert eight causes of action against defendants.

Notably, the two contracts upon which plaintiffs ground their claims against defendants contain broad arbitration clauses. One, the "Management Transfer Agreement," provides that "any action, dispute, claim or controversy . . . in any way arising out of, pertaining to or in connection with this Agreement or any related agreement, document or instrument . . . or any transaction contemplated hereby or thereby, or any aspect of the past or present relationship of the parties hereto . . . shall be resolved by mandatory and binding arbitration . . . ." The other, the "Fee Sharing Agreement," provides that "[a]ny dispute arising out of or relating to this agreement shall be finally settled by arbitration . . . ." Intentionally or otherwise, plaintiffs ignore these arbitration clauses in their complaint.

These broad arbitration clauses plainly encompass plaintiffs' claims in this action. Applicable federal statutory and case law make clear that where, as here, sophisticated parties have agreed on such broad arbitration clauses, all claims between the parties "having a significant relationship to the contract" or "having their origin or genesis in the contract" must be ordered to arbitration. Plaintiffs' eight causes of action pass one or both of these tests. Accordingly, defendants respectfully request that this Court enter an order staying and compelling arbitration of plaintiffs' claims.

**ALLEGED FACTS**

Although plaintiffs' amended complaint is voluminous, the facts relevant to this motion are not.

**The Parties**

Plaintiffs in this action are four hedge funds, Primarius China Fund LP ("Primarius China"), Primarius Partners LP ("Partners"), Primarius Focus LP ("Focus") and Primarius Offshore Partners LP ("Offshore Partners") (collectively, the "Primarius Funds"), and their general partner, Primarius Capital LLC ("Primarius"). (Am. Compl. ¶ 5.)

Defendants are three hedge funds, Jayhawk China (Cayman) Fund Ltd. ("Jayhawk China"), Jayhawk Investments, LP ("Jayhawk Investments"), and Jayhawk Institutional Partners, LP ("Jayhawk Institutional") (collectively, the "Jayhawk Funds"), their general partner, Jayhawk Capital Management, L.L.C. ("Jayhawk"), and their principal, Kent C. McCarthy.

**The Management Transfer Agreement**

As of June 1, 2003, Jayhawk, a Jayhawk-managed hedge fund called Lucky Henry, L.P., and Primarius entered into the Management Transfer Agreement. (Am. Compl. ¶ 27 (attaching agreement as Exhibit A).) Pursuant to that agreement, Jayhawk transferred management of the Lucky Henry fund to Primarius in exchange for membership interests in Primarius. (*Id.*, Ex. A at 2.)

Plaintiffs invoke the Management Transfer Agreement in their amended complaint. Indeed, plaintiffs allege that "[t]he Management Transfer Agreement was the first concrete step in the implementation of McCarthy's and the Jayhawk entities' scheme and conspiracy to turn the Primarius Funds to their own use." (*Id.* ¶ 27.) They claim that it imposed upon McCarthy an obligation to provide investment advice to the Primarius Funds. (Am. Compl. ¶ 28.) They also claim that it imposed fiduciary obligations on all of the defendants in favor of all of the plaintiffs. (*Id.* ¶ 31.) Plaintiffs claim that defendants breached these obligations and, on that basis, assert the causes of action set forth in the amended complaint.

Although one would not know it from the amended complaint, the Management Transfer Agreement contains a comprehensive arbitration clause. It provides:

> Notwithstanding any other provision of this Agreement or any Document (as defined below), any action, dispute, claim or controversy of any kind now existing or hereafter arising between or among any of the parties hereto in any way arising out of, pertaining to or in connection with this Agreement or any related agreement, document or instrument (collectively, the "Documents") or any transaction contemplated hereby or thereby, or any aspect of the past or present relationships of the parties hereto pursuant to this Agreement or any Document shall be resolved by mandatory and binding arbitration in San Francisco, California before a single arbitrator in accordance with the rules of the American Arbitration Association.

(Am. Compl., Ex. A § 9.4(b).)

### The Fee Sharing Agreement

As of September 15, 2003, Primarius, Primarius China, Jayhawk China, and Jayhawk entered into the Fee Sharing Agreement. (Am. Compl. ¶ 34 (attaching agreement as Exhibit B).) In the Fee Sharing Agreement, the parties agreed that Jayhawk China would make a $10 million "seed capital" investment in Primarius China in exchange for the right to share in certain management and performance fees payable by Primarius China to Primarius. (*Id.*, Ex. B at 1.) The Fee Sharing Agreement also set forth the terms pursuant to which Jayhawk China could redeem its $10 million seed capital investment, as well as any additional Primarius China investments it might make. (*Id.*, Ex. B §§ 1, 3).

Following the execution of the Fee Sharing Agreement, Jayhawk China made substantial additional investments in Primarius China. As the complaint acknowledges, as of May 15, 2006, Jayhawk China's two capital accounts in Primarius China had a combined balance of approximately $32.5 million. (Am. Compl. ¶ 39.) As of June 30, 2006, Jayhawk China's capital accounts in Primarius China had an aggregate value of approximately $29 million (*Id.* ¶ 172.) Thus, it is undisputed that Jayhawk China's investments in Primarius China comprised the lion's share of the latter's assets. According to the complaint, "[t]he capital accounts of Jayhawk China . . . constituted more than 80% of the aggregate value of

Primarius China." (*Id.* ¶ 174.) In fact, plaintiffs' own allegations show that it was more than 83%. (*See id.* ¶¶ 172-174.)

As with the Management Transfer Agreement plaintiffs' claims against defendants rest heavily on the Fee Sharing Agreement. For example, plaintiffs emphasize repeatedly that, under the Fee Sharing Agreement, Jayhawk and Jayhawk China obtained the right to complete, accurate, and daily information regarding Primarius China's portfolio and performance. (*Id.*, Ex. B § 4(C).) Similarly, plaintiffs emphasize the Fee Sharing Agreement's provision stating that McCarthy "will, without designation as investment advisor or additional compensation, provide investment advice and consultation to Primarius Capital." (*Id.*, Ex. B § 5.) Plaintiffs claim that defendants breached obligations arising out of both of these provisions. Thus, a central tenet of plaintiffs' complaint is that Jayhawk and Jayhawk China abused their right to "full transparency" by using information obtained from Primarius China to harm Primarius China. (*See, e.g.*, Am. Compl. ¶¶ 87, 158.) The other chief allegation of plaintiffs' complaint is that McCarthy's investment advice to Primarius China consisted of lies designed to benefit Jayhawk and the Jayhawk Funds at the expense of Primarius and Primarius Funds. (*See, e.g.*, Am. Compl. ¶10.) Thus, the gist of plaintiffs' complaint is the remarkable and nonsensical proposition that the Jayhawk defendants engaged in an elaborate, multi-year scheme to harm a fund that consisted primarily of Jayhawk China's own assets.

What plaintiffs neglect to emphasize, however, is that, like the Management Transfer Agreement, the Fee Sharing Agreement contains a broad arbitration clause, which provides in part as follows:

> Any dispute arising out of or relating to this agreement shall be finally settled by arbitration conducted expeditiously in accordance with the then current rules for arbitration of Commercial Disputes promulgated by the American Arbitration Association by a sole arbitrator.

(Am. Compl., Ex. B. § 7(C).)

**Plaintiffs' Amended Complaint**

As noted above, plaintiffs allege generally that defendants provided false investment

advice and abused their right to receive information regarding Primarius China's portfolio. (Am Compl. ¶ 10.) Based on these two general allegations, plaintiffs assert eight causes of action against the Jayhawk defendants and McCarthy: (1) Section 10(b) of the Exchange Act and Rule 10b-5; (2) Section 206 of the Investment Advisers Act; (3) Fraud; (4) Breach of Fiduciary Duty; (5) Breach of Contract; (6) California Unfair Business Practices Act; (7) Civil Conspiracy; and (8) Declaratory Relief. (Am Compl. ¶¶ 194-221.) All of these claims should be stayed in favor of arbitration.

## ARGUMENT

**I. THE COURT SHOULD COMPEL ARBITRATION BECAUSE EACH OF PLAINTIFFS' CLAIMS FALLS WITHIN ONE OR BOTH OF THE BROAD ARBITRATION CLAUSES.**

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), "embodies a clear federal policy in favor of arbitration" and "mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). Section 2 of the FAA provides in relevant part: "A written provision in any …contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As one court put it, the district court may deny arbitration only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582-83 (1960).

The presumption in favor of arbitration is particularly strong where, as here, the parties' arbitration clauses are written broadly to encompass all disputes "arising in connection with" or "relating to" the agreement. *AT &T Techs., Inc. v. Commc'n. Workers of Am.*, 475 U.S. 643, 650 (1986); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). In *Simula*,

1 for example, the Ninth Circuit held that an arbitration clause covering disputes "arising in
2 connection" with the contract reached "every dispute between the parties having a significant
3 relationship to the contract and all disputes having their origin or genesis in the contract."
4 175 F.3d at 721. Accordingly, the court held that the plaintiffs' Sherman Act, Lanham Act,
5 trade secret, breach-of-contract, and defamation claims against the defendants were
6 arbitrable, since all of the plaintiffs' claims related to the defendants' performance or non-
7 performance under the contract. *Id.* at 721-25.

8 The arbitration clauses at issue here are just as broad as the arbitration clause at issue
9 in *Simula*. The Management Transfer Agreement provides that any claim "in connection
10 with this Agreement or any related agreement," or any contemplated transactions, "shall be
11 resolved by mandatory and binding arbitration …" (Am. Compl., Ex. A. § 9.4(b).)
12 Similarly, the Fee Sharing Agreement provides that, "[A]ny dispute arising out of or relating
13 to this agreement" is subject to arbitration (Am. Compl., Ex. B. § 7(B).) Under *Simula*, these
14 broad arbitration clauses encompass any claim that is based on or relates to defendants'
15 performance under the Management Transfer and Fee Sharing Agreements. As explained
16 below, all of plaintiffs' causes of action fall within this standard.

### 1. Federal Securities Claims (Am. Compl. ¶¶ 194 - 200)

18 Plaintiffs' federal securities law claims, their First and Second Causes of Action, are
19 arbitrable because they are based on defendants' supposed non-performance of their
20 obligations under the Management Transfer Agreement or the Fee Sharing Agreement.[1] To
21 cite just two examples, plaintiffs allege that defendants violated the federal securities laws

---

[1] The settled rule is that federal securities claims like those plaintiffs allege here are arbitrable unless the parties explicitly exclude them from arbitration. *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 238 (1987) ("Accordingly, we hold the McMahons' agreements to arbitrate Exchange Act claims 'enforce[able] … in accord with the explicit provisions of the Arbitration Act.'"); *Three Valleys Muni. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1143 (9th Cir. 1991) ("The combined effect of *McMahon*, *Rodriguez de Quijas*, and *Paulson* is to require parties to arbitrate their claims under § 10(b) of the Exchange Act and § 12(2) of the Securities Act 'unless the parties expressly excepted such controversies from the scope of the arbitration agreement.'"); *Leicht v. Bateman Eichler, Hill Richards, Inc.*, 848 F.2d 130, 132 (9th Cir. 1988). The arbitration clauses in the Management Transfer and Fee Sharing Agreements do not contain such an exclusion.

because they gave fraudulent investment advice to plaintiffs. (*See, e.g.*, Am Compl. ¶¶ 82, 102, 194, 197.) Those claims fall directly within the Management Transfer Agreement and/or the Fee Sharing Agreement because, according to plaintiffs, those agreements required defendants to render good faith and truthful investment advice. (*See, e.g., id.* ¶¶ 46, 47.) Other behavior that allegedly violated the federal securities laws is defendants' supposed abuse of their right to know The Primarius China Fund's portfolio. (*Id.* ¶¶ 194-221.) Those claims also fall within the arbitration provisions contained in the Fee Sharing Agreement because, according to plaintiffs, that agreement is what granted defendants the transparency right they supposedly abused. (*See, e.g., id.* ¶ 34.)

### 2. State Statutory and Common Law Fraud Claims (Am. Compl. ¶¶ 201 - 205, 212 -214)

Plaintiffs' Third and Sixth Causes of Action, their state statutory and common law fraud claims, are likewise arbitrable under both the Management Transfer Agreement and the Fee Sharing Agreement. These fraud claims are grounded on defendants' alleged inaccurate investment advice. (*See, e.g.*, Am Compl. ¶¶ 82, 102, 201, 212.) Hence, those claims fall directly within the Management Transfer Agreement and the Fee Sharing Agreement because, according to plaintiffs, both those agreements required defendants to render truthful investment advice. (*See, e.g., id.* ¶¶ 46, 47.) These fraud claims are also grounded on defendants' alleged abuse of their transparency right. (*See, e.g., id.* ¶¶ 158, 201, 212.) In this respect, they fall directly within the Fee Sharing Agreement because, according to plaintiffs, that agreement granted defendants the transparency right they supposedly abused. (*See, e.g., id.* ¶ 34.)

### 3. Breach of Fiduciary Duty and Breach of Contract (Am. Compl. ¶¶ 203-211)

Plaintiffs bring their breach of fiduciary duty and contract claims, their Fourth and Fifth Causes of Action, directly under the Management Transfer Agreement and the Fee Sharing Agreement, and so those claims are unquestionably arbitrable. Plaintiffs allege that defendants breached fiduciary duties arising from the Management Transfer Agreement and

the Fee Sharing Agreement. (Am Compl. ¶¶ 31, 38-43.) Plaintiffs also allege defendants breached the Management Transfer Agreement and the Fee Sharing Agreement through false investment advice or transparency abuse. (*Id.* ¶¶ 206, 210.) Accordingly, the breach of fiduciary duty and contract claims arise directly under both of those agreements, and are subject to arbitration.

### 4.   Civil Conspiracy (Am. Compl. ¶¶ 215-216)

Plaintiffs' Seventh Cause of Action, civil conspiracy to violate the federal securities law, breach their fiduciary duties, and commit fraud, is arbitrable for the same reasons set forth above with respect to the predicate claims. Moreover, plaintiffs allege that the purported conspiracy arose from the Management Transfer Agreement: "The Management Transfer Agreement was the first concrete step in the implementation of McCarthy's and the Jayhawk entities' scheme and conspiracy to turn the Primarius funds to their own use." (*Id.* ¶ 27.)

### 5.   Declaratory Relief (Am. Compl. ¶¶ 194-221)

In the Eighth Cause of Action, plaintiff Primarius China seeks a declaration that "it has the right to suspend all payment of Jayhawk China's requested withdrawals and hold any outstanding amounts that might otherwise be due on those withdrawals in escrow pending the outcome of this action, and to apply such outstanding amounts against any award made to Primarius China." (Am. Compl. ¶¶ 217-21) In other words, Primarius China seeks a declaration that it is entitled to invoke the self-help remedy of "set-off". This cause of action falls within the Fee Sharing Agreement's broad arbitration clause, since the Fee Sharing Agreement sets forth the terms pursuant to which Jayhawk China may redeem its investments in Primarius China. (Fee Sharing Agreement, Ex. B §§ 1, 3)

## II.   THIS COURT SHOULD STAY THESE PROCEEDINGS PENDING ARBITRATION.

Section 3 of the FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which

> such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. As explained above, plaintiffs' claims in this action are referable to arbitration pursuant to the broad arbitration clauses in the Management Transfer and Fee Sharing Agreements. Accordingly, defendants are entitled to a stay of this action until such arbitration has been concluded and, pursuant to § 3 of the FAA, defendants respectfully request that this Court stay further proceedings pending arbitration of plaintiffs' claims.

## CONCLUSION

For the reasons set forth above, defendants request that this Court enter an order staying and compelling arbitration of plaintiffs' claims.

Dated: August 15, 2007

/s Eliot A. Adelson
Eliot A. Adelson
Kirkland & Ellis
555 California Street, 27th Floor
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500
eadelson@kirkland.com

/s John F. Hartmann, P.C.
John F. Hartmann, P.C.
Matthew Wawrzyn
Andrew P. Young
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Telephone: (312) 861-2000
Facsimile: (312) 861-2200
jhartmann@kirkland.com

**CERTIFICATE OF SERVICE**

I, the undersigned, certify,

I am a citizen of the United States and a resident of San Francisco County, over the age of 18 years, and not a party to or interested in the within action. My business address is 555 California Street, 27th Floor, San Francisco, California, 94104.

I hereby certify that on August 15, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses' registered.

I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on Court's Manual Notice List.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on August 15, 2007 at San Francisco, California.


                                          s/ *Sarah Farley*
                                          Sarah Farley